**20-cv-05083 (RA)**
**20-cv-05823 (RA)**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

*In re LEHMAN BROTHERS HOLDINGS INC.*, *et al.*,

*Debtors.*

JOSEPH WASKE,

*Appellant,*

—against—

LEHMAN BROTHERS HOLDINGS INC.,

*Appellee.*

REX WU,

*Appellant,*

—against—

LEHMAN BROTHERS HOLDINGS INC.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (CHAPMAN, J.)

*IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL*
CASE NO. 08-13555

## BRIEF FOR APPELLEE

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail
Jason Hufendick
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Garrett.Fail@weil.com
Email: Jason.Hufendick@weil.com

*Attorneys for Appellee Lehman Brothers Holdings Inc.*

## RULE 8012 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, appellee Lehman Brothers Holdings Inc. (the "*Plan Administrator* or *LBHI*") states:

No person directly or indirectly owns, controls, or holds 10% or more of any class of LBHI's equity interests.

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................1

Statement of Jurisdiction............................................................................4

Statement of Issues Presented....................................................................4

Statement of the Case ................................................................................5

A.    LBHI's Chapter 11 Case......................................................................5

B.    Subordinated Debt and the Trust Preferred Securities ..........................6

C.    The Bar Date and the Allowed Claims ...................................................7

D.    The Plan and Confirmation Order.........................................................9

E.    Appellants' Bankruptcy Court Proceedings .........................................10

      1.    The Bankruptcy Court Denies Wu's Late Claim Motion ..........................10

      2.    The Motions Subject to the Current Appeal.................................12

      3.    The Bankruptcy Court's Ruling Denying the Motions ...............................18

Standard of Review ...................................................................................19

Argument ..................................................................................................20

A.    As the Bankruptcy Court Correctly Ruled, Appellants Lack Standing to Seek Reclassification ...........................................................20

B.    The Bankruptcy Court Correctly Found that Even if Appellants Had Standing to Seek Modification of the Plan, the Requested Modifications Are Not Permissible Pursuant to Section 1127(b)..........23

C.    The Bankruptcy Court Did Not Abuse Its Discretion and Was Not Required to Hold A Second Hearing on Each of the Three Motions.....25

D.    Even if the Bankruptcy Court was Required to Hold a Second Hearing Regarding the Motion to Reclassify, the Failure to do so Did Not Affect Appellants' Substantive Rights....................................27

Conclusion ................................................................................................29

Certificate of Compliance .........................................................................30

WEIL:\97663277\7\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Best Prod. Co., Inc.*,
   177 B.R. 791 (S.D.N.Y. Jan. 20, 1995) ............................................................21

*In re Best Prod. Co., Inc.*,
   68 F.3d 26 (2d Cir. 1995) ..................................................................................20

*In re Boylan Int'l, Ltd.*,
   452 B.R. 43 (Bankr. S.D.N.Y. 2011)..................................................................22

*In re Charterhouse, Inc.*,
   84 B.R. 147 (Bankr. D. Minn. 1988) ..................................................................23

*Childs v. Drexel Burnham Lambert Grp. (In re Drexel Burnham
   Lambert Grp., Inc.)*,
   146 B.R. 84 (S.D.N.Y. 1992) .............................................................................20

*D.A. Elia Constr. Corp. v. Damon & Morey, LLP (In re D.A. Elia
   Constr. Corp.)*,
   No. 04 Civ. 975A, 2006 WL 1720361.................................................................20

*Ianello v. Lehman Brothers Holding Inc.*,
   Case No. 19-cv-06397 (ECF No. 15) (S.D.N.Y. March 30, 2020) ....................12

*In re Indu Craft Inc.*,
   No. 11 CIV. 5996 JMF, 2012 WL 3070387 (S.D.N.Y. July 27,
   2012) ............................................................................................................21, 22

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990) ...............................................................................20

*In re Joint Eastern & Southern District Asbestos Litig.*,
   982 F.2d 721, 27 C.B.C.2d 1636 (2d Cir. 1992) ..........................................20, 21

*Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*,
   330 F.3d 111 (2d Cir. 2003) ...............................................................................19

WEIL:\97663277\7\58399.0011

*In re Northfield Labs. Inc.*,
    467 B.R. 582 (Bankr. D. Del. 2010) ................................................................22

*In re Residential Capital, LLC*,
    563 B.R. 477 (S.D.N.Y. 2016) ........................................................................27

*In re Rickel & Assocs., Inc.*,
    260 B.R. 673 (Bankr. S.D.N.Y. 2001) ...........................................................24

*In re Sterling*,
    565 B.R. 258 (S.D.N.Y. 2017) ........................................................................19

*Matter of UNR Indus., Inc.*,
    20 F.3d 766 (7th Cir. 1994) ............................................................................25

**Statutes**

11 U.S.C. § 105 ....................................................................................................26

11 U.S.C. §510(a) ....................................................................................11, 14, 24

11 U.S.C. § 1121 ..................................................................................................23

11 U.S.C. § 1127(b) ..................................................... 4, 18, 20, 21, 22, 23, 24

11 U.S.C. § 1129 ..................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................................15, 16

Fed. R. Civ. P. 61 ................................................................................................27

Fed. R. Bankr. P. 1001 .........................................................................................26

Fed. R. Bankr. P. 1015(c) ....................................................................................26

Fed. R. Bankr. P. 3019 .........................................................................................16

Fed. R. Bankr. P. 8013 .........................................................................................19

Fed. R. Bankr. P. 8015 .........................................................................................19

Fed. R. Bankr. P. 9005 .........................................................................................27

WEIL:\97663277\7\58399.0011

Fed. R. Bankr. P. 9007 ..................................................................................................26

Fed. R. Bankr. P. 9014 ..................................................................................................16

## PRELIMINARY STATEMENT

Appellant Joseph Waske ("*Waske*") and Appellant Rex Wu ("*Wu*," and together with Waske, the "*Appellants*") are individuals who, in recent years, have used their *pro se* status as a license to litter the dockets in LBHI's chapter 11 case and related cases with frivolous filings.

Neither Appellant holds a valid bankruptcy claim against LBHI, but both Appellants share a common desire to receive distributions from LBHI (directly or indirectly) for alleged claims based on subordinated guarantees issued by LBHI prior to LBHI's insolvency (each a "*Subordinated Guarantee*").

Previously, Wu had sought permission to file a late claim of his own directly against LBHI based on the same Subordinated Guarantees. The Bankruptcy Court denied Wu's request. This District Court affirmed the Bankruptcy Court's decision in what is now a final order that is no longer subject to appeal.

Appellants' instant appeals are of a subsequent order of the Bankruptcy Court [(A621) (the "*Order*")], which denied three,

interrelated motions filed by Appellant *Waske*[1] to recover directly or indirectly on account of Subordinated Guarantees:

(i)  the "*Motion to Reclassify*" [ECF No. 60037 (A515) as modified by ECF No. 60403 (A540)]:  Waske initially repeated arguments Wu had made and the Bankruptcy Court had already rejected, but recognizing that it would be futile to seek permission to file an even-later claim of *his* own based on Subordinated Guarantees, *Waske* abandoned such arguments and sought to "reclassify" certain already-filed, fully-subordinated claims based on the same Subordinated Guarantees that were held by various trustees.  Waske sought to elevate $1.26 billion in claims from a Plan class for claims subject to subordination agreements (that will not get distributions) to a Plan class for claims that are not subject to subordination (and that will get distributions).  Wu filed a joinder in support of Waske's Motion to Reclassify.

(ii)  the "*Motion to Reserve*" [ECF No. 60448 (A557)]:  Before the Bankruptcy Court ruled on the Motion to Reclassify, but after LBHI had objected to it, Waske filed a motion seeking injunctive relief

---

[1] Appellant *Wu* did not file a motion of his own, and Wu was not a co-movant on any of Waske's motions; Wu only filed a joinder to the first of Waske's motions.

WEIL:\97663277\7\58399.0011

compelling LBHI to withhold money from allowed creditors' Plan distributions to pay to Waske in the event that the Bankruptcy Court ultimately granted the Motion to Reclassify.

(iii)   the "*Motion for Summary Judgment*" [ECF No. 60484 (A568)]:  Waske filed a motion seeking a default judgment on the Motion to Reserve before LBHI's objection was due.

LBHI separately and timely objected to each of the Motion to Reclassify, the Motion to Reserve, and the Motion for Summary Judgment (collectively, the "*Motions*," and LBHI's objections to the Motions, the "*Objections*").  Waske filed a separate reply to each of the three Objections.

The Bankruptcy Court conducted a hearing on all three of the Motions on June 3, 2020.  Appellants had ample notice of and appeared at the hearing.  Waske presented and Wu participated at the hearing.

The Bankruptcy Court issued a well-reasoned opinion from the bench and subsequently issued the Order, which incorporated the Bankruptcy Court's opinion and denied the Motions for all of the reasons set forth in LBHI's Objections as well as all of the reasons set forth in the opinion on the record.  The record contradicts Appellants' allegations.

The Bankruptcy Court did not abuse its discretion or commit an error in denying the Motions.  The Bankruptcy Court decision should be affirmed.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over an appeal of an order of the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*").

## STATEMENT OF ISSUES PRESENTED

1.    Did the Bankruptcy Court correctly rule that, pursuant to 11 U.S.C. § 1127(b), Waske lacked standing to seek modification of Appellee's chapter 11 plan [ECF No. 22973 (A197) (the "*Plan*")]?

2.    Did the Bankruptcy Court correctly rule that even if Waske had standing to seek a modification of the Plan, Waske's proposed reclassification of claims in Class 10(b) was not warranted and would severely upset the expectation of creditors in LBHI's chapter 11 case?

3.    Did the Bankruptcy Court properly exercise its discretion in denying Waske's motions and dismissing Wu's joinder after consideration of oral argument and all of the filings by the Appellants?

WEIL:\97663277\7\58399.0011

## STATEMENT OF THE CASE[2]

### A.   LBHI's Chapter 11 Case

On September 15, 2008 (the "*Commencement Date*"), LBHI commenced a voluntary case (the "*Chapter 11 Case*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").

For more than a decade, the Chapter 11 Case has been governed by the Bankruptcy Court's *Second Amended Order Pursuant to 105(a) and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 9635 (the "*Case Management Order*")]. The Case Management Order sets, among other things, the time by which LBHI must serve an objection to a motion filed by a third party: "(i) 4:00 p.m. (Prevailing Eastern Time) on the date that is seven (7) calendar days before the applicable hearing date or (ii) any date and time otherwise ordered by the Court . . ." [ECF No. 9635 at ¶32 (A606).]

---

[2] The Chapter 11 Case has been pending for over 12 years. The Bankruptcy Court was familiar with the long history of the case. Only the background necessary to resolve this appeal is included here.

WEIL:\97663277\7\58399.0011

**B.**     **Subordinated Debt and the Trust Preferred Securities**

As of the Commencement Date, LBHI's and its affiliates' long-term borrowing included billions of dollars of subordinated debt.   [*See* [ECF No. 19629 (A115) (the "*Disclosure Statement*").]

Prior to the Commencement Date, certain issuances of LBHI's subordinated debt (the "*Subordinated Debt*") were acquired by certain trusts, which, in turn, issued their own securities (the "*Trust Preferred Securities*") to third parties.   LBHI issued Subordinated Guarantees in connection with the trusts' issuance of the Trust Preferred Securities.

Appellants purported to have acquired Trust Preferred Securities in four trusts, well after the commencement of the Chapter 11 Cases: Lehman Brothers Holdings Capital Trust III, Lehman Brothers Holdings Capital Trust IV, Lehman Brothers Holdings Capital Trust V, and Lehman Brothers Holdings Capital Trust VI.   Each Trust held a separate issuance of Subordinated Debt.

Each of the Trust Preferred Securities had a prospectus that repeatedly stated that any obligations LBHI did have under the Subordinated Guarantees would be subordinate to all of LBHI's other liabilities.

6

Each prospectus further made clear to investors that LBHI's subordinated obligations were limited.  If LBHI cannot or does not make a payment on the Subordinated Debt, the trusts will not have sufficient funds to make payments on the Trust Preferred Securities, and the Subordinated Guarantees will not obligate LBHI to make those payments on the trust's behalf. Each prospectus repeatedly stated: (a) the trusts' assets consisted exclusively of Subordinated Debt; (b) the trusts could only make payments if LBHI first makes payments on the Subordinated Debt; and (c) the Subordinated Guarantee does not cover payments when the trust does not have sufficient funds to make payments on the Trust Preferred Securities.[3]

## C.     The Bar Date and the Allowed Claims

In July 2009, the Bankruptcy Court entered an order [(ECF No. 4271 (A001) (the "*Bar Date Order*")] establishing September 22, 2009 (the "*Bar Date*") as the general deadline for filing proofs of claim in the Chapter 11 Case.  Holders of certain securities issued by LBHI did not need to file proofs of claim because the indenture trustees for such securities filed a proof of claim on behalf of all holders of such securities.

---

[3] [*See* EFC No. 60378 (the "*Reclassification Objection*") at n. 6 through n. 9  (A527).]

WEIL:\97663277\7\58399.0011

The indenture trustees for the Subordinated Debt linked to the Trust Preferred Securities filed proofs of claim on behalf of the holders of such securities prior to the Bar Date.  These claims were subsequently allowed by LBHI in amounts totaling in excess of $1.26 billion. [*See* Reclassification Objection at ¶ 13 (A531).]  There was no need for the trusts themselves to file a proof of claim on account of the Subordinated Guarantee: the beneficial interests of the trusts and the individual holders of Trust Preferred Securities are represented by more than $1.26 billion in allowed claims against LBHI which were filed by the indenture trustees for the Subordinated Debt.

Over the course of LBHI's Chapter 11 Case, the Bankruptcy Court disallowed and expunged more than 1,725 proofs of claim that were filed asserting claims based on the Subordinated Guarantees because the claims were duplicative of the trust's allowed claims for the Subordinated Debt or because LBHI had no liability on the Subordinated Guarantee. [*See* Reclassification Objection at ¶ 15 (A532).]

WEIL:\97663277\7\58399.0011

D.     **The Plan and Confirmation Order**

On December 6, 2011, the Court entered an order confirming the Plan.  [*See* Conf. Order (A423) (the "*Confirmation Order*").]  The Plan became effective on March 6, 2012.

The Confirmation Order provided: "After the Effective Date, … a proof of Claim relating to a prepetition Claim may not be filed … without the authority of the Court."  [Conf. Order ¶ 86 (A482).]  This Confirmation Order applies without exception.

Claims against LBHI on account of LBHI's Subordinated Debt are separately classified in the Plan in LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C.  [*Id.* (A115-A116).]  As set forth in the Disclosure Statement, holders of claims in all of these subordinated classes "are not expected to receive any Distributions on account of such Claims." [*Id.* (A127-A128).]

The Plan provided for the enforcement of subordination agreements in accordance with the underlying governing documents, including with respect to the Subordinated Debt.  Accordingly, consistent with the governing documents for the Subordinated Debt, any Plan distributions that would have been paid to Class 10B claims were automatically

9

reallocated to holders of claims that were not subject to subordination. [See Disclosure Statement at 85 (A127).]

## E.   Appellants' Bankruptcy Court Proceedings

### 1.   The Bankruptcy Court Denies Wu's Late Claim Motion

In April 2019, Wu filed a motion seeking approval to file a claim based on Subordinated Guarantees. [*See* ECF No. 59614 (A484) ("*Wu's Late Claim Motion*").] A number of *pro se* individuals filed joinders. LBHI objected to Wu's Late Claim Motion. [*See* ECF No. 59738 (A498).] After oral argument, the Bankruptcy Court denied Wu's Late Claim Motion for the reasons set forth in LBHI's objection and correctly found, among other things:

> (i)    pursuant to the Bar Date Order, all claims based on Subordinated Guarantees were subject to the Bar Date;

> (ii)    pursuant to the Bar Date Order and Confirmation Order, additional claims could not be asserted without the Bankruptcy Court's permission upon a showing of cause;

> (iii)   Wu had not plead and did not establish cause to permit filing of a late claim nearly ten years after the Bar Date and six years or more after Wu purportedly acquired his securities and claims;

10

(iv)    even if Wu were permitted to file a claim, the claim could not be allowed against LBHI because, as the Bankruptcy Court had previously found in connection with other substantively-identical claims timely asserted by holders of Trust Preferred Securities, (i) LBHI had no liability for the amounts claimed in the guarantee claims based on the Subordinated Guarantees, and (ii) Wu's claim would be duplicative of allowed claims filed by indenture trustees; and

(v)    even if Wu were permitted to file a claim, and even if the claim could be allowed, any liability for the claim would be subordinated in accordance with section 510(a) of the Bankruptcy Code and would recover nothing from LBHI.

[Bankruptcy Court Hr'g Tr. 89:15-23 (A735).]  The Bankruptcy Court further observed that Wu's "exercise has cost creditors money.  If [Wu's] pleadings had been filed by lawyers there would be a reasonable basis for me to entertain a motion for sanctions."  [Bankruptcy Court Hr'g Tr. 88:4-10 (A734).]

Nonetheless, Wu joined in an appeal.  After briefing on appeal, this Court denied the appeal and affirmed the Bankruptcy Court in March

2020.  *See Ianello v. Lehman Brothers Holding Inc.*, Case No. 19-cv-06397

(ECF No. 15) (S.D.N.Y. March 30, 2020).

### 2.    The Motions Subject to the Current Appeal

The following chart outlines the relevant pleadings in connection

with the Bankruptcy Court's Order at issue in this appeal:

| Waske's Motion | LBHI's Objection | Waske's Reply | Wu's Joinder |
|---|---|---|---|
| Motion to Reclassify, filed January 2, 2020 [ECF No. 60337.] | Filed January 21, 2020 [ECF No. 60378] | Filed January 31, 2020 [ECF No. 60403] | Filed January 7, 2020 [ECF No. 60348] |
| Motion to Reserve, filed February 25, 2020 [ECF No. 60448.] | Filed March 24, 2020 [ECF No. 60482] | Filed April 20, 2020 [ECF No. 60542] | None |
| Motion for Summary Judgment, filed on March 20, 2020 [ECF No. 60484]. | Filed May 18, 2020 [ECF No. 60641] | Filed May 19, 2020 [ECF No. 60642] | None |

### a.    The Motion to Reclassify

In his Motion to Reclassify, Waske asked the Bankruptcy Court to

"reclassify his shares" of Preferred Securities (issued by various trusts,

not LBHI) to a class of claims that would receive a recovery under the

Plan.  [Mot. to Reclassify at ¶ 1 (A515).]

But Waske had no "shares" of equity in LBHI, and Waske had filed

no claim against LBHI.  Waske pointed to no claim against or equity

WEIL:\97663277\7\58399.0011

interest in LBHI that was his to be reclassified. Accordingly, in its Objection, LBHI argued that the Motion to Reclassify should be denied on that basis alone.

Construing Waske's request in the best possible light, LBHI presumed that Waske, like Wu had done, was seeking a new claim against LBHI based on Subordinated Guarantees. Accordingly, consistent with the Bankruptcy Court's prior ruling denying Wu's Late Claim Motion, LBHI argued that the Motion to Reclassify should be denied because:

(i) pursuant to the Bar Date Order, all claims based on Subordinated Guarantees were subject to the Bar Date;

(ii) pursuant to the Bar Date Order and Confirmation Order, additional claims could not be asserted without the Bankruptcy Court's permission upon a showing of cause;

(iii) Waske had not demonstrated cause to file a late claim more than ten years after the Bar Date;

(iv) even if Waske was permitted to file a new claim, any such claim could not be allowed against LBHI because, as the Bankruptcy Court had previously found in connection with other

13

substantively-identical claims timely asserted by holders of Trust Preferred Securities (and again in connection with Wu's Late Claim Motion), (i) LBHI had no liability for the amounts claimed in the guarantee claims based on the Subordinated Guarantees, and (ii) Waske's claim would be duplicative of allowed claims filed by indenture trustees; and

(v)     even if Waske was permitted to file a new claim, and even if the claim could be allowed, any liability for the claim would be subordinated in accordance with section 510(a) of the Bankruptcy Code to the level of preferred equity of LBHI and would recover nothing from LBHI.

In his reply to LBHI's Objection, Waske responded that he "does not request a new claim." Waske conceded that: "If a new claim is filed it would be expunged and deemed to be duplicate" of the claims "currently in [LBHI Class] 10B, which is a subordinated debt class." He argued instead, for the first time, that, "[t]here is an error in the classification…" and he sought to reclassify the more than $1.26 billion of previously-allowed subordinated claims of four trusts.

WEIL:\97663277\7\58399.0011

### b.    The Motion to Reserve

In his Motion to Reserve, Waske asked the Bankruptcy Court to order LBHI to reserve more than $71 million for the benefit of Waske in the event the Bankruptcy Court was to grant the Motion to Reclassify.

In its Objection to the Motion to Reserve, LBHI directed the Bankruptcy Court to the Plan, which governs requirements for reserves and distributions, and which did not require establishment of a reserve for Waske.  [Plan § 8.4 (A283) (setting forth procedures pursuant to which LBHI is required to maintain a reserve for Disputed Claims).]   LBHI further argued that the underlying Motion to Reclassify was without merit and that Waske failed to satisfy his heavy burden in order to prejudice all of LBHI's many creditors for Waske's exclusive benefit.  [*See* ECF No. 60482 (A573); Plan § 8.4 (A283).]

### c.    The Motion for Summary Judgment

In his Motion for Summary Judgment, Waske sought a default judgment on the Motion to Reserve because LBHI did not respond to the Motion to Reserve within the time period set forth in Rule 12 of the Federal Rules of Civil Procedure ("*FRCP*") to serve a responsive pleading.

WEIL:\97663277\7\58399.0011

In its Objection, LBHI listed five independent arguments requiring denial of the Motion for Summary Judgment:

(i)    FRCP 12 is not applicable in chapter 11 cases outside of an adversary proceeding.  Cf. Fed. R. Bankr. P. 9014.

(ii)    Pursuant to the Case Management Order, which did apply and govern, LBHI's Objections were filed timely.  There was no objection deadline before the Bankruptcy Court scheduled the June 3, 2020, hearing and ordered any responses to be filed by May 18, 2020. [See ECF No. 60498.]  LBHI filed its Objection before then, on March 24, 2020.

(iii)    Granting the Motion to Reserve would be akin to approving an amendment to the Plan.  In that context, Bankruptcy Rule 3019 requires the Court to hold a hearing (or to conclude that sufficient notice and opportunity for parties to object was provided such that a hearing need not be conducted).  As such, the Motion to Reserve could not be granted without an opportunity for LBHI to be heard.

(iv)    Even if LBHI's Objection was not timely, the Bankruptcy Court could nonetheless consider it. The Bankruptcy Court had wide latitude, including within the Case Management Order, to set

16

and extend filing deadlines and to consider pleadings that are filed subsequent to any deadlines.  There was no prejudice to Waske, given the Objection was filed 71 days before the hearing and Waske had sufficient time to file a reply in response to it.

(v)    The Bankruptcy Court could deny the Motion to Reserve upon its own review of Waske's pleadings and is not bound to grant the Motion for Summary Judgement on default.

### d.    The Bankruptcy Court Hearing

On April 9, 2020, Waske submitted a letter to the Bankruptcy Court seeking to limit the scope of the scheduled June 3, 2020, hearing to the Motion for Summary Judgment. [*See* ECF No. 60507 (A584).]   The Bankruptcy Court denied the request on April 14, 2020, seven weeks prior to the hearing.  [*See* ECF No. 60508 (A585).]

At the June 3, 2020, hearing, the Bankruptcy Court explained:

> Let me be perfectly clear. There's been a lot of back and forth with my chambers about what's on for hearing. You should all understand that even though Mr. Waske did not ask for hearing on that motion [the Motion to Reclassify], I am going to dispose of all three motions. We are incorporating a ruling on that motion into the hearing today. They are all related. They are all seeking, in essence, the same relief. I am under no obligation to hold a hearing on any particular motion. It is within the Court's discretion to dispose of any filed motion on the papers without oral argument. That's something that

17

courts do all the time. So, I will be ruling today on all three
motions. Do you understand?

[Bankruptcy Court Hr'g Tr. 12:17-13:3 (A634-A635).]

At the hearing, in his opening statements, Waske prosecuted the
arguments set forth in the Motion to Reclassify.  [*See* Bankruptcy Court
Hr'g Tr. 6:4-22] (A628).]  Waske did not object at the hearing to the
Court's consideration of the Motion to Reclassify.  Wu was offered an
opportunity to be heard.  [*See* Bankruptcy Court Hr'g Tr. 12:9-13]
(A634).]

### 3.    The Bankruptcy Court's Ruling Denying the Motions

Following arguments from both Appellants, the Bankruptcy Court
sustained LBHI's Objection to each of the Motions.

The Bankruptcy Court held that reclassifying claims would require
a modification of the substantially consummated Plan pursuant to
section 1127(b) of the Bankruptcy Code.  Waske did not have standing to
seek such amendments because he was not a "proponent of the plan," as
is required by section 1127(b) of the Bankruptcy Code.  The Bankruptcy
Court further found that even if Waske had been a plan proponent,
reclassification would not be permissible pursuant to Section 1127(b) of
the Bankruptcy Code, because reclassification would severely upset the

expectation of creditors and undermine the finality of rights bought and paid for under the Plan.  [*See* Bankruptcy Court Hr'g Tr. 14:18-22:6] (A636-A644).]  The Bankruptcy Court further held:

> While it is clear that Mr. Waske's motions likewise failed on the merits, it is unnecessary for the Court to reiterate what it has already said about those arguments today and in previous rulings. The time for Mr. Waske to file a proof of claim has long since passed. The time for Waske to object to the []classification of claims under the plan have long since passed.

[*Id.* at 18:7-13 (A640).]   The Bankruptcy Court's order denying the Motions incorporated these findings into its order.  [*See* ECF No. 60678 (A621).]   The Bankruptcy Court concluded: "It is time for these arguments to cease being made and for the resources of this estate to not have to be deployed in order to address what this Court considers to be these frivolous arguments."  [*See* Bankruptcy Court Hr'g Tr. 18:13-16 (A640).]

## STANDARD OF REVIEW

The Bankruptcy Court has wide discretion, including in determining whether to allow late claims and in managing its docket to scheduling hearings.  "[A] district court can reverse such decision only if

it amounts to an abuse of discretion."[4]   Pursuant to Fed. R. Bankr. P. 8013, factual findings of the Bankruptcy Court may not be set aside unless clearly erroneous.  *See In re Best Prod. Co., Inc.*, 68 F.3d 26, 29 (2d Cir. 1995).   Conclusions of law are subject to *de novo* review.   *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990), cert. denied, 502 U.S. 808 (1991).

## ARGUMENT

### A.   As the Bankruptcy Court Correctly Ruled, Appellants Lack Standing to Seek Reclassification

The Second Circuit has held that a motion seeking to alter a "payment right" with respect to a substantially consummated plan is a request that must be analyzed pursuant to Section 1127(b) of the Bankruptcy Code.  *See In re Joint Eastern & Southern District Asbestos Litig.*, 982 F.2d 721, 747, 27 C.B.C.2d 1636 (2d Cir. 1992) (denying request to modify a substantially consummated plan because the

---

[4] *In re Sterling*, 565 B.R. 258, 273 (S.D.N.Y. 2017), aff'd, 737 F. App'x 52 (2d Cir. 2018);  *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 n.5 (2d Cir. 2003), abrogated on other grounds, *In re Zarnel*, 619 F.3d 156 (2d Cir. 2010); *see also D.A. Elia Constr. Corp. v. Damon & Morey, LLP (In re D.A. Elia Constr. Corp.)*, No. 04 Civ. 975A, 2006 WL 1720361, at *7 W.D.N.Y. June 19, 2006; *Childs v. Drexel Burnham Lambert Grp. (In re Drexel Burnham Lambert Grp., Inc.)*, 146 B.R. 84, 87 (S.D.N.Y. 1992) ("Since the determination of whether . . . to grant a request to file late is expressly left to the Bankruptcy Court's discretion, this Court may review the Bankruptcy Court's decision for abuse of discretion only").

WEIL:\97663277\7\58399.0011

proposed change altered the priority of a claimant's payment rights under the plan), modified on alternate grounds, 993 F.2d 7 (2d Cir. 1993). Section 1127(b) of the Bankruptcy Code cannot be circumvented simply by calling a request to alter payment rights under a Plan by another name without invoking Section 1127(b).  *See e.g.*, *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*, 982 F.2d 721, 748 (2d Cir.1992) (statutory limitations on modifying a substantially consummated plan cannot be circumvented by modifying a plan-related document or another application that nonetheless affects rights under the plan); *In re Best Prod. Co., Inc.*, 177 B.R. 791, 802 (S.D.N.Y. Jan. 20, 1995) (denying request to reconsider enforcement of subordination agreements interwoven into a substantially consummated plan as not permissible pursuant to Section 1127(b) of the Bankruptcy Code), aff'd, 68 F.3d 26 (2d Cir. 1995).

Waske admits the Motion to Reclassify is a clear attempt to modify the priority of $1.26 billion of claims based on Subordinated Debt.  As such, the motion must be considered pursuant to Section 1127(b) of the Bankruptcy Code.  *See In re Indu Craft Inc.*, No. 11 CIV. 5996 JMF, 2012 WL 3070387, at *9 (S.D.N.Y. July 27, 2012) ("[I]t is well established that Section 1127(b) of the Bankruptcy Code 'provides the sole means for

21

modification of [a] plan of reorganization after it has been confirmed'"),

aff'd, 580 F. App'x 33 (2d Cir. 2014).

In analyzing the Motion to Reclassify pursuant to Section 1127 of the Bankruptcy Code, the Bankruptcy Court correctly held that, because Waske is not a plan proponent, he lacks standing to seek such relief.  It is well established that *only* a "plan proponent" has standing to seek modification of a substantially consummated chapter 11 plan.  *See In re Boylan Int'l, Ltd.*, 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011) (explaining that a court must first determine if the party seeking modification of a substantially consummated plan has standing to seek such modification pursuant to section 1127(b) of the Bankruptcy Code); *In re Northfield Labs. Inc.*, 467 B.R. 582, 588 (Bankr. D. Del. 2010) ("There is no dispute that Plaintiffs are not plan proponents or the reorganized debtor, and only plan proponents or the reorganized debtor may seek to modify a plan post-confirmation."); *In re Indu Craft Inc.* at *13 (explaining that "the proponent of the plan or the reorganized debtor" may modify the Plan pursuant to section 1127(b)).

Although the term "proponent of a plan" is not defined in the Bankruptcy Code, "it is clear from a contextual reading of the provisions

22

of Chapter 11 that the 'proponent' contemplated by §1127 is the party in interest who negotiates, formulates, disseminates, makes disclosure in connection with, and seeks acceptances of, a reorganization plan." *In re Charterhouse, Inc.*, 84 B.R. 147, 151 (Bankr. D. Minn. 1988). *See* 11 U.S.C. §§ 1121 (specifying which parties in interest may file a Chapter 11 plan and when) and § 1129(a)(2) (requiring proponent of a Chapter 11 plan to comply with procedural requisites of confirmation process).

Appellants did not make their first appearance in LBHI's chapter 11 cases until April 2019, over 8 years after the Plan was confirmed. Appellants were not involved in the negotiation, formulation, or dissemination of the Plan. Appellants are not plan proponents and, therefore, do not have standing to seek modification of the Plan.

This Court can affirm the Bankruptcy Court on this issue alone. Denial of the Motion to Reclassify renders moot the Motion for Reserve and Motion for Summary Judgment.

## B.  The Bankruptcy Court Correctly Found that Even if Appellants Had Standing to Seek Modification of the Plan, the Requested Modifications Are Not Permissible Pursuant to Section 1127(b)

Even if Appellants have standing to seek modification of the Plan, Appellant's requested modification of the substantially consummated

WEIL:\97663277\7\58399.0011

Plan is not permissible.  Section 1127(b) permits modifications only if the plan as modified would otherwise be confirmable under the Bankruptcy Code.   Appellants' proposed modification is not.   Appellants are requesting that the Plan be modified to reclassify and treat subordinated claims on parity with claims that are not subject to subordination.  Such a modification would violate Section 510(a) of the Bankruptcy Code, and therefore Sections 1129(a)(1) and (b)(2)(B)(ii), and therefore, render the Plan unconfirmable pursuant to Section 1127(b) of the Bankruptcy Code. *See* 11 U.S.C. 1127(b) ("Such plan as modified under [Section 1127(b)] becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified pursuant to [Section 1129 of the Bankruptcy Code]").  The proposed modifications could be denied on this basis alone.

The Motion to Reclassify should further be denied, as the Bankruptcy Court correctly found, because Appellants' proposed modifications would severely upset the expectation of creditors and undermine the finality of rights bought and paid for under the Plan.  [*See* Bankruptcy Court Hr'g Tr. 14:18-22:6] (A636-644).]  *See In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) ("Section 1127(b)

WEIL:\97663277\7\58399.0011

reinforces the principle of finality by preserving the rights bought and paid for under the plan"). *See also Matter of UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (explaining that 1127(b) is designed to "preserve interests bought and paid for in reliance on judicial decisions"). As noted above, pursuant to the Plan, distributions on account of subordinated claims against LBHI were reallocated to holders of senior claims against LBHI. "Reclassifying" claims would not simply afford Waske a future recovery; Waske's future recovery would come at a direct expense of other creditors.

## C.    The Bankruptcy Court Did Not Abuse Its Discretion and Was Not Required to Hold A Second Hearing on Each of the Three Motions

Despite having ample time to file reply briefs, having filed such briefs, having presented and argued the Motion to Reclassify at the June 3, 2020 hearing, Appellants now seek to appeal the Bankruptcy Court's ruling on the Motion to Reclassify on the grounds that due process was violated because the Bankruptcy Court did not hold a second hearing with respect to the Motion after first hearing the Motion to Reserve and the Motion for Summary Judgment.

Appellants do not point to any case law, any section of the Bankruptcy Code, or any rule in the FRCP, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, or any section of the Case Management Order that would require the Bankruptcy Court to conduct a second hearing. Nor could they do so.

To require the Bankruptcy Court to hold a hearing with respect to every single pleading, particularly with respect to pleadings filed by serial filers of frivolous pleadings, would not only severely strain judicial resources, but be contrary to the intent and purpose of the Bankruptcy Code and Bankruptcy Rules. See *e.g.*, 11 U.S.C. 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); Fed. R. Bankr. P. 1001 ("These rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding."); Fed. R. Bankr. P. 1015(c) ("The court may enter orders as may tend to avoid unnecessary costs and delay"); Fed. R. Bankr. P. 9007 (granting the Bankruptcy Court authority to regulate notice).

WEIL:\97663277\7\58399.0011

Appropriately, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules permit the Bankruptcy Court wide discretion to manage its docket and to determine if oral argument is necessary with respect to any particular pleading.  Although the Bankruptcy Court was not required to, it provided Appellants with the opportunity to appear and be heard at a hearing to prosecute the Motions.  Appellants received actual notice and appeared at the hearing.

For these reasons, and the reasons set forth above with respect to the merits of the Motions, the Bankruptcy Court did not abuse its discretion in denying the Motion to Reclassify.

**D.     Even if the Bankruptcy Court was Required to Hold a Second Hearing Regarding the Motion to Reclassify, the Failure to do so Did Not Affect Appellants' Substantive Rights**

Bankruptcy Rule 9005 incorporates Rule 61 of the FRCP into cases under the Bankruptcy Code, including this appeal.  *See* Bankruptcy Rule 9005.   Rule 61 of the FRCP provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must

WEIL:\97663277\7\58399.0011

disregard all errors and defects that do not affect any party's substantial rights." *See* FRCP Rule 61; *In re Residential Capital, LLC*, 563 B.R. 477, 485 (S.D.N.Y. 2016), aff'd sub nom. Gray v. ResCap Borrower Claims Tr., 706 F. App'x 16 (2d Cir. 2017) ("Harmless error, meaning an error not inconsistent with substantial justice or that does not affect the parties' substantial rights, is not grounds for reversal.").

The failure to provide for a second hearing on the Motion to Reclassify did not modify or impair Appellants substantive rights. The Bankruptcy Court properly denied all three Motions and Appellants' substantive rights were not affected by any confusion on Appellants' part as to what motions the Court would consider at the June 3, 2020 hearing. [*See Supra* at ¶ 17 (Bankruptcy Court order denying Mr. Waske's request to limit the June 3, 2020 hearing to just the Motion for Summary Judgment 71 days prior to the June 3, 2020 hearing).] As set forth above, the Bankruptcy Court heard oral argument on the Motions, has repeatedly addressed Appellants arguments at prior hearings, and additional oral argument with respect to arguments that the Bankruptcy Court has already found to be frivolous would not change this result.

WEIL:\97663277\7\58399.0011

Accordingly, even if the Bankruptcy Court erred, the appeal should still be denied.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in the Objections, which are incorporated by reference as if fully restated herein, the Court should AFFIRM the Bankruptcy Court's ruling sustaining LBHI's Objections and denying the Motions.

Dated:   October 16, 2020
        New York, NY

*/s/ Garrett A. Fail*

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail
Jason L. Hufendick
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Appellee Lehman Brothers Holdings Inc.*

29

## CERTIFICATE OF COMPLIANCE

Based on the word counting device used in my computer program, I hereby certify:

1.      This brief complies with the word limit requirement set forth in Fed. R. Bankr. P. Rule 8015(a)(7)(B)(i) because it contains 6272 words.

2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. Rule 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. Rule 8015 (a)(6), because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook type style.

WEIL:\97663277\7\58399.0011