**20-cv-05083 (RA)**
**20-cv-05823 (RA)**

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In re LEHMAN BROTHERS HOLDINGS INC.*, *et al.*,

*Debtors.*

---

JOSEPH WASKE,

*Appellant,*

—against—

LEHMAN BROTHERS HOLDINGS INC.,

*Appellee.*

---

REX WU,

*Appellant,*

—against—

LEHMAN BROTHERS HOLDINGS INC.,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (CHAPMAN, J.)

*IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL*
CASE NO. 08-13555

---

**APPENDIX TO BRIEF FOR APPELLEE, PART 2**

---

**WEIL, GOTSHAL & MANGES LLP**
Garrett A. Fail
Jason Hufendick
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Garrett.Fail@weil.com
Email: Jason.Hufendick@weil.com

*Attorneys for Appellee Lehman Brothers Holdings Inc.*

## TABLE OF CONTENTS

| Item No. | DESCRIPTION | DATE | DOCKET ENTRY | APPENDIX PAGE |
|---|---|---|---|---|
| 1. | Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form | 7/02/2009 | 4271 | A001 |
| 2. | Debtors Disclosure Statement for Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code | 9/01/2011 | 19629 | A033 |
| 3. | Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors filed by Lori R. Fife on behalf of Lehman Brothers Holdings Inc. | 11/29/2011 | 22737 | A197 |
| 4. | Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors | 12/06/2011 | 23023 | A423 |
| 5. | Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for Purposes of Distributions | 4/08/2019 | 59614 | A484 |
| 6. | Joinder of M. Gregory Rex Wu's Motion | 4/25/2019 | 59659 | A492 |
| 7. | Joinder of Dan Ianello to Motion of Rex Wu to Approve Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors for Purposes of Distributions | 5/23/2019 | 59735 | A494 |

WEIL:\97670049\1\58399.0011

| Item No. | DESCRIPTION | DATE | DOCKET ENTRY | APPENDIX PAGE |
|---|---|---|---|---|
| 8. | Joinder of Julie Ianello to Motion of Rex Wu to Approve Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors for Purposes of Distributions | 5/23/2019 | 59736 | A496 |
| 9. | Plan Administrator's Objection to Motion to Allow Late Claim | 5/29/2019 | 59738 | A498 |
| 10. | Joinder of Alex Olivo to Rex Wu's Motion | 5/31/2019 | 59741 | A509 |
| 11. | Joinder of Glen A. Blaze to Rex Wu's Motion | 6/03/2019 | 59753 | A511 |
| 12. | Joinder of Elizabeth Harrison to Rex Wu's Motion | 6/04/2019 | 59755 | A513 |
| 13. | Motion to Reclassify by Joseph J. Waske | 1/02/2020 | 60337 | A515 |
| 14. | Joinder of Rex Ru to Motion to Reclassify | 1/07/2020 | 60348 | A524 |
| 15. | Plan Administrator's Objection to Motion to Reclassify | 1/21/2020 | 60378 | A527 |
| 16. | Letter to Judge Chapman, by Rex Wu | 1/30/2020 | 60400 | A538 |
| 17. | Response to Plan Administrators Objection to Motion to Reclassify | 1/31/2020 | 60403 | A540 |

WEIL:\97670049\1\58399.0011

| Item No. | DESCRIPTION | DATE | DOCKET ENTRY | APPENDIX PAGE |
|---|---|---|---|---|
| 18. | Waske's Motion to Reserve for Motion to Reclassify | 2/25/2020 | 60448 | A557 |
| 19. | Waske's Motion for Summary Judgment | 3/20/2020 | 60484 | A568 |
| 20. | Plan Administrator's Objection to Motion to Reserve | 3/24/2020 | 60482 | A573 |
| 21. | Order of U.S. District Court Judge Paul A. Engelmayer Dismissing Ianello/Wu Appeal | 4/01/2020 | 60495 | A579 |
| 22. | Notice of Telephonic Hearing | 4/06/2020 | 60498 | A582 |
| 23. | Letter to Judge Chapman, by Joseph J. Waske | 4/09/2020 | 60507 | A584 |
| 24. | Memorandum Endorsed Order Denying Request | 4/14/2020 | 60508 | A585 |
| 25. | Notice of Memorandum Endorsed Order Denying Request | 4/14/2020 | 60509 | A586 |
| 26. | Response to Plan Administrator's Objection to Motion to Reserve | 4/20/2020 | 60542 | A588 |
| 27. | Plan Administrator's Objection to Motion for Summary Judgement | 5/18/2020 | 60641 | A604 |
| 28. | Response to Plan Administrator's Objection to Motion for Summary Judgement | 5/19/2020 | 60642 | A608 |
| 29. | Notice of Agenda of Matters Scheduled for Hearing on June 3, 2020 on June 3, 2020 at 10:00 a.m. | 5/28/2020 | 60653 | A616 |

4

| Item No. | DESCRIPTION | DATE | DOCKET ENTRY | APPENDIX PAGE |
|---|---|---|---|---|
| 30. | Letter to Honorable Shelley C. Chapman, by Rex Wu | 6/03/2020 | 60655 | A619 |
| 31. | Order Denying (I) Motion to Reclassify; (II) Motion to Reserve for Motion to Reclassify; and (III) Motion for Summary Judgment | 6/11/2020 | 60678 | A621 |
| 32. | Transcript from Hearing Held on June 3, 2020 | 6/23/2020 | 60697 | A623 |
| 33. | Transcript from Hearing Held on June 19, 2019 | 6/19/2019 | 60753 | A647 |
| 34. | Capital Trust III Allowed Claim No. 21805 against LBHI | 9/21/2009 | 59911 | A738 |
| 35. | Capital Trust IV Allowed Claim No. 22122 against LBHI | 9/21/2009 | 59911 | A745 |
| 36. | Capital Trust V Allowed Claim No. 22123 against LBHI | 9/21/2009 | 60753 | A752 |
| 37. | Capital Trust VI Allowed Claim No. 67753 against LBHI | 11/30/2011 | 60753 | A759 |

WEIL:\97670049\1\58399.0011

Joseph J. Waske
22862 Via Genoa
Dana Point, CA 92629
949-517-8330
jwaske3@yahoo.com



RECEIVED

MAR 20 2020

U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

## UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Joseph J. Waske, ) | Case No.: 08-13555 (SCC) |
| ) | |
| vs. ) | (Jointly Administered) |
| ) | |
| Lehman Brothers Holdings Inc., ) | |
| ) | |
| et al, ) | |
| ) | |
| Debtors. ) | |

---

### MOTION FOR SUMMARY JUDGEMENT

**TO THE HONORABLE SHELLEY C CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE:**

Joseph Waske requests the honorable court to grant this Motion for a Summary Judgment for the Motion to Reserve (Docket #60448). Joseph Waske states as follows:

### Jurisdiction

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Article XIV, Section 14.1(h) of the Plan. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28

1

**A568**

U.S.C. §§ 157(b). The statutory bases for the relief requested in this motion are sections 105(a) and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## Background

2. On February 19th, 2020, the Plan Administrator was served the Motion to Reserve. (EXHIBIT A)

3. On February 25th, the Motion to Reserve was received by the court. (EXHIBIT B)

4. Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(i), the Plan Administrator has had more than twenty one (21) days from service of this motion (Docket #60448) to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d).

5. The Plan Administrator is required to file a timely response upon the service of the motion. The response needed to be filed by March 11th, 2020.

6. More than twenty one days have passed since the honorable court stamped the Motion to Reserve (Docket #60448) as

A569

"Received." The twenty first day would have been March 17th, 2020.

## Statement

7.  It has been eight days since the response deadline has passed for the Plan Administrator to file a response from the date of service.

8.  It has been two days since the response deadline passed from the honorable court dated "Received".

9.  The Plan Administrator has not filed a response to the Motion to Reserve (Docket #60448) as of today's date on the signature page.

## Conclusion

10.   Joseph Waske has given more than the required time for the Plan Administrator to file a response.

11.   Joseph Waske requests the court to immediately grant the motion to reserve (Docket #60448) for the full amount of $71,698,276.

A570

For all the reasons set forth herein and in the motion to reserve (Docket #60448), Joseph Waske respectfully requests that the Court grant the relief requested in the Motion to reserve, and grant such other relief as is just.

Respectfully Submitted,

Dated this 18th day of March, 2020

Joseph J. Waske
22862 Via Genoa
Dana Point, CA 92629

A571

**Exhibits Intentionally Omitted Due to File Size**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                               :     Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :     08-13555 (SCC)
                                                    :
                              Debtors.              :     (Jointly Administered)
-----------------------------------------------------------------x

### PLAN ADMINISTRATOR'S OBJECTION TO MOTION TO RESERVE

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc., as Plan Administrator, files this objection to the

*Motion to Reserve for Motion to Reclassify* filed by Joseph J. Waske (ECF No. 60448)

(the "Motion to Reserve") and respectfully represents:

### OBJECTION[1]

1.      The Reserve Motion is the latest in a series of filings by Waske and a small

handful of vocal individuals that purport to have acquired various securities issued prior to LBHI's

petition date.[2]  In this present motion, Waske asks this Court to order a reserve for the benefit of

Waske in excess of $71 million for the possibility that the Court may grant his pending *Motion to*

*Reclassify* [ECF No. 60337] (the "Motion to Reclassify").

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Prior Objections
(as defined below).

[2] A list of the various pleadings is annexed hereto as Exhibit A.

2.    The Plan Administrator has already objected to the Motion to Reclassify. In short, there is no substantive merit to Waske's arguments, and there are procedural impediments that bar the relief he requested:

- Waske has no Allowed Claim to be reclassified; he did not timely submit a proof of claim or obtain permission to file a late claim.  Even if he had filed or could file a claim, a claim for a Subordinated Guarantee would be a Disputed Claim that would be expunged.

  o It would be duplicative of an Allowed Claim held by a Trustee for the applicable Trust.

  o LBHI did not extend an open offer following the Petition Date to guarantee Trust Preferred Securities that Waske or others could reasonably rely upon or accept in 2019.

- Waske cannot reclassify Allowed Claims held by Trusts because doing so would, among other things, be an impermissible amendment to the substantially consummated Plan, and be contrary to the express terms of the governing documents of the Trusts and the Subordinated Guarantee.

- Waske's arguments regarding the priority of the Subordinated Guarantee and their parity with other equity issued throughout the Lehman enterprise are based on incorrect factual assumptions and a misreading of the Subordinated Guarantee.

The Plan Administrator need not burden the Court with repetitive pleadings and incorporates here fully by reference the arguments set forth in: the *Plan Administrator's Objection to Motion to Reclassify* [ECF No. 60378] and the *Plan Administrator's Objection to Motion to Allow Late Claim* [ECF No. 59738] (together, the "Prior Objections").

3.    The Court has sustained the Plan Administrators' objections to related requests based on the arguments set forth above and in the Prior Objections [ECF No. 59801] and should deny the Motion to Reclassify and, therefore, the Motion to Reserve for the same reasons now.

4.    Further, the Plan does not require the Plan Administrator to establish a reserve for Waske.  *See* Plan § 8.4.  Waske has failed to satisfy his heavy burden in order to

prejudice all of LBHI's many creditors for his exclusive benefit. As previously explained by the

Plan Administrator and accepted by the Court [*see* ECF No. 58763], the Motion to Reserve may

be denied even while the Motion to Reclassify remains pending. The Plan Administrator does not

intend to establish the reserve requested in the Motion to Reserve prior to the upcoming twentieth

Plan Distribution scheduled to commence on April 2, 2020. [ECF No. 60419].

5.       The Motion to Reserve may be denied without a hearing and should be

denied with prejudice with respect to Waske and the parties who have expressed their support for

the Motion to Reserve.

## **RESERVATION OF RIGHTS**

6.       LBHI reserves all rights to object to any claim that may be permitted to be

asserted against any of the Debtors.

Dated:  March 24, 2020
         New York, New York

/s/ *Garrett A. Fail*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

## Exhibit A

List of Pleadings

| Filing Party | Pleading | Date | ECF No. |
|---|---|---|---|
| Rickey Gregory ("Gregory") | Rickey Gregory Response To Order Granting Motion for Authorization For Lehman Brothers Special Financing Inc. And Lehman Brothers Commercial Corporation To Invest Disputed Claims Reserves For Claim Numbers 66455 And 66476 | 9/13/2014 | 46304 |
| Gregory | Rickey Gregory Letter In Support Of Joint Liquidators Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors For Purposes Of Distributions | 2/26/2019 | 59555 |
| Wu | Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors for Purposes of Distributions | 4/8/2019 | 59614 |
| Gregory | Joinder Of Rickey M. Gregory to Rex Wu's Motion | 4/25/2019 | 59659 |
| Wu | Statement Notice Of Errata re: Rex Wu's Motion | 5/06/2019 | 59680 |
| Alex Olivo ("Olivo") | Letter To Judge Chapman re: Support For Rex Wu's Motion | 5/9/2019 | 59686 |
| Wu | Rex Wu Letter Regarding Joinder To Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors For Purposes Of Distributions | 5/13/2019 | 59715 |
| Dan Ianello ("Mr. Ianello") | Joinder Of Dan Ianello To Motion Of Rex Wu To Approve Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors For Purposes Of Distributions | 5/23/2019 | 59735 |

| Filing Party | Pleading | Date | ECF No. |
|---|---|---|---|
| Julie Ianello ("Ms. Ianello") | Joinder Of Julie Ianello To Motion Of Rex Wu To Approve Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors For Purposes Of Distributions | 5/23/2019 | 59736 |
| Olivo | Joinder Of Alex Olivo To Rex Wu's Motion | 5/31/2019 | 59741 |
| Wu | Response To The Plan Administrator's Objection To Notice Of Motion For An Order Enforcing The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors For Purposes of Distributions | 6/06/2019 | 59751 |
| Glen Blaze ("Blaze") | Joinder Of Glen A. Blaze To Rex Wu's Motion | 6/03/2019 | 59753 |
| Elizabeth Harrison ("Harrison") | Joinder Of Elizabeth Harrison To Rex Wu's Motion | 6/04/2019 | 59755 |
| Wu | Objection To The Timing Of The Early Distribution | 6/13/2019 | 59772 |
| Wu | Motion Of Rex Wu To Demand Services | 6/13/2019 | 59773 |
| Harrison | Objection To The Motion Of Plan Administrator For An Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors | 6/18/2019 | 59789 |
| Ms. Ianello | Objection Of The Motion Of Plan Administrator For An Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors | 6/18/2019 | 59790 |

| Filing Party | Pleading | Date | ECF No. |
|---|---|---|---|
| Mr. Ianello | Objection To The Motion of Plan Administrator For An Order In Aid Of Execution Of The Modified Third Amended Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors | 6/18/2019 | 59791 |
| Ms. Ianello | Motion To Approve Motion To Demand Service | 6/18/2019 | 59792 |
| Mr. Ianello | Motion To Approve Motion To Demand Service | 6/18/2019 | 59793 |
| Harrison | Letter To Judge Chapman | 8/28/2019 | 59913 |
| **Waske** | **Motion To Reclassify** | **1/2/2020** | **60337** |
| **Wu** | **Joinder To Motion To Reclassify** | **1/7/2020** | **60348** |
| **Olivo** | **Joinder To Motion Of Joseph J. Waske** | **1/9/2020** | **60354** |
| **Harrison** | **Statement Joinder To Motion To Reclassify Shares Filed By Joseph J. Waske** | **1/21/2020** | **60379** |
| **Blaze** | **Statement Joinder To Motion To Reclassify Shares Filed By Joseph J. Waske** | **1/22/2020** | **60381** |
| **Wu** | **Letter To Judge Chapman** | **1/3/2020** | **60400** |
| **Waske** | **Response To Plan Administrators Objection To Motion To Reclassify** | **1/31/2020** | **60403** |
| **Waske** | **Motion To Reserve For Motion To Reclassify** | **2/25/2020** | **60448** |
| **Jeffrey Wood** | **Letter In Support Of Motion By Joseph Waske** | **3/09/2020** | **60478** |
| **Brian Linse** | **Letter In Support Of Motion By Joseph Waske** | **3/09/2020** | **60479** |

A578

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re Lehman Brothers Holdings, Inc., et al.*

DAN IANELLO,

                               Appellant,

                 -v-

LEHMAN BROTHERS HOLDINGS INC.,

                               Appellee.

19 Civ. 6397 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

This appeal from the U.S. Bankruptcy Court for the Southern District of New York arises out of the 2008 bankruptcy of appellee Lehman Brothers Holdings, Inc. ("LBHI") and its affiliates. In April 2019, Rex Wu, an individual proceeding *pro se*, filed a motion in the Bankruptcy Court seeking leave to file a late claim against LBHI. Appellant Dan Ianello, also *pro se*, filed a joinder to Mr. Wu's motion in the Bankruptcy Court, but did not file a motion of his own. On May 29, 2019, LBHI objected to Wu's motion. On June 6, 2019, Wu filed a response. On June 19, 2019, after argument, the Bankruptcy Judge denied Wu's motion. Wu did not file a notice of appeal. Ianello, however, did.

LBHI argues that the Court must dismiss Ianello's appeal for lack of standing. The Court agrees. "In order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011). "This test is stricter than Article III's injury in fact test." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013). In practical terms, it means that an "[a]ppellant cannot proceed with [an] appeal if [they] cannot

A579

demonstrate that [they] suffered a direct financial injury as a result of the Order." *In re Assante*, No. 12 Civ. 5309 (CS), 2013 WL 787968, at *2 (S.D.N.Y. Mar. 4, 2013). And, critically, "[i]n addition to satisfying the aggrieved person standard, an appellant must also establish prudential standing, meaning that the appellant must 'assert his own legal rights and not those of third parties.'" *In re Old HB, Inc.*, 525 B.R. 218, 222 (S.D.N.Y. 2015) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010)).

That is exactly what Ianello seeks to do. If Wu's motion below had been granted by the Bankruptcy Court, it would not have given Ianello permission to file a proof or claim against LBHI. And as LBHI correctly notes, the denial of the motion did not preclude Ianello from himself moving for leave to file a proof or claim, nor did it impact any other claim he might have had. In other words, the Bankruptcy Court's denial of Wu's motion did not "directly and adversely affect[]" Ianello's pecuniary interests. *In re DBSD N. Am., Inc.*, 634 F.3d at 89. Ianello therefore lacks standing to bring this appeal. This appeal must be dismissed.

Ianello all but concedes as much, as his brief focuses on Wu's claims.[1] Dkt. 9. And Wu, whose interests are implicated, is not a proper party to this appeal. Following Ianello's appeal to this Court, Wu filed a *pro se* letter styled as a Motion for Joinder, in which he sought to join the instant appeal because he himself "was not able to file an appeal due to an illness." Dkt. 4. Regrettably, this cannot substitute for a timely filed notice of appeal. Nor can the Court *sua sponte* convert Wu's motion into a motion to intervene on appeal under Fed. R. Bankr. P. 8013(g),

---

[1] Ianello's reply brief is similarly focused on Wu's objections to the Bankruptcy Court's ruling of Wu's motion. *See* Dkt. 14 at 6 ("The Bankruptcy Court erred in two respects . . . [First], [t]he Appelle's Objection to Mr. Wu's motion in Bankruptcy Court did not answer or object to the arguments Mr. Wu presented . . . The second respect is the 'Demand for Service.' Mr. Wu requests the [Court] to review the process of how the dismissal of the 'Demand of Service' transpired . . . .").

2

A580

because Ianello, the sole appellant, lacks standing. There is no properly brought appeal in which Wu may intervene.

For the foregoing reasons, this matter is dismissed. The Clerk of Court is respectfully directed to terminate the motion pending at docket 4 and to close this case.

LBHI is directed to serve a copy of this order on Ianello by Certified Mail and to file proof of service on the docket of this case.


SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 30, 2020
New York, New York

A581

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
**One Bowling Green**
**New York, NY 10004−1408**

---

IN RE: Lehman Brothers Holdings Inc.

CASE NO.: 08−13555−scc

Social Security/Taxpayer ID/Employer ID/Other Nos.:
13−3216325

CHAPTER:  11

---

# NOTICE OF HEARING

Please take notice that a hearing has been scheduled in the above−captioned case for June 3, 2020 at 10:00 a.m. on the following motions:

Motion to Reserve for Motion to Reclassify filed by Joseph Waske (Dkt. No. 60448)

Motion for Summary Judgment filed by Joseph Waske (Dkt. No. 60484)

Responses are due by May 18, 2020 at 5:00 p.m. This will be a telephonic conference. Participants can register with Court Solutions at www.court−solutions.com.

Thank you

Dated: April 6, 2020

Vito Genna
Clerk of the Court

**A582**

# Notice Recipients

District/Off: 0208−1                  User:                          Date Created: 4/6/2020

Case: 08−13555−scc                   Form ID: 143                   Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
unk        Joseph Waske        22862 Via Genoa        Dana Point, CA 92629

TOTAL: 1

**A583**

**From:** joseph waske <jwaske3@yahoo.com>
**Sent:** Thursday, April 9, 2020 6:34 PM
**To:** NYSBMID_CaseFiling <CaseFiling@nysb.uscourts.gov>
**Subject:** RE: Notice of Hearing Docket #60498 Consideration Case 08-13555 Lehman Brothers Holdings Inc.

Dear Honorable Judge Chapman,


I am writing you this electronic letter in regards to the "Notice of Hearing" with the date set for June 3rd, 2020 at 10am, docket #60498.  My request was for a hearing regarding docket #60484 only, which is the Motion for Summary Judgment.  When the Notice of Hearing was issued, docket #60448 "Motion to Reserve" is now included.

Additionally, within the "Notice of Hearing," responses for both motions are due by May 18th, 2020. The Plan Administrator failed to respond to the Motion to Reserve within the period of time of 21 days as per Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(i). The Plan Administrator was served on February 19th, 2020 (details on docket #60484) and responded to the Motion to Reserve on March 24th, 2020 which is 34 days from the date of service.  The Plan Administrator should not be given the opportunity to respond to the Motion to Reserve because of the failure to act.  Allowing the Plan Administrator to respond to the Motion to Reserve would trump the Motion for Summary Judgment and put my arguments at a disadvantage because it would equate to giving the Plan Administrator a free pass.

I request that the Honorable Court set the hearing as per my original request to only include docket # 60484, Motion for Summary Judgment and exclude docket #60448, Motion to Reserve.  The Motion for Summary Judgment should be given priority given the Plan Administrator did not comply with Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(I).


Thank you for your consideration.


Respectfully and sincerely,

Joseph Waske

**From:** joseph waske <jwaske3@yahoo.com>
**Sent:** Thursday, April 9, 2020 6:34 PM
**To:** NYSBMID_CaseFiling <CaseFiling@nysb.uscourts.gov>
**Subject:** RE: Notice of Hearing Docket #60498 Consideration Case 08-13555 Lehman Brothers Holdings Inc.

Dear Honorable Judge Chapman,

I am writing you this electronic letter in regards to the "Notice of Hearing" with the date set for June 3rd, 2020 at 10am, docket #60498. My request was for a hearing regarding docket #60484 only, which is the Motion for Summary Judgment. When the Notice of Hearing was issued, docket #60448 "Motion to Reserve" is now included.

Additionally, within the "Notice of Hearing," responses for both motions are due by May 18th, 2020. The Plan Administrator failed to respond to the Motion to Reserve within the period of time of 21 days as per Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(i). The Plan Administrator was served on February 19th, 2020 (details on docket #60484) and responded to the Motion to Reserve on March 24th, 2020 which is 34 days from the date of service. The Plan Administrator should not be given the opportunity to respond to the Motion to Reserve because of the failure to act. Allowing the Plan Administrator to respond to the Motion to Reserve would trump the Motion for Summary Judgment and put my arguments at a disadvantage because it would equate to giving the Plan Administrator a free pass.

I request that the Honorable Court set the hearing as per my original request to only include docket # 60484, Motion for Summary Judgment and exclude docket #60448, Motion to Reserve. The Motion for Summary Judgment should be given priority given the Plan Administrator did not comply with Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(I).

Thank you for your consideration.

Respectfully and sincerely,

Joseph Waske

REQUEST DENIED. Hearing shall proceed as noticed per Docket 60498.

Date: April 14, 2020

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

A585

**From:** joseph waske <jwaske3@yahoo.com>
**Sent:** Thursday, April 9, 2020 6:34 PM
**To:** NYSBMID_CaseFiling <CaseFiling@nysb.uscourts.gov>
**Subject:** RE: Notice of Hearing Docket #60498 Consideration Case 08-13555 Lehman Brothers Holdings Inc.

Dear Honorable Judge Chapman,

I am writing you this electronic letter in regards to the "Notice of Hearing" with the date set for June 3rd, 2020 at 10am, docket #60498.  My request was for a hearing regarding docket #60484 only, which is the Motion for Summary Judgment.  When the Notice of Hearing was issued, docket #60448 "Motion to Reserve" is now included.

Additionally, within the "Notice of Hearing," responses for both motions are due by May 18th, 2020. The Plan Administrator failed to respond to the Motion to Reserve within the period of time of 21 days as per Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(i). The Plan Administrator was served on February 19th, 2020 (details on docket #60484) and responded to the Motion to Reserve on March 24th, 2020 which is 34 days from the date of service.  The Plan Administrator should not be given the opportunity to respond to the Motion to Reserve because of the failure to act.  Allowing the Plan Administrator to respond to the Motion to Reserve would trump the Motion for Summary Judgment and put my arguments at a disadvantage because it would equate to giving the Plan Administrator a free pass.

I request that the Honorable Court set the hearing as per my original request to only include docket # 60484, Motion for Summary Judgment and exclude docket #60448, Motion to Reserve.  The Motion for Summary Judgment should be given priority given the Plan Administrator did not comply with Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(I).

Thank you for your consideration.

Respectfully and sincerely,

Joseph Waske

REQUEST DENIED. Hearing shall proceed as noticed per Docket 60498.

Date: April 14, 2020

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0208−1 | User: | Date Created: 4/14/2020 |
| Case: 08−13555−scc | Form ID: pdf001 | Total: 1 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

unk          Joseph Waske          22862 Via Genoa          Dana Point, CA 92629

TOTAL: 1

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629
949-517-8330
jwaske3@yahoo.com

## UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Waske, ) | Case No.: 08-13555 (SCC) |
| ) | |
| vs. ) | (Jointly Administered) |
| ) | |
| Lehman Brothers Holdings INC., ) | Docket #60448 |
| ) | |
| et al, ) | |
| ) | |
| Debtors. ) | |

## RESPONSE TO OBJECTION TO MOTION TO RESERVE

TO THE HONORABLE SHELLEY C CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Joseph Waske hereby responds to the Plan Administrator's
Objection to Motion to Reserve (Docket #60482). Joseph Waske
states as follows:

### Jurisdiction

1. The United States Bankruptcy Court for the Southern
   District of New York (the "Court") has jurisdiction over
   this matter pursuant to 28 U.S.C. §§ 157 and 1334, and
   Article XIV, Section 14.1(h) of the Plan. Venue is proper
   pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core
   proceeding under 28 U.S.C. §§ 157(b). The statutory bases

1

**A588**

for the relief requested in this motion are sections 105(a)
and 1141 of title 11 of the United States Code, 11 U.S.C.
§§ 101-1532 (the "Bankruptcy Code").

### Preliminary Statement

2. The Plan Administrator's objection to the Motion to Reserve
   was filed on March 24th, 2020 which is 34 days since they
   had been served on February 19th, 2020.  The Plan
   Administrator did not file an objection on time violating
   Federal Rules of Civil Procedures Pursuant to Rule
   12(a)(1)(A)(i), the Plan Administrator had twenty one (21)
   days (including weekends and holidays) from service of the
   Motion to Reserve to file any objections. See also Fed. R.
   Civ. P. 6(a), (b), (d).

3. A Motion for Summary Judgment (Docket #60484) was filed on
   March 19th and received by the Honorable Court on March 20th.

4. The Plan Administrator's objection does not address, deny
   or provide a response to the fact that there has been a
   classification error when Lehman Brothers Holdings Inc.
   placed the Capital Trust III, IV, V, VI in class 10B. These
   Capital Trusts should be with the highest Senior Preferred
   class, including that of any affiliates. Joseph Waske is

2

**A589**

relying on the general guarantee, the specific security
holders Senior preferred parity rights, the prospectus
contract and covenants between LBHI and Capital Trust III,
IV, V and V preferred security holders. These rights and
covenants are fully enforceable and should have been
honored by the Plan Administrator. The Capital Trust III,
IV, V and V were incorrectly placed into class 10B as
stated in the Motion to Reserve (Docket #60448). Further,
the Plan Administrator continues to omit affiliate parity
and does not respond regarding the contractual payment
stoppage covenants within the Capital Trusts III, IV, V, VI
senior preferred holder equity rights.

5. The Lehman Brothers Holdings Inc. Capital Trusts III, IV, V
and VI were wrongfully placed in Class 10B. Now that the
error has repeatedly been brought to the plan
administrator, the Capital Trusts should be re-classified
and treated with the same distribution rights of any
affiliate or subsidiary Senior Equity position. In addition
to the higher classifications of LBIE Sr. Preferred A and B
securities, Neuberger Berman or LBMB evidently are the most
senior level Equity of LBHI that received payment on parity
with LBHI's affiliates. Most recently, the closing of BNC
Mortgage LLC and Lehman Brothers OTC Derivatives Inc.

3

A590

provide specific recovery amounts to affiliate equity that is either subordinate or pari passu with the Capital Trust III, IV, V, VI Preferred securities (Exhibit I). These equity distributions violate the contractual covenants and rights held by Capital Trust Preferred holders. The subsidiary and affiliate payment stoppage contract requirements were clearly written and provided for in the prospectus between Lehman Brothers and the Capital Trust preferred security holders. These rights are explicit and a key part of a binding legal contract. The Lehman Brothers Holdings Inc Capital Trusts III, IV, V and VI preferred shares are:

   a. "**On a parity with the most senior preferred or preference stock now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect <u>of any preferred securities</u> of <u>any affiliate</u> of Lehman Brothers Holdings,** and

   b. Senior to Lehman Brothers Holdings common stock......"

The covenant dividend and distribution stopper language within each prospectus clearly states:

"**Important Covenants Of Lehman Brothers Holdings**

   **In the guarantee, Lehman Brothers Holdings <u>will covenant</u> that, <u>so long as any trust securities remain outstanding</u>, if:**

   • there shall have occurred any event of default under the indenture,

4

A591

• Lehman Brothers Holdings shall be in default with respect to its payment of any obligations under the guarantee, or

• Lehman Brothers Holdings shall have given notice of its election to defer interest payments and shall not have rescinded such notice, and while such interest is deferred,

then **Lehman Brothers Holdings will not**, **and will not permit any subsidiary to**:

• **declare or pay any dividends or distributions** on, or redeem, purchase, acquire or make a liquidation payment with respect to, any of Lehman Brothers Holdings' capital stock, or

• **make any payment of principal, interest or premium, if any, on or repay, repurchase or redeem any debt securities of Lehman Brothers Holdings that rank on a parity with or junior in interest to the junior subordinated debt securities or make any guarantee payments with respect to any guarantee by Lehman Brothers Holdings of the debt securities of any subsidiary** of Lehman Brothers Holdings if such guarantee ranks on a parity with or junior in interest to such junior subordinated debt securities, other than

• dividends or distributions in common stock of Lehman Brothers Holdings,

• payments under the guarantee made by Lehman Brothers Holdings in respect of the trust securities of the trust,

• any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto, and

• purchases of common stock related to the issuance of common stock or rights under any of Lehman Brothers Holdings' benefit plans."

5

A592

### Statement

6.  "The Neuberger Berman transaction was completed after the
    bankruptcy was filed.  The LBMB transactions were completed
    after the bankruptcy was filed.  The ECAPs settlement in
    which the trust preferred equity saw benefits occurred
    during the bankruptcy.  The JPMorgan settlement occurred
    during the bankruptcy.  The Neuberger Berman, LBMB as well
    as other transactions completed before the POR was approved
    and before the disclosure statements were ratified.  The
    Debtor and the Plan Administrator knew that the Lehman
    Brothers Holdings Inc. Capital Trusts III, IV, V and VI
    were in parity with affiliates' and subsidiaries' senior
    preference equity or equity prior to placing the LBHI's
    Capital Trust III, IV, V and VI into class 10B which is a
    subordinated debt class.  That is an error the Debtor and
    the Plan Administrator must now correct and reclass the
    LBHI's CT III, IV, V and VI to its proper class." (Docket
    #60337)

### Arguments

7. The Plan Administrator continues to commit an intentional
   error or omission.  During the Lehman Brothers Holdings Inc
   bankruptcy, LBHI and the Plan admin spun off/sold Neuberger
   Berman and other subsidiary and affiliates, such as the

6

A593

Lehman Brothers Banking Unit (LBMB). LBHI and the Plan Administrator knew the results of these transactions that ultimately the Neuberger Berman and LBMB's equity positions received proceeds. There are other subsidiaries and affiliates of LBHI listed on the SEC. gov website that had their Equity receive proceeds during the bankruptcy. The LBHI Capital Trusts III, IV, V and VI preferred securities are in parity with those affiliates. The LBHI Capital Trusts' guarantee is not subordinate to the equity of their affiliates. LBHI and the Plan Administrator understand this and intentionally concealed or omitted the terms of the prospectuses to erroneously place the LBHI Capital Trusts in a subordinate 10B class with the motivation to reallocate the distributions to other classes and suppressed the voting power of the Capital Trusts. LBHI and the Plan Administrator's omission defrauded rightful distributions from the Capital Trusts with the intent of reallocating the rights of those proceeds to other classes that LBHI has a direct interest in through claims as well as fees that the Plan Administrator collected.

8. The classification error started the day LBHI and the Plan Administrator decided to place the LBHI Capital Trusts in class 10B knowing for a fact that a few months prior,

A594

during the initial stages of the Bankruptcy, that senior
preferred equity transactions occurred benefiting the
senior preferred equity holders of LBHI affiliates and
subsidiaries like Neuberger Berman and LBMB. LBHI and the
Plan Administrator knowing this fact ignored the parity
rights of the Capital Trusts to its affiliates and omitted
the language from past to present of "affiliate" to
continue to hide the classification error.

9. On May 29th 2019, the Plan Administrator knowingly continues
the omission on docket #59738. The perpetuation of
omitting specific parity rights was continued by the Plan
Administrator by using a quote from earlier to defend
against an over $600,000 in claims not including the
joinders. Including the joinders, the amount would have
been tens of millions of dollars. The Plan administrator
knowingly quoted the previously deceptive language omitting
"affiliates" on page 10, bullet point number 27.

   A. "27 The prospectuses upon which Wu purports to have
      relied clearly provides that any liability that LBHI
      would have on the Subordinated Guarantee is
      subordinated to the level

      of preferred equity interests in LBHI:

      **[LBHI's] [g]uarantee will constitute unsecured
      obligations of [LBHI] and will rank (i) subordinate
      and junior in right of payment to all other**

8

A595

**liabilities of [LBHI], (ii) on a parity with _the most_
_senior preferred or preference stock…_ and (iii) senior
to [LBHI's] common stock. [Prospectus IV at 21.].
Thus, if LBHI had any liability on account of the
Subordinated Guarantee,**
such liability would be subordinate and junior in
right of payment to all other liabilities of LBHI and
pari passu with LBHI's preferred equity, which is not
expected to recover from LBHI. Wu acknowledges this.
[Mot. ¶6.]" (EXHIBIT A)

The signature in which the Plan Administrator confirms
the intentional omission is on (EXHIBIT B). By
signing the Objection document, the Plan Administrator
acknowledges the accuracy of the document. The
correct language written in the Prospectuses states:

a. "**On a parity with the most senior preferreds or
preference stock now or hereafter issued by
Lehman Brothers Holdings and with any guarantee
now or hereafter entered into by Lehman Brothers
Holdings in respect of any preferred securities
of any affiliate of Lehman Brothers Holdings, and
Senior to Lehman Brothers Holdings common stock……**"
**(EXHIBIT C)**

The Plan Administrator signed the document showing
that from the Neuberger Transaction that he is
omitting a key term, "affiliates" to the bankruptcy
court and the result was to conceal the parity with
Equity of their affiliates rights and to omit that it
exists. The LBHI Capital Trusts III, IV, V, VI

9

A596

securities are clearly not subordinate to the Equity of affiliates.

10.    On October 16th 2019, in Appellate Court Case 1:19-cv-06397-PAE, the Plan Administrator stated that the Capital Trust preferred shares are subordinated to the level of preferred interest in LBHI. That clearly is not factual as the LBHI Capital Trusts are in parity with the most senior preference stock of its affiliates. The Plan Administrator knew this and chose to omit the parity from the honorable court. Just by LBHI's equity being placed in class 12 means the LBHI Capital Trust III, IV, V and VI are not subordinated to that level. The repeated omission of the affiliate parity is wrong. The Plan Administrator continues to omit the fact that the LBHI Capital Trust securities have parity to affiliates most senior preference stock rights. Here again a repost of the previous quotation with key term omitted. This is with the district court.

A. And I quote:    (EXHIBIT F)

   "The prospectuses upon which Wu purports to have relied clearly provides that any liability that LBHI would have on the Subordinated Guarantee is subordinated to the level of preferred equity interests in LBHI, subordinate to all other liabilities of LBHI:

10

A597

"[LBHI's] [g]uarantee will constitute unsecured
obligations of [LBHI] and will rank (i) subordinate
and junior in right of payment to all other
liabilities of [LBHI], **(ii) on a parity with the most
senior preferred or preference stock… and (iii) senior
to [LBHI's] common stock."**

B. The signature in which the Plan Administrator continues
the intentional omission is on (EXHIBIT G)

11. On January 21st, 2020, the intent to omit "affiliate"
is shown and continues on Docket #60378 on page 5 bullet
point A. "11 The Subordinated Guarantees themselves
likewise provide that:

[LBHI's] [g]uarantee will constitute unsecured
obligations of [LBHI] and will rank (i) subordinate
and junior in right of payment to all other
liabilities of [LBHI], (ii) **on a parity with the most
senior preferred or preference stock… and** (iii) senior
to [LBHI's] common stock.10" (EXHIBIT D)

12. The signature in which the Plan Administrator
continues the omission is on (EXHIBIT E)

13. There is an established and documented pattern of
intentional omission regarding affiliate parity to date.
There is also an established pattern of not responding to

11

A598

the contractual dividend and payment stoppage covenants written by LBHI in each Capital Trust III, IV, V, VI prospectus.

14. Clearly, LBHI and the Plan Administrator knew about the preferred equity transactions of Neuberger Berman and LBMB when the Disclosure Statement and the POR, as well as any and all documents of the bankruptcy were being written.

15. The Plan Administrator is now obligated to fix any classification errors and the Honorable court is obligated to investigate any errors and possible intentional omissions.

16. The Plan Administrator's objection to the Motion to Reclassify does not secure the Plan Administrator's obligation to Object/Respond to the Motion to Reserve. The Plan Administrator missed that opportunity.

17. The Motion to Reserve is not about claims.

18. Through the Plan Administrator's own admission:

*Case 1:19-cv-06397-PAE Document 11 Filed 10/16/19 Page 14 of 32*

12

a. "There was, however, no need for the Trusts to file a proof of claim on account of the Subordinated Guarantee."

b. "The Trusts (but not the holders of Trust Preferred Securities) were listed on the Bar Date Order's Exempt Entities List, which created an exemption to the Bar Date for proofs of claims filed by the Trusts. (See Bar Date Order at 3, 5 (A012-14).) There was, however, no need for the Trusts to file a proof of claim on account of the Subordinated Guarantee. As noted above, the beneficial interests of the Trusts and the individual holders of Trust Preferred Securities were and are represented by more than $1.26 billion in Allowed claims against LBHI which were filed by the indenture trustees for the Subordinated Debt."

19.  The General Guarantee is valid pre and post petition filing and during anytime of the Chapter 11 Bankruptcy indiscriminately.

20.  The Lehman Brothers Holdings Inc. Capital Trusts III prospectus is included with this response.  The "Description of the Guarantee" is on pgs. 20-24.  Lehman Brothers Holdings Inc. Capital Trusts VI, V and VI each have similar language within the "Description of the Guarantee."  (EXHIBIT H)

13

21.      The Motion to Reserve relates to itself.  The Plan
Administrator's Objection did not deny or object to any
facts on the Motion to Reserve.


### Reservation of Rights

Joseph Waske reserves all of his rights and remedies, and
nothing contained in this motion shall constitute an admission
by Joseph Waske for any other purpose or a waiver of any rights
or remedies available to Joseph Waske.


### Conclusion

22.      Joseph Waske and the Joinders seek the court to grant
the Motion to Reserve (Docket #60448) based on two
standings:

  a. Motion for Summary Judgment.

  b. On the fact that the Plan Administrator is not denying
     that there was a classification error made whether its
     intentional or not.  The Plan Administrator and LBHI
     are obligated to fix all errors upon having knowledge
     of the errors.  LBHI and the Plan Administrator now
     has the knowledge of the classification error.  The

A601

honorable court should compel LBHI to fix any errors to uphold the integrity of the bankruptcy. The classification error at this point does seem repeatedly intentional without the Plan Administrator's denial of the existence of the error.

For all the reasons set forth herein and in the Motion, Joseph Waske respectfully requests that the Court grant the relief requested in the Motion, and grant such other relief as is just.

Respectfully Submitted,

Dated this 19th day of April, 2020

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629

15

**Exhibits Intentionally Omitted Due to File Size**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                        :    Chapter 11 Case No.
                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,       :    08-13555 (SCC)
                                             :
                          Debtors.           :    (Jointly Administered)
---------------------------------------------------------------x

## **PLAN ADMINISTRATOR'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, files this objection to the *Motion to Summary Judgment* filed by Joseph J. Waske (ECF No. 60484) (the "Motion for Summary Judgment") and respectfully represents:

## **OBJECTION**[1]

1.      The Motion for Summary Judgment is Waske's third motion this year seeking relief from the Court related to various securities issued prior to LBHI's petition date. Waske filed his *Motion to Reclassify* (ECF No. 60337) on January 2, 2020 (the "Motion to Reclassify") and his *Motion to Reserve for Motion to Reclassify* on February 25, 2020 (ECF No. 60448) (the "Motion to Reserve," and with the Motion to Reclassify, the "Prior Motions").

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Objections (defined below).

2.      Contrary to assertions in the Motion for Summary Judgment, the Plan Administrator timely objected to each of the Prior Motions.  *See Objection to Motion to Reclassify* (ECF No. 60378) ("Reclassification Objection"); *Objection to Motion to Reserve* (ECF No. 60482) (the "Reserve Objection," and with the Reclassification Objection, the "Objections")).  Indeed, Waske filed a reply to each of the Objections.  (ECF Nos. 60403 and 60542.)

3.      The Plan Administrator thoroughly addressed in its Objections the lack of merits in the Prior Motions.  As set forth in the Objections and other related pleadings,[2] the Plan does not require the Plan Administrator to establish a reserve for Waske, and Waske is not entitled to any recovery from LBHI.  In closely related matters, this Court agreed with the Plan Administrator's positions,[3] which has become a final ruling following the dismissal of an appeal thereof by the District Court for the Southern District of New York.[4]  Rather than repeat its arguments, the Plan Administrator hereby incorporates its Objections by reference as if fully set forth herein.

4.      Like the substantive arguments raised in the Prior Motions, the procedural arguments raised in the Motion for Summary Judgment are without merit.  The Motion for Summary Judgment should be denied for any or all of the independent reasons set forth below.

5.      First, Waske's sole reliance on Rule 12 of the Federal Rules of Civil Procedure to obtain a default judgment against the Plan Administrator is misplaced.  Rule 12 is not applicable in chapter 11 cases outside of an adversary proceeding.  *Cf.* FED R. BANKR. P. 9014.

---

[2] *See e.g.*, Plan Administrator's Objection to Motion to Allow Late Claim (ECF No. 59738).

[3] *See Order Denying Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holding Inc. and its Affiliated Debtors for Purposes of Distribution Filed by Rex Wu (ECF No. 59614) and Overruling Related Objections to the Timing of the Eighteenth Distribution* (ECF No. 59801).

[4] *Ianello v. Lehman Brothers Holding Inc.*, Case No. 19-cv-06397 (ECF No. 15) (S.D.N.Y. March 30, 2020) (denying appeal of this Court's order sustaining the Plan Administrator's objection to Rex Wu's motion to file a late claim with respect to the trust preferred securities).

6.      Second, this Court's case management order, governing these chapter 11 cases for more than a decade, makes clear that the Objections were filed timely.  It provides: "[t]he deadline to file an Objection to any Pleading, including any joinder to an Objection, or any statement in respect of a Pleading (the "Objection Deadline") shall be (i) 4:00 p.m. (Prevailing Eastern Time) on the date that is seven (7) calendar days before the applicable hearing date or (ii) any date and time otherwise ordered by the Court . . ."   (ECF No. 9635 at ¶32.)  Waske did not purport to set an objection deadline for the Motion to Reserve or attempt to schedule the motion for a hearing.  No objection was due until this Court scheduled the upcoming hearing on both the Prior Motions and the Motion for Summary Judgment and ordered any responses to be filed by May 18, 2020.  (*See* ECF No. 60498.)  The Reserve Objection was filed well before then – on March 24, 2020 – even before the Motion for Summary Judgment was docketed.  (*Compare* ECF 60482 (Reserve Objection) with ECF 60484 (Motion for Summary Judgment).)

7.      Third, because granting the Motion to Reserve would be akin to approving an amendment to the Plan (*see* Reserve Objection ¶ 2; Plan §8.4), Bankruptcy Rule 3019 requires the Court to hold a hearing to consider the Motion to Reserve (or to conclude that sufficient notice and opportunity for parties to object was provided such that a hearing need not be conducted).  As noted above and is clear from the record, Waske did not set a hearing date for the Motion to Reserve.  As such, the Motion to Reserve cannot be granted on default without an opportunity for parties in interest, such as the Plan Administrator, to be heard.

8.      Fourth, even if the Reserve Objection was not timely, this Court can nonetheless consider it.  The Court has wide latitude to extend filing deadlines and to consider pleadings that are filed subsequent to any deadlines.  Here there is no prejudice to Waske, given

the Reserve Objection was filed 71 days before the hearing and Waske had sufficient time to file a reply in response to it. Under the circumstances, cause exists to consider the Reserve Objection.

9.      Fifth, the Court can deny the Motion to Reserve upon its own review of Waske's pleadings and is not bound to grant the Motion for Summary Judgement on default. The Court is very familiar with arguments raised by Waske in the Prior Motions. (*See e.g.,* 59801 (order denying Rex Wu permission to file a late claim based on the trust preferred securities); Transcript from June 19, 2020 Hearing.)

10.      For any or all of these reasons, the Motion for Summary Judgment should be denied. The Reserve Motion should not be granted upon a default and should be denied for all of the reasons set forth in the Reserve Objection.

## RESERVATION OF RIGHTS

11.      LBHI reserves all rights to object to any claim that may be permitted to be asserted against any of the Debtors. The Plan Administrator reserves the right to conduct discovery as to Waske's claims and any matters related thereto and to supplement this and other filings as a result thereof.

Dated:  May 18, 2020
        New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629
949-517-8330
jwaske3@yahoo.com

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Waske, | ) Case No.: 08-13555 (SCC) |
| | ) |
| vs. | ) (Jointly Administered) |
| | ) |
| Lehman Brothers Holdings Inc., | ) Docket #60448 |
| et al, | ) |
| Debtors. | ) |

---

RESPONSE TO PLAN ADMINISTRATOR'S OBJECTION TO MOTION FOR SUMMARY
JUDGEMENT

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Joseph Waske in response to the Plan Administrator's
Objection to Motion for Summary Judgement states as follows:

Jurisdiction

1. The United States Bankruptcy Court for the Southern
District of New York (the "Court") has jurisdiction over this
matter pursuant to 28 U.S.C. §§ 157 and 1334, and Article
XIV, Section 14.1(h) of the Plan. Venue is proper pursuant to
28 U.S.C. §§ 1408 and 1409. This is a core proceeding under

1

28 U.S.C. §§ 157(b).  The statutory bases for the relief requested in this motion are sections 105(a) and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

Response

2.    The Plan Administrator is in clear violation of the Federal Rules for Civil Procedures Pursuant to Rule 12(a)(1)(A)I as stated in the Motion for Summary Judgement. (Docket #60484).

3.    The Plan Administrator is fully aware of the timeframe to respond to the Motion to Reserve (Docket #60484).

4.    The Plan Administrator missed the opportunity to respond to the Motion to Reserve (Docket # 60448)and should be held accountable for the failed actions. The Plan Administrator should not be given a free pass for the failure to respond. Joseph Waske respectfully requests the court to enforce the motion for Summary Judgement.

5.    The Plan Administrator was served with the Motion for Summary Judgement (Docket # 60484), on February 19th, which is 29 days after the Motion to Reserve (Docket #60448) was served.  That is 8 days more than the 21 days allowed by Rule 12 of the Federal Rules for Civil Procedures.

6.    The Plan Administrator filed the Objection to the Motion to Reserve on March 24th, 2020 which was four days after the Motion for Summary Judgement was filed on March 20th, 2020.

7.    The Plan Administrator decided not to set aside a reserve on March 24th, 2020 with the response to the Motion to Reserve.   That is nine days before LBHI's 12th distribution on April 2nd, 2020.

8.    The Plan Administrator mentions another ruling and attempts to tie that proceeding to these motions. The Plan Administrator fails to provide what that ruling was or an order that was handed down, in detail, and how that is relevant to this Motion for Summary Judgement.

8.    It is the Plan Administrator's duty and burden to explain to the court how any Rulings or Orders raised apply to the Motion for Summary Judgment.

9.    Or any of Joseph Waske's filed Motions in detail and backed by evidence going forward.

10.   The Plan Administrator's objection to Joseph Waske's motion to reserve does not respond or acknowledge the plain contract language regarding the Capital Trust III, IV, V, VI Preferred Securities "Affiliate" senior equity parity rights and the contractual prospectus covenants that LBHI wrote specifically to not allow any LBHI subsidiary parity stock payments.

3

11.   Determining if the Plan Administrator is required to reserve for any motion is for the Honorable Court to decide.

Statement

12.   Joseph Waske requested from the Honorable Court a hearing on the Motion for Summary Judgment only. Joseph Waske petitioned the Honorable Court to remove the Motion to Reserve (Docket #60448) (Exhibit A) from the hearing.   The Honorable Court denied that request.

13.   By adding the Motion to Reserve to the Hearing Date on June 3rd, 2020, that placed Joseph Waske in an unfair position because it gives the Plan Administrator a free pass argument for the failure to respond, even when procedures were followed by Joseph Waske.

14.   The Motion to Reserve is based on the fact that the Plan Administrator and LBHI made a classification error and the Plan Administrator has not factually addressed the Affiliate senior equity parity and the payment stoppage covenants granted to the Capital Trust III, IV, V, VI preferred security holders.   That is unjust if it is intentional.

4

Conclusion

15.   The Plan Administrator did violate Rule 12 of the Federal Rules for Civil Procedures.  Joseph Waske asks the court to grant the Motion for Summary Judgement based on the Plan Administrator's violation of that rule. The Plan Administrator should not be given special privilege. Joseph Waske asks the court to consider that he did not request the court to add the Motion to Reserve to the Hearing on June 3rd, 2020 and specifically requested the court respectfully grant this Motion for Summary Judgement.

For all the reasons set forth herein and in the Motion, Joseph Waske respectfully requests that the Court grant the relief requested in the Motion, and grant such other relief as is just.

RESERVATION OF RIGHTS

16.   Joseph Waske reserves all his rights and reserves the right to conduct discovery as to the Plan Administrators filings and any matters related thereto and to supplement this and other filings as a result thereof.

5

Respectfully Submitted,
Dated this 18th day of May, 2020

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629

*Exhibit A*

**From:** joseph waske <jwaske3@yahoo.com>
**Sent:** Thursday, April 9, 2020 6:34 PM
**To:** NYSBMID_CaseFiling <CaseFiling@nysb.uscourts.gov>
**Subject:** RE: Notice of Hearing Docket #60498 Consideration Case 08-13555 Lehman Brothers Holdings Inc.

Dear Honorable Judge Chapman,

I am writing you this electronic letter in regards to the "Notice of Hearing" with the date set for June 3rd, 2020 at 10am, docket #60498. My request was for a hearing regarding docket #60484 only, which is the Motion for Summary Judgment. When the Notice of Hearing was issued, docket #60448 "Motion to Reserve" is now included.

Additionally, within the "Notice of Hearing," responses for both motions are due by May 18th, 2020. The Plan Administrator failed to respond to the Motion to Reserve within the period of time of 21 days as per Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(i). The Plan Administrator was served on February 19th, 2020 (details on docket #60484) and responded to the Motion to Reserve on March 24th, 2020 which is 34 days from the date of service. The Plan Administrator should not be given the opportunity to respond to the Motion to Reserve because of the failure to act. Allowing the Plan Administrator to respond to the Motion to Reserve would trump the Motion for Summary Judgment and put my arguments at a disadvantage because it would equate to giving the Plan Administrator a free pass.

I request that the Honorable Court set the hearing as per my original request to only include docket # 60484, Motion for Summary Judgment and exclude docket #60448, Motion to Reserve. The Motion for Summary Judgment should be given priority given the Plan Administrator did not comply with Federal Rules of Civil Procedures Pursuant to Rule 12(a)(1)(A)(I).

Thank you for your consideration.

Respectfully and sincerely,

Joseph Waske

REQUEST DENIED. Hearing shall proceed as noticed per Docket 60498.

Date: April 14, 2020

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

*7*

## Notice Recipients

District/Off: 0208-1          User:                           Date Created: 4/14/2020
Case: 08-13555-scc           Form ID: pdf001                 Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
unk         Joseph Waske        22862 Via Genoa          Dana Point, CA 92629

                                                                                    TOTAL: 1

*Exhibit A*

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629
949-517-8330
jwaske3@yahoo.com

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Waske, ) | **Case No.: 08-13555 (SCC)** |
| ) | |
| vs. ) | **(Jointly Administered)** |
| ) | |
| Lehman Brothers Holdings Inc., ) | |
| ) | |
| et al, ) | |
| ) | |
| Debtors. ) | |

**NOTICE OF AGENDA OF MATTERS SCHEDULED**

**FOR THE HEARING ON JUNE 3RD, 2020 AT 10:00 AM EST**

**Location of Hearing**

Telephonic Conference before the Honorable Shelley C. Chapman.

**Matters for Consideration**

1. Joseph Waske's Motion for Summary Judgment (Docket # 60484), filed on 3/20/2020

   Responses Filed

   A. Plan Administrator's Objection to Motion for Summary Judgment (Docket #60641), filed on 5/18/2020

1

A616

B. Joseph Waske's Response to Plan Administrator's
Objection to Motion for Summary Judgment (Docket
#60642), filed on 5/19/2020

2.   Motion to Reserve for Motion to Reclassify filed by
Joseph Waske (Docket. No. 60448), filed on 2/25/2020

Responses Filed

A. Plan Administrator's Objection to Motion to Reserve
(Docket #60482), filed on 3/24/2020

B. Joseph Waske's Response to Objection to Motion to
Reserve (Docket #60542), filed on 4/20/2020

**Related Documents**

Certificate of Service(Docket # 60449), relating to
Docket # 60448, filed February 25th, 2020.

Notice of Telephonic Hearing (Docket #60498), filed April
6th, 2020.

Letter to Judge Chapman (related document(s)[60498])
filed by Joseph Waske. (Docket #60507), filed April 9th,
2020.

Certificate of Mailing (Docket #60501), relating to
docket # 60498, filed April 8th, 2020

Memorandum Endorsed Order Denying Request signed on
4/14/2020 (Docket #60508), filed April 14th, 2020.

Notice of Memorandum Endorsed Order Denying
Request (Docket #60509), filed April 14th, 2020.

Certificate of Mailing (Docket #60511), relating to
docket #60509, filed April 16th, 2020

A617

Certificate of Service / Proof of Service (Docket 60626), filed May 2nd, 2020.

Certificate of Service / Proof of Service (Docket #60643) related to Docket 60642, filed May 21st, 2020.

Respectfully Submitted,
Dated this 28th day of May, 2020

Joseph Waske
22862 Via Genoa
Dana Point, CA 92629

**A618**

Rex Wu
6315 N Campbell
Chicago, IL. 60659
312-785-0348
rex_wu@live.com

June 3rd, 2020

The Honorable Shelley C. Chapman
United States Bankruptcy Judge Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: Lehman Brothers Holding, Inc. , Docket No. 08-13555-SCC (Bankr. S.D.N.Y.)

Dear Honorable Judge Chapman:

I am respectfully writing you this letter to express how disappointed I am with your court and the way you handle your cases especially with the two motions I was involved in that were scheduled for hearings. They are for Notice of Hearings Docket #59635 and Notice of Hearing Docket #60498.

On both hearings you added a motion to the hearing without giving me any notice. I understand its your courtroom and you can hear any motion you choose. But, I believe I also have the right to be served or to be given notice if the original Notice of Hearings were to change especially if a new motion were to be added to the hearing so, I can properly prepare for the hearing. Without you serving me both times or simply letting me know before hand, it gives the Plan Administrator a huge advantage in these hearings. I am a Pro Se litigant. The Plan Administrator is a professional and a partner at a law firm and on top of that you are giving the Plan Administrator an unfair advantage. Both instances, the Plan Administrator had knowledge of you adding the motions. It is very apparent today.

You added motion docket #59773 to the Hearing docket #59635. Today, you added motion docket #60348 to the Hearing docket # 60498. I find out about the additions to the hearings during the hearing in court. How am I supposed to prepare for that? I plan for the hearings according to the motions listed on the Notice of Hearing(s) to understand which motion to prepare for. I hurts me to conclude that you are biased. As this is a pattern. It did not happen once. It happened twice. How can someone feel confident on what to expect or prepare for in your courtroom? I know I can't. I am a PRO SE. I hope your actions do not show discrimination or violates any rules. I feel that your rulings should be reviewed. That is my personal honest opinion.

I am writing you today to express how I feel and to share with you my experience in your courtroom. Maybe this is something you need to change and let participants in hearings know ahead of time if you are going to add motions to a hearing so, they can properly prepare for it.

A619

Thank you for your valuable time.

Respectfully Submitted,

Rex Wu

A620

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al*.   :        08-13555 (SCC)
                                          :
          Debtors.                        :        (Jointly Administered)
                                          :
----------------------------------------------------------------------x

### ORDER DENYING (I) MOTION TO RECLASSIFY (ECF NO. 60337); (II) MOTION TO RESERVE FOR MOTION TO RECLASSIFY (ECF NO. 60448); AND (III) MOTION FOR SUMMARY JUDGEMENT (ECF NO. 60484)

The Court having considered the following motions filed by Joseph Waske ("**Waske**"):

(i) *Motion to Reclassify* [ECF No. 60337] (the "**Motion to Reclassify**"), (ii) *Motion to Reserve for Motion to Reclassify* [ECF No. 60448] (the "**Motion to Reserve**"), (iii) *Motion for Summary Judgement* [ECF No. 60484] (the "**Motion for Summary Judgement**" and collectively with the Motion to Reclassify and the Motion to Reserve, the "**Motions**"); and the Court having considered the timely objections by the Plan Administrator to the Motion to Reclassify [ECF No. 60378], to the Motion to Reserve [ECF No. 60482], and to the Motion for Summary Judgement [ECF No. 60641]; and the Court having considered each of Waske's replies thereto [ECF Nos. 60403, 60542, and 60642]; and the Court having considered all of the joinders and statements filed in connection with the Motions (collectively, the "**Joinders**") [ECF Nos. 60348, 60354, 60379, 60381, 60400, 60478, 60479, 60507, 60645, and 60654]; and the Court having jurisdiction to decide the Motions and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motions and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having conducted a hearing on the Motions on June 3, 2020 (the "**Hearing**"); and after due deliberation and for the reasons stated by the Court in its bench ruling at the Hearing, which are incorporated as if set forth herein and made part hereof, the Court having determined that no party established sufficient factual or legal basis for the requested relief in the Motions, it is hereby

       1.    ORDERED that each of the Motions is denied with prejudice; and it is further

       2.    ORDERED that any relief sought by the Motions or the Joinders is denied with prejudice.

       3.    ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June 11, 2020
      New York, New York

                    /S/ Shelley C. Chapman
                    THE HONORABLE SHELLEY C. CHAPMAN
                    UNITED STATES BANKRUPTCY JUDGE

Page 1

```
1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS, INC.,

8

9         Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, NY  10004

15

16              June 3, 2020

17              10:01 AM

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN
```

1    HEARING re Doc #60448 Motion to Reserve for Motion to

2    Reclassify, filed by Joseph Waske.

3

4    HEARING re Doc #60448 Motion for Summary Judgment filed by

5    Joseph Waske.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

```
 1  A P P E A R A N C E S :

 2

 3  WEIL  GOTSHAL  &  MANGES  LLP

 4        Attorneys  for  Debtors

 5        767  Fifth  Avenue

 6        New  York,  NY  10153

 7

 8  BY:  GARRETT  FAIL  (TELEPHONICALLY)

 9

10  ALSO  APPEARING  TELEPHONICALLY:

11

12  REX  WU,  Pro  Se  (TELEPHONICALLY)

13  JOSEPH  WASKE,  Pro  Se  (TELEPHONICALLY)

14  ANA  LUCIA  HURTADO  (TELEPHONICALLY)

15  CHRISTOPHER  STAUBLE  (TELEPHONICALLY)

16  ELIZABETH  HARRISON  (TELEPHONICALLY)

17  GLENN  BRAZE  (TELEPHONICALLY)

18  CHRISTOPHER  WHELAN  (TELEPHONICALLY)

19

20

21

22

23

24

25
```

```
 1                     P R O C E E D I N G S

 2           THE COURT:  Hello, good morning.  This is Judge

 3      Chapman.  We're here this morning for an agenda of matters

 4      in the Lehman Brothers Holdings, Inc. case.  This hearing is

 5      being conducted entirely telephonically via the Court

 6      Solutions application.  It is being recorded.  A transcript

 7      of it will be created and made available to parties who

 8      request it.  In order to create an accurate transcript, I'm

 9      requesting that anyone who speaks identify himself or

10      herself, and the party on whose behalf they are appearing,

11      and that you do so every time that you speak so that the

12      record can be accurate.  I also would like to point out that

13      no private recordings of this hearing are permissible.  I

14      would also ask that you keep your phones on mute unless you

15      are speaking.

16           I have an agenda that I've received as a matter

17      scheduled for hearing today.  I also have a roster of those

18      who have dialed in to participate today.  Mr. Fail, shall I

19      start with you?

20           MR. FAIL:  Good morning, Your Honor, Garrett Fail,

21      Weil, Gotshal & Manges for Lehman Brothers Holdings, Inc. as

22      the Plan Administrator.  Thank you for the Court's time this

23      morning.  I'm on the line.

24           THE COURT:  Would you like to get us started?

25           MR. FAIL:  I can, thank you, Your Honor.  There
```

Page 5

```
1    are a number of items on the agenda, all related.  The first
2    filed was a Motion to Reclassify filed by Mr. Joseph Waske.
3    It's at ECF 60337.  The Debtor, or the Plan Administrator
4    filed an objection to this motion at ECF 60378.  The next
5    item on the agenda is a Motion for Reserve for the Motion to
6    Reclassify, filed by Mr. Waske at 60448.  The Plan
7    Administrator objected to this motion at ECF 60482.  Mr.
8    Waske also filed a Motion for Summary Judgment related to
9    the Motion for Reserve at 60484, and the plan administrator
10   objected to that motion at docket number 60641.
11           Your Honor, I'll be brief in opening because the
12   movant bears the burden.  The Plan Administrator's positions
13   are set forth in the objection.  And as set forth in the
14   objections, we believe each of the motions should be denied.
15   It fails to state a basis for relief.  Your Honor has
16   addressed very similar questions before and found, in the
17   way that the Plan Administrator asks that you find today, to
18   deny the motions, including, most recently by motions filed
19   by Mr. Rex Wu.  I'm happy to answer any questions the Court
20   may have now and if Your Honor permits, I'll reserve time to
21   rebut or respond to anything that Mr. Waske has to say
22   today.
23           THE COURT:  All right, that makes sense, Mr. Fail.
24   Thank you very much.  Mr. Waske, are you on the line, sir?
25           MR. WASKE:  Yes.  Good morning, Your Honor.  This
```

Page 6

```
 1   is Joseph Waske.  I'm on the line.  I appreciate the

 2   opportunity to be heard.

 3             THE COURT:  Okay, go right ahead.

 4             MR. WASKE:  Yes, good morning, Your Honor.  I

 5   wanted to start off by addressing the reason I'm here today.

 6   All of my motions, essentially, center around the prospectus

 7   contract language under the status of the guarantee, and

 8   under the prospectus' Important Covenant section.  Within

 9   each of those specific sections, there are parent and senior

10   affiliate equity rights, and additionally, payment stoppage

11   rights across all subsidiaries that I argue -- I'm asking

12   for the relief that placed the Capital Trusts Three, Four

13   Five and Six, in parity with the parent, the affiliate and

14   the subsidiary preference shares or equity shares.  And,

15   having said that, I guess I'll give up some time and

16   possibly let the counsel for Lehman Brothers respond to

17   that.

18             As far as the earlier objections, they do not

19   address the affiliate parity guarantee, and there has been

20   no response I have seen as far as the important covenant

21   section granted within the prospectus, giving payment

22   stoppage rights across all subsidiaries.

23             THE COURT:  Mr. Waske, I have a question for you.

24   When did you acquire your securities?

25             MR. WASKE:  My first acquisition was prior to the
```

Page 7

1    Neuberger Berman spinoff, would have been in 2011,

2    approximately.

3                THE COURT:  No, I mean the -- what you seek to

4    have reclassified now.

5                MR. WASKE:  That was my first acquisition and I've

6    had subsequent purchases since then, Your Honor.

7                THE COURT:  Thank you.

8                MR. WASKE:  Thank you.

9                THE COURT:  Mr. Fail?

10               MR. FAIL:  Thank you, Your Honor.  For the record,

11   again, Garrett Fail, Weil Gotshal.

12               THE COURT:  Mr. Fail, having called on you, let me

13   just make the overarching observation, Mr. Waske, you of

14   course have entirely ignored the fact that this is 2020, and

15   that there was an entire 12 years of a bankruptcy proceeding

16   before this, which is and has been conducted according to

17   the bankruptcy code, the bankruptcy rules and a series of

18   court orders.  And what you have done, is arrived at this

19   late date with a theory that you suggest that you first

20   became aware of in the context of a ruling this Court made

21   in 2019, and that, therefore, you now get to assert these

22   rights and make these requests.  You also ignore the fact

23   that Mr. Wu made a similar series of arguments which were

24   rejected by the Court.  There are also, apparently, a number

25   of others who have filed joinders to the relief that you're

1   requesting.  There's a very important -- there are competing

2   concepts in the law that I'd like to remind you about.

3   There's the concept of due process, very important; very

4   important for folks to be able to be heard by a Court, to

5   have their day in Court, and today's day in Court, oddly

6   enough, is telephonically, but we go on.  But there's also

7   the concept of finality.  It is impossible for arguments to

8   continue to be permitted to be made over and over and over

9   again, and to have expense and time be incurred addressing

10  the same arguments over and over again.  So, we're going to

11  dispose of these arguments today, hopefully once and for

12  all.  But I'd like to point out to you that in moving

13  directly to address what you view as the merits of your

14  claim, which are incorrect on the merits, you have skipped

15  over the many procedural impediments to your assertion of

16  these arguments at this very, very late date.  Mr. Fail, do

17  you want to take it from here in terms of what the estate's

18  responses are?

19          MR. FAIL:  Thank you, Your Honor, I will.  There

20  were two points raise:  one, breaches of covenants in either

21  the prospectus or in the guarantee.  Assuming that there is

22  one and was one, it would give rise to a claim under the

23  guarantee.  But that guarantee was not a guarantee of

24  payment or return of the investment.  The guarantee was

25  limited to certain circumstances if the trusts had money and

Page 9

```
 1    didn't pay through the money.  So, that's one thing: it
 2    would not give rise to a claim, but more importantly, the
 3    status of subordination of the guarantee.  The provision
 4    that Mr. Waske cites to and includes quotes of, provides
 5    that the guarantee will rank subordinate and junior to all
 6    other liabilities of Lehman Brothers Holdings.  That's key.
 7             The second sentence would apply, perhaps, in a
 8    bankruptcy.  Or outside of bankruptcy, on parity with other
 9    preferred stock.  But there's no question that it's
10    subordinate to all other claims.  The guarantee will be on
11    parity with guarantees of other things, but there are none.
12    There is nothing.  Mr. Waske's pleadings is filled with
13    words that are real words and concepts that are real
14    concepts that have no applicability here.  The fact that
15    equity was created in the spinoff from the Neuberger Berman
16    investment banking division, has nothing to do with what
17    existed prior to the bankruptcy, and nothing to do with
18    this.  The fact that there's equity with value in the world
19    doesn't matter here.  The question is, if there was a
20    guarantee claim for this, where would it rank?  They're
21    seeing to reclassify guarantee claim that exists from a
22    subordinated status junior to all liabilities of Lehman
23    Brothers Holdings, Inc. as provided for in the guarantee and
24    in the plan, to a higher pari passu with creditors.  There's
25    absolutely no basis whatsoever to do that.
```

Page 10

```
 1              THE COURT:  All right, thank you.  Mr. Waske, is
 2      there anything you'd like to say?
 3              MR. WASKE:  Yes, Your Honor.  I'd like to respond
 4      to some of the points that counsel for the estate brought
 5      up.  Let me back up even a little further than that.  I
 6      understand that it's a late date to file these claims.  I
 7      honestly, as a holder of these securities, it's not very
 8      easy to find the information that other affiliate senior
 9      preference shares or subsidiary shares had received
10      distributions, which would haver been a breach of the
11      affiliate rights and a breach of the covenants.
12      Additionally, I did reach out to the Trustee to try and work
13      through some of these issues and was provided kind of a
14      boilerplate, while the Plan Administrator will make that
15      determination and fund us if appropriate.
16              So, I did, I acknowledge that it's a late date.
17      But the fact that it's a long duration does not negate the
18      fact that the rights were written into the prospectus as far
19      as the affiliate parity rights, and the stoppage language on
20      any payments across the 177 subsidiaries that Lehman had.
21      Those rights were granted to the security holders, the
22      capital trust security holders, so long as the remained
23      outstanding.  And those --
24              THE COURT:  Mr. Waske, you do understand that the
25      indentured trustees of the capital trust filed global proofs
```

A632

```
 1    of claim.  You do understand that, right?

 2            MR. WASKE:  I do, Your Honor.  I do understand

 3    that, but the difference -- the issue is that we are not

 4    subordinate to any equity, any preference equity across the

 5    parent, an affiliate or any subsidiary.  I guess I'll close

 6    -- can I say one more thing, Your Honor?

 7            THE COURT:  Sure.  Of course.

 8            MR. WASKE:  Those rights were written in there, in

 9    the prospectus contract.  They were provided to the security

10    holder so long as they remain outstanding.  The rights are

11    there.  I understand it's the Plan Administrator now.  But

12    the Plan Administrator is bound by those rights, even though

13    that -- the fact that those -- the breach of those covenants

14    and those rights, have not been honored, doesn't -- for a

15    long duration, that long duration does not make it right.

16            THE COURT:  I will say to you again that Lehman

17    Brothers filed in 2008.  It was, perhaps the most publicly

18    known bankruptcy filing of all time.  One needed to be in a

19    cave to not know about this filing.  The bar date was in

20    2009.  This is 2020.  It appears that folks have taken pages

21    from various prospectuses and cobbled together these

22    arguments and have determined to continue to create

23    something where there is nothing.  And it has caused the

24    estate tremendous expense.  I would have thought that after

25    the disposition of Mr. Wu's claim, this wouldn't have
```

Page 12

1    happened again, but it has.  So, I'm prepared to give you a

2    decision on all of your claims and all of your motions and

3    all of your arguments, and the transcript of this decision

4    will be incorporated into a ruling.  We've had these

5    documents for some time and I've had a chance to review

6    them, and I've also seen the, what I would describe as

7    cookie cutter joinder letters filed by various other

8    persons.

9            So, I'm going to ask now if anybody else who has

10   registered for this hearing, wishes to be heard.  Mr. Wu, do

11   you wish to be heard?

12           MR. WU:  Yes, I do, Your Honor.

13           THE COURT:  Go ahead.

14           MR. WU:  Is today's hearing about the motions

15   reclassified?  I was under the impression it was only for

16   the Motion for Reserve and the Motion for Summary Judgment.

17           THE COURT:  Let me be perfectly clear.  There's

18   been a lot of back and forth with my chambers about what's

19   on for hearing.  You should all understand that even though

20   Mr. Waske did not ask for hearing on that motion, I am going

21   to dispose of all three motions.  We are incorporating a

22   ruling on that motion into the hearing today.  They are all

23   related.  They are all seeking, in essence, the same relief.

24   I am under no obligation to hold a hearing on any particular

25   motion.  It is within the Court's discretion to dispose of

Page 13

```
 1    any filed motion on the papers without oral argument.

 2    That's something that courts do all the time.  So, I will be

 3    ruling today on all three motions.  Do you understand?

 4              MR. WU:  Yes, Your Honor.  May I comment on the

 5    Neuberger Berman transaction?

 6              THE COURT:  I have no interest in your comments on

 7    the Neuberger Berman transaction, Mr. Wu.

 8              MR. WU:  Why is that, Your Honor?

 9              THE COURT:  They have nothing whatsoever to do

10    with the matters that are before the Court today.

11              MR. WU:  Yes, it does, Your Honor.  It does.

12              THE COURT:  Did you hear me say that I don't wish

13    to hear your comments on the Neuberger Berman transaction?

14              MR. WU:  Yes, Your Honor.

15              THE COURT:  Okay.  And you have, other than being

16    an interested party, you're not a co-movant with Mr. Waske,

17    are you, Mr. Wu?

18              MR. WU:  I filed a joinder, Your Honor.

19              THE COURT:  You filed a joinder, but you're not a

20    co-movant, correct?

21              MR. WU:  Yes, Your Honor.

22              THE COURT:  And you already had your motions ruled

23    on by this Court.  Isn't that right?

24              MR. WU:  Yes, Your Honor.  I chose to file the

25    joinder.
```

```
 1              THE COURT:  Right.  But you have no motion that's
 2    on for hearing today, correct?
 3              MR. WU:  No, Your Honor.  I filed a joinder.
 4              THE COURT:  And you have taken an appeal of this
 5    Court's previous ruling on your motions, correct?
 6              MR. WU:  The Danny Ianello motion appeals was
 7    dismissed by the Appellate Court based on his standing.  It
 8    has nothing to do with the ruling.  It did not rule on the
 9    ruling, Your Honor.
10              THE COURT:  So, you have nothing further pending
11    before this Court or any other court?
12              MR. WU:  Except for this joinder, no, Your Honor.
13              THE COURT:  All right, thank you.  Anything else
14    from Mr. Fail or anyone else?  Okay, I'm going to read a --
15    yes?
16              MR. FAIL:  I was going to say nothing from our
17    side.  Thank you.
18              THE COURT:  All right.  If you would bear with me,
19    this will take a few moments.  And as I said, at the
20    conclusion of this bench ruling, I'll ask that an order be
21    prepared and circulated that will incorporate the ruling.
22              Before the Court are three motions filed by Mr.
23    Joseph Waske.  One, Motion to Reclassify, which appears at
24    docket number 60337, and two related motions: a Motion for
25    Reserve, docket number 60448, and a Motion for Summary
```

1    Judgment, docket number 60484.

2         Lehman Brothers Holdings Inc., or LBHI, as plan

3    administrator, has timely objected to each of the motions.

4    See docket numbers 63078, 60482 and 60641.  Various

5    individuals have filed letters supporting or joining in Mr.

6    Waske's Motion to Reclassify.  They are Mr. Rex Wu, docket

7    numbers 60348, 60400; Alex Olivo, docket number 60354;

8    Elizabeth Harrison, docket number 60379; Glen Braze, docket

9    number 60381; Jeffrey Wood, docket number 60478; Brian

10   Lindsay, docket number 60479, and Alvin Wilson, docket

11   number 60645.  Mr. Waske has submitted replies to the Plan

12   Administrator's objection.  See docket number 60403, 60542,

13   60642.

14        The reasons that follow, and as previously

15   discussed on the record of this hearing, Mr. Waske's motions

16   must be denied.

17        The crux of Mr. Waske's arguments are as follows:

18   Mr. Waske supports to own shares in LBHI Capital Trust

19   three, four, five and six; the Trusts.  He asserts that the

20   trustee for these trusts has not properly asserted the

21   rights of the trust; namely, by enforcing a certain

22   guarantee against LBHI.  Mr. Waske argues that events that

23   occurred after confirmation of the LBHI plan make the

24   guarantee now, quote, unquote, enforceable.  He seems to

25   believe that the omnibus claims filed by the trustee for

 1    each of these trusts, should be reclassified because of this

 2    now allegedly enforceable guarantee.  He believes that this

 3    reclassification would result in a distribution to holders

 4    of shares in these capital trusts.  Mr. Waske also asserts

 5    that he relies upon the existence of the guarantee and, in

 6    part, upon this Court's ruling on June 19, 2019, when

 7    subsequently purchasing his shares in the trust.  The Motion

 8    to Reclassify seeks to reclassify the trust's global claims

 9    into class four of the plan of reorganization: the Motion to

10    Reclassify at page four.  The Motion for Reserve seeks an

11    order from this Court requiring that the plan administrator

12    reserve approximately $71 million to satisfy the potential

13    claims of Mr. Waske and those parties who have filed

14    joinders to his Motion to Reclassify; the Motion for Reserve

15    at page ten and Exhibit D.  The Motion for Summary Judgment

16    seeks immediate entry of an order granting the Motion for

17    Reserve because, according to Mr. Waske, the Plan

18    Administrator failed to object to the motion within the

19    deadline provided in the Federal Rules of Civil Procedure,

20    see Motion for Summary Judgment, page two.

21          The joinders were filed by individuals who appear

22    to be similarly situated to Mr. Waske.  They largely repeat

23    Mr. Waske's argument.

24          The Plan Administrator objects to Mr. Waske's

25    motions and ask that they be denied with prejudice.

1    With respect to the Motion to Reclassify, the Plan

2  Administrator notes correctly that the time for seeking this

3  relief has long been past.  The bar date for filing claims

4  in the Lehman Chapter 11 cases was September 22, 2009,

5  docket number 4271.  Indeed, the indentured trustees of

6  Capital Trust Three, Four, Five and Six, timely filed global

7  proofs of claim on behalf of the trust.  See claim numbers

8  21805, 22122, 22123 and 67753.  These claims were classified

9  in LBHI class 10B under the Lehman plan, docket number 22973

10  at section 4.14.  As described in the relevant prospectuses,

11  the only assets of these trusts was subordinated debt.  This

12  class of claim, like other classes of subordinated debt

13  against LBHI was not expected to receive any recovery under

14  the Lehman Plan and, indeed, it has not.  See disclosure

15  statement, docket number 19629 at page 85.  This Court

16  entered an order confirming the Lehman Plan on December 6,

17  2011, docket number 23023.

18    The Plan Administrator further argues that even if

19  the time to file claims or object to the plan

20  classification, has not long since passed, there is simply

21  no basis for reclassifying the claims of the trust.  The

22  Plan Administrator is correct:  The holders of shares in the

23  capital trust have no right to file proofs of claim.  That

24  right is held by the indentured trustees who properly filed

25  such claims in a timely fashion.  The trusts hold only

Page 18

1    subordinated claims.  The guarantee identified by Mr. Waske

2    is likewise subordinated and is not entitled to any

3    distribution.

4            As I noted during the hearing earlier today, this

5    Court previously denied a similar motion filed by Mr. Rex

6    Wu, one of the individuals who has filed a joinder to the

7    motion here.  While it is clear that Mr. Waske's motions

8    likewise failed on the merits, it is unnecessary for the

9    Court to reiterate what it has already said about those

10   arguments today and in previous rulings.  The time for Mr.

11   Waske to file a proof of claim has long since passed.  The

12   time for Waske to object to the reclassification of claims

13   under the plan have long since passed.  It is time for these

14   arguments to cease being made and for the resources of this

15   estate to not have to be deployed in order to address what

16   this Court considers to be these frivolous arguments.

17           With respect to the timing, Bankruptcy Rule

18   3030(c)(3) requires that the Bankruptcy Court establish a

19   deadline for filing poofs of claim in a chapter 11 case.

20   Claims filed after the bar date shall be disallowed.  A bar

21   date is, quote, critically important to the administration

22   of a chapter 11 case as it is intended to be a mechanism

23   providing the debtor and its creditors with finality.  See

24   Enron Creditors Recovery Corporation, 3070 Bankruptcy 90 at

25   94, Bankruptcy SDNY 2007.  A bar date allows the parties in

Page 19

1    a bankruptcy case to identify the universe of claims and

2    claimants in a reasonably prompt fashion, which is a

3    necessary step of achieving the goals of a successful

4    reorganization.  See First Fidelity Bank NA versus Hooker

5    Investments, In re Hooker, 937 F.2d 833, 840, Second Circuit

6    1991.  The bar date is not merely a procedural gauntlet;

7    It's an integral part of the reorganization process designed

8    to serve the efficient and fair administration of bankruptcy

9    cases.  See, In re Lehman Brothers Holdings, 433, Bankruptcy

10   113, Bankruptcy SDNY 2010, affirmed 445 Bankruptcy 137, SDNY

11   2011.

12         Bankruptcy courts do have discretion to enlarge

13   the time to file claims where the failure to file was the

14   result of excusable neglect.  See Bankruptcy Rule 906(b)(1).

15   This is, at its core, an equitable determination.  Four

16   factors determine are considered when analyzing excusable

17   neglect.  They are: one, the danger of prejudice to the

18   debtor; two, the length of the delay and its potential

19   impact on judicial proceedings; three, the reason for the

20   delay, including whether it was in the reasonable control of

21   the movant, and four, whether the movant acted in good

22   faith.  See Pioneer Investment Services Company versus

23   Brunswick Associates LP, 507 US 380 at 395, 1993.

24         The parties seeking an extension of time bears the

25   burden of proving excusable neglect.  In re Enron

Page 20

1    Corporation. 419, F3d, 115, 121, Second Circuit 2005.

2           In these cases in particular, enforcing the bar

3    date is of extreme importance.  In 2010, ten years ago, in

4    denying several motions to allow late file claims in these

5    cases, then presiding Judge Peck reasoned that allowing the

6    filing of late claims would expose the debtors to the risk

7    of a virtually never-ending claims resolution process.

8    Particularly in the context of these enormously complex

9    cases, the bar date order needs to be uniformly enforced

10   except in truly unusual and compelling circumstances.  In Re

11   Lehman Brothers Holdings, 433 Bankruptcy at 127.

12          Mr. Waske does not provide any reason for seeking

13   to lodge a claim against the Lehman Estate, more than a

14   decade after the claim's bar date, let alone a reason that

15   might constitute excusable neglect.  He implies that certain

16   recent events have provided another reason why he thinks he

17   ought to be able to file a claim.  This does not, in any

18   way, change the analysis, nor does the subsequent purchase

19   of claims in a bankruptcy proceeding.  As held by the Court

20   in Enron Corporation, the purchase of claims in a bankruptcy

21   proceeding should not grant a transferee any greater rights

22   than the transferor had.  See In re Enron Corporation 2005,

23   Westlaw 383, 2053 at star 14, Bankruptcy, Southern District

24   of New York, November 28, 2005.

25          The lateness of this request, as I've said, is all

Page 21

1    the more inexcusable as it comes years after the

2    confirmation of the Lehman Chapter 11 plan.  The claims of

3    the trust were treated under the Lehman plan as class 10(b)

4    claims.  Mr. Waske now seeks to reclassify these claims as

5    class four claims.  It bears noting that Mr. Waske is not a

6    plan proponent and, indeed, has no standing to seek to

7    modify the Lehman Plan at all, let alone at this late date.

8    See 11 USC, Section 1127(b), In re Boylan International

9    Limited, 452 Bankruptcy 43 at 48, Bankruptcy SDNY 2011.

10            While a plan proponent may seek to modify the plan

11   if, for example, unforeseen circumstances render the

12   confirmed plan unworkable, modifications that accept the

13   expectation of creditors should be prohibited.  See Boylan

14   International, 452 Bankruptcy at 50.  Confirmation of a plan

15   is the equivalent of a final judgment in the civil

16   litigation.  Section 1127, it reinforces the principal of

17   finality by preserving the rights bought and paid for under

18   the plan.  In re Rickel & Associates, 260 Bankruptcy, 673,

19   at 677, Bankruptcy SDNY 2001.

20            Simply put, Mr. Waske has not standing to seek to

21   modify the Lehman plan to change the classification of the

22   trust claims from class 10(b) to class four.  Indeed, even

23   if he did have standing, such a modification would severely

24   upset the expectation of creditors and would not be

25   warranted.  For these reasons, and the reasons discussed in

Page 22

1    the oppositions filed by the Plan Administrator and as

2    previously described by the Court on this record, the three

3    motions filed by Mr. Waske are all denied.

4            All right, Mr. Fail, I would ask that you

5    circulate an appropriate order and circulate it to Mr. Waske

6    and send it to chambers for us to enter.

7            MR. FAIL:  Thank you, Your Honor, we will.  And

8    thank you and your chambers for the time this morning and

9    leading up to it.

10           THE COURT:  Thank you.  This concludes the

11   hearing.  Thank you all for participating.  Everybody please

12   stay safe.

13           MR. WASKE:  Thank you, Your Honor.  Thank you, Mr.

14   Fail.

15           MR. WU:  Thank you.

16           MR. FAIL:  Thank you.

17

18           (Whereupon these proceedings were concluded at

19   10:37 AM)

20

21

22

23

24

25

Page 23

1                          I N D E X

2

3                            RULINGS

4                                              Page        Line

5

6    Three motions all denied                 22          3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A645

Page 24

1          C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 23, 2020

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS INC.,

7            Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 16-01019-scc

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   LEHMAN BROTHERS HOLDINGS INC.,

12                Plaintiff,

13           v.

14   1ST ADVANTAGE MORTGAGE, L.L.C., et al.,

15                Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   LEHMAN BROTHERS HOLDINGS INC.,

20                Plaintiff,

21           v.

22   GOLDWATER BANK, N.A., as SUCCESSOR TO COMMUNITY BANKS OF

23   COLORADO,

24                Defendant.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

1   Adv. Case No. 18-01825-scc

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   LEHMAN BROTHERS HOLDINGS INC.,

4                    Plaintiff,

5           v.

6   SUBURBAN MORTGAGE, INC.,

7                    Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 18-01839-scc

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  LEHMAN BROTHERS HOLDINGS INC.,

12                   Plaintiff,

13          v.

14  IMORTGAGE.COM, INC., et al.,

15                   Defendants.

16  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17

18

19

20

21

22

23

24

25

Page 3

1    Adv. Case No. 18-01842-scc

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    LEHMAN BROTHERS HOLDINGS INC.,

4                    Plaintiff,

5            v.

6    PMAC LENDING SERVICES INC., individually and as successor by

7    merger to PMC Bancorp, f/k/a Professional Mortgage Corp.,

8    and as successor by merger to Reliant Mortgage Company, LLC,

9    PMC BANCORP, f/k/a Professional Mortgage Corp.,

10   individually, Reliant Mortgage Company, LLC, individually,

11                   Defendants.

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   Adv. Case No. 19-01018-scc

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15   LEHMAN BROTHERS HOLDINGS INC.,

16                   Plaintiff,

17           v.

18   NETWORK FUNDING L.P., et al.,

19                   Defendants.

20   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21

22

23

24

25

Page 4

1   Adv. Case No. 19-01020-scc

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   LEHMAN BROTHERS HOLDINGS INC.,

4                    Plaintiff,

5            v.

6   THE CROSSFIRE FINANCIAL NETWORK, INC.,

7                    Defendant.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                    United States Bankruptcy Court

11                    One Bowling Green

12                    New York, NY   10004

13

14                    June 19, 2019

15                    10:11 AM

16

17

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   TENILLE

```
                                                    Page 5

 1   HEARING re Adversary proceeding: 16-01019-scc Lehman

 2   Brothers Holdings Inc. v. 1st Advantage Mortgage, L.L.C. et

 3   al Pre-Motion Conference

 4

 5   HEARING re Adversary proceeding: 18-01754-scc Lehman

 6   Brothers Holdings Inc. v. Goldwater  Bank, N.A., as

 7   successor to Community Ba  Pre-Motion Conference

 8

 9   HEARING re Adversary proceeding: 18-01825-scc Lehman

10   Brothers Holdings Inc. v. SUBURBAN MORTGAGE, INC.

11   Pre-Motion Conference

12

13   HEARING re Adversary proceeding: 18-01839-scc Lehman

14   Brothers Holdings Inc. v. Imortgage.com, Inc. et al

15   Pre-Motion Conference

16

17   HEARING re Adversary proceeding: 18-01842-scc Lehman

18   Brothers Holdings Inc. v. PMAC Lending Services, Inc.,

19   individually and as s Pre-Motion Conference

20

21   HEARING re Adversary proceeding: 19-01018-scc Lehman

22   Brothers Holdings Inc. v. Network Funding L.P. et al

23   Pre-Motion Conference

24

25
```

Page 6

1    HEARING re Adversary proceeding: 19-01020-scc Lehman

2    Brothers Holdings Inc. v. The Crossfire Financial Network

3    Inc.   Pre-Motion Conference

4

5    HEARING re 08-13555-scc Lehman Brothers Holdings Inc.

6    Doc #59614 Motion for an Order Enforcing the Modified Third

7    Amended Joint  Chapter 11 Plan of Lehman Brothers Holdings

8    Inc. and its Affiliated Debtors for Purposes of

9    Distributions filed by Rex Wu

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 7

```
1    A P P E A R A N C E S :

2

3    LANI ADLER PARTNERS

4         Attorneys for Suburban Mortgage Inc.

5         599 Lexington Avenue

6         New York, NY 10022- 6030

7

8    BY:  LANI A. ADLER

9

10   WOLLMUTH MAHER & DEUTSCH LLP

11        Attorneys for the Debtor

12        500 Fifth Avenue

13        New York, NY 10110

14

15   BY:  JAMES N. LAWLOR

16        BRANT DUNCAN KUEHN

17

18   OFFIT KURMAN

19        Attorneys for Goldwater Bank N.A

20        10 East 40th Street

21        New York, NY 10016

22

23   BY:  ALBENA I. PETRAKOV

24

25
```

Page 8

1   ALSO PRESENT TELEPHONICALLY:

2

3   TRACY HENDERSON

4   AARON MALO

5   MICHAEL KIEVAL

6   JASON SANJANA

7   ENZA BODERONE

8   KENNETH DUVALL

9   PHILIP STEIN

10  CHRISTOPHER LAVOY

11  AMJAD KHAN

12  REBECCA RODRIGUEZ

13  LILIT ASADOURIAN

14

15

16

17

18

19

20

21

22

23

24

25

Page 9

1               P R O C E E D I N G S

2          THE COURT:  Who's here who has a letter filed on

3     the docket?  I've got LoanDepot, Network Funding.

4          MR. LAVOY:  Yes.

5          THE COURT:  Who's here representing LoanDepot?

6          MR. LAVOY:  Good morning, Your Honor.  Chris LaVoy

7     on behalf of LoanDepot.

8          THE COURT:  Okay.  All right.  So let's look at

9     that one first.  And Mr. LaVoy, you sent a letter dated May

10    13th that asks to bring a motion to dismiss with respect to

11    successor liability.  Plan administrator says that they have

12    sufficiently alleged successor liability.  So have you folks

13    spoken to each other?

14         MR. LAVOY:  We have not, Your Honor.

15         MR. KUEHN:  Not since the letter, Your Honor.

16         THE COURT:  Okay.  So why don't -- why don't we

17    hear from the plan administrator your -- to the extent that

18    you have kind of a granular description of what's the basis

19    of your belief that there is successor liability here?

20         MR. KUEHN:  Certainly, Your Honor.  LoanDepot's

21    arguments primarily are based on the claims that the

22    Delaware Supreme Court hasn't recognized mere continuation

23    and that we haven't alleged sufficient fraudulent intent to

24    show a de facto merger.

25         THE COURT:  Mh hmm.

```
 1              MR. KUEHN:  However, while the Delaware Supreme

 2    Court has not explicitly recognized a mere continuation, the

 3    lower courts have, and there's no indication that the

 4    Supreme Court will not.

 5              Secondly, Delaware law, as we set out in our

 6    letter, does not require fraudulent intent to show a de

 7    facto merger.  And then if you look at the factual

 8    descriptions in our complaint, which are found at Paragraphs

 9    42 to 53, they're extensive.  Not to say that the

10    allegations in our complaint are necessarily sufficient to

11    prove --

12              THE COURT:  Understood.

13              MR. KUEHN:  -- these elements, but there's

14    certainly enough to survive a motion to dismiss.  It just

15    doesn't seem like a good use of our time to be briefing this

16    now before discovery.

17              THE COURT:  Okay.  Mr. LaVoy?

18              MR. LAVOY:  To clarify, Your Honor, with respect

19    to the de facto merger theory, one element of our argument

20    is that the fraud component has not been adequately pled.

21    And the caselaw is -- some cases appear to require a fraud

22    allegation or a fraud component to establish de facto

23    merger.  But we don't believe other elements necessary to

24    establish de facto merger inadequately alleged in the

25    complaint, so it's not isolated to the fraud element.
```

```
                                                    Page 11
 1              And then with respect to the companion mere

 2    continuation theory for successor liability, as opposing

 3    counsel pointed out, there have been open questions

 4    regarding whether the Delaware Supreme Court would recognize

 5    this theory of successor liability.  At least one court has

 6    held that it would not, and we believe it would be

 7    beneficial to have this threshold issue resolved at the

 8    outset to determine whether there's any mere continuation

 9    theory to proceed with for LBHI.

10              THE COURT:  Okay.  Thank you, Mr. LaVoy.  How many

11    loans are at issue here?  Do you know?

12              MR. KUEHN:  I don't know offhand.

13              MR. LAVOY:  I'm --

14              THE COURT:  Mr. LaVoy, do you know?

15              MR. LAVOY:  I didn't hear you.  I apologize, Your

16    Honor.

17              THE COURT:  I'm sorry?

18              MR. KUEHN:  He didn't hear you, Your Honor.

19              MR. LAVOY:  I didn't hear.

20              THE COURT:  My question is do you know how many

21    loans are at issue here, your client's loans?

22              MR. LAVOY:  I do not -- I do not know the exact --

23    I do not know the exact number.  I believe the value of the

24    numerous loans on the RMBS side is in the 20- to 30-million

25    range.
```

Page 12

1              MR. KUEHN:  That's correct, Your Honor.  It's 27.6

2      million.

3              THE COURT:  Okay.

4              MR. KUEHN:  Is the principle.

5              THE COURT:  All right.  Thank you.  All right.

6      Well, based on what you've said, you obviously don't agree.

7      I will -- I will simply say that there hasn't been a very

8      good track record which -- with respect to these motions,

9      but I'll give you the ability to file it.

10             So let's go through the other ones, and I want to

11     see if there are any efficiencies that we -- can be gained

12     to the extent that others who've made this request ought to

13     be on the same timeframe.  So thank you, Mr. LaVoy.

14             The next letter is on behalf of Network Funding.

15     Mr. Kieval?

16             MR. KIEVAL:  Yes, Your Honor.  This is -- yes,

17     Your Honor.  Michael Kieval on behalf of (indiscernible)

18     defendants.

19             THE COURT:  Okay.  All right.  So this is a --

20     this is a different basis.  This has to do with whether or

21     not a release contained in a prior settlement is applicable

22     here such that it would preclude the claims that LBHI has

23     filed.  And Lehman points out that the settlement that

24     you're talking about relates to different loans than the

25     settlement -- than what was at issue in the previous

1    settlement, and therefore the release does not apply.

2          MR. KUEHN:  Yes, Your Honor.  Not only does it

3    relate to different loans, but it precedes by almost a

4    decade the estimation here in the settlement.  So it simply

5    doesn't apply.

6          THE COURT:  Well, I don't know that those two

7    things are necessarily true.  In other words, the

8    settlement, as we all know, under my view of the law -- and

9    the settlement gave rise to indemnification claims.

10         MR. KUEHN:  Correct.

11         THE COURT:  Okay.  So whether or not a prior

12    settlement could borrow those claims is a separate question

13    from whether or not these are different loans.

14         MR. KUEHN:  Correct, but it's both the different

15    loans, the language of the settlement agreement, and the

16    time the settlement agreement was entered.

17         THE COURT:  Okay.  Well, all -- okay.  I was just

18    taking issue with that narrow statement that you made.

19         So Mr. Kieval, have you had a chance to consider

20    what the plan administrator has pointed out?

21         MR. KIEVAL:  Yes, and we've discussed this with

22    them previously, and there are a few issues.  First of all,

23    we believe that the language of the release itself does

24    cover it.  There are two parts of the release.  There's a

25    release of unknown claims arising from events that gave rise

Page 14

1    to the litigation, so that's -- we do believe that it comes

2    under that.

3              But broader than that, the issue here is this was

4    a settlement that merged into a judgment under Texas law,

5    and the Texas law treats preclusion fairly broadly in these

6    contexts.  And so we would argue that there is a -- that to

7    the extent that -- basically that there's a subject matter

8    -- when the judgment on dismissing their claims based on the

9    settlement was entered, that it had a much broader effect

10   than the language of the release because it's not simply

11   about the release.

12             But it goes on to -- there's another issue, and

13   one that the administration doesn't address at all in their

14   letter, which is the issue that there is a merger clause and

15   that the merger clause supersedes all previous agreements.

16   And therefore, to the extent that they're suing under the

17   same agreement, those agreements no longer exist and are no

18   longer binding on my client.

19             THE COURT:  Okay.  Well, I'm not going to do the

20   merits on this basis.  I'm not particular persuaded by, at

21   this point, by any argument that based on Texas law the

22   analysis would be any different.  Either the release relates

23   to this and it covers it or it doesn't.

24             I think that I've got some selective quoting of

25   the documents back and forth to me, and you're just going to

Page 15

1    have to brief it.

2             So we're going to -- at the conclusion of this

3    morning session, we'll come up with a briefing schedule.

4    All right?

5             MR. KIEVAL:  Thank you, Your Honor.

6             THE COURT:  Okay.  Okay.  The next letter is PMAC

7    Lending Services.

8             MR. KHAN:  Yes.  Good morning, Your Honor.  This

9    is Amjad Khan representing PMAC and then also PMC Bancorp

10   and Reliant --

11            THE COURT:  Okay.

12            MR. KHAN:  -- for which you received letters as

13   well.

14            THE COURT:  Okay.  So your letter raises both the

15   statute of limitations issue and the successor liability

16   issue.

17            MR. KUEHN:  Yes, Your Honor.

18            MR. KHAN:  Yes, Your Honor.

19            THE COURT:  So Mr. Khan, are you aware of the

20   extensive procedural history that exists with respect to the

21   statute of limitations issue in this court and elsewhere?

22            MR. KHAN:  Yes, I'm keenly aware of it, Your

23   Honor, and I am also aware of Your Honor's ruling in the

24   Universal Mortgage case.  I -- but I do believe that the

25   facts of our case are unique in several ways.  And if Your

1    Honor can indulge me for a minute, I can explain why.

2              THE COURT:  No, I don't -- I'm not going to

3    indulge you for a minute.  If you --

4              MR. KHAN:  Well, I -- what I mean to say is that

5    --

6              THE COURT:  Excuse me.

7              MR. KHAN:  -- there's a judgment --

8              THE COURT:  Excuse me.

9              MR. KHAN:  -- in our case.

10             THE COURT:  Excuse me.  To the extent that you

11   believe that you will be successful in convincing me that

12   the claims are time barred, you can make a motion.  I am not

13   -- I am telling you, and I've said it repeatedly, I'm not

14   going to, from scratch, redo what I have done multiple

15   times.  So you can make your motion and I'll rule on it, but

16   the ruling may simply say, for the reasons stated in my

17   previous ruling, and see also the statements made by the

18   district court in declining the request to appeal my

19   previous ruling.

20             So, you know, you're entitled to due process.

21   You're entitled to establish why -- you know, at least to

22   have some ruling from this court as to whether or not that

23   statute of limitations ruling applies to you.

24             MR. KHAN:  Understood, Your Honor.

25             THE COURT:  But you ought to go through it very

1    carefully because there continues to be a disconnect in how

2    folks are reading the Tenth Circuit decision and the way

3    that I have interpreted it, which I'm not going to be

4    dialing back.

5            So what you're going to have do though is you're

6    going to have to make two separate motions.  You're going to

7    have to make a motion with respect to the Tenth Circuit

8    theory, so to speak, and then a separate motion on the

9    successor liability.

10           MR. KHAN:  Understood, Your Honor.  May I

11   respectfully raise one procedural point which I think is

12   critical that was raised by Lehman?  And this is an

13   important clarification.

14           In Your Honor's amended CMO, Your Honor can see

15   that in Section 2-I, Your Honor permitted threshold motions.

16   Any defendant would reserve with a supplemental or

17   additional complaint to any threshold motion, and so Lehman

18   argued that 2-E governs the situation for our defendant, but

19   I want to make it very clear that we are listed in Exhibit

20   4, all of our clients.  And so the letter brief that was

21   actually filed -- letter response that was filed by Lehman

22   with respect to the letters that we raised on May 13th are

23   not actually permitted under Section 2-I.

24           And I raise it only because this is an important

25   procedural point that I think it governs LoanDepot and

1    Reliant, PMAC, and PMC where Your Honor permitted any

2    threshold motion.  And Lehman seems to think that we are

3    governed by 2-E, which is a supplemental brief process.

4              THE COURT:  Okay.  It's really -- it's not worth

5    talking about.  You're going to make your motion.

6              MR. KHAN:  Yes.  I --

7              THE COURT:  Right?

8              MR. KHAN:  -- just wanted to point that out.

9    That's fine, Your Honor.  Yeah.

10             THE COURT:  What -- am I missing something?

11             MR. KHAN:  No.

12             THE COURT:  Okay.  So you're going to make your

13   motion, and we'll -- when we get to the end, we'll figure

14   out a way to establish a briefing schedule.  If not today,

15   then in some relatively coordinated fashion.

16             Okay.  So Mr. Khan, that -- we've covered your

17   other letter as well; have we not?

18             MR. KHAN:  You have, Your Honor, with your -- with

19   your observations.

20             THE COURT:  Okay.

21             MR. KHAN:  I think that covers both letters.

22             THE COURT:  Okay.

23             MR. KHAN:  Thank you.

24             THE COURT:  All right.  Just to make that clear,

25   so that's also with respect to the second letter that you

Page 19

1    filed.  Okay.

2              So just for the record, that was PMAC Lending

3    Services and PMC Bancorp.  Okay.

4              So that brings us to Crossfire Financial Network.

5    Is anyone here --

6              MS. RODRIGUEZ:  Yes.

7              THE COURT:  Yes.

8              MS. RODRIGUEZ:  Good morning, Judge.  Rebecca

9    Rodriguez from GrayRobinson on behalf of Crossfire Financial

10   Network.

11             THE COURT:  Okay.  All right.  So Ms. Rodriguez,

12   you have two different matters that you raise.  One is a

13   release issue, and one is a motion to transfer venue.

14             MS. RODRIGUEZ:  Correct, Judge.

15             THE COURT:  Okay.  Are you -- are -- have you

16   familiarized yourself with the decisions that were rendered

17   within other -- in many other cases requesting a venue

18   transfer?

19             MS. RODRIGUEZ:  Yes, Your Honor.  I've researched

20   your opinions in prior adversary proceedings related to this

21   bankruptcy on that issue.

22             THE COURT:  And you think it would be worthwhile

23   to move the transfer venue?

24             MS. RODRIGUEZ:  Well, for a limited reason,

25   potentially yes, Judge.  There might be a benefit to

Page 20

1    extension here.  So the Florida judge who presided over one

2    of the Crossfire cases with Aurora Bank could interpret and

3    determine the scope and application of the settlement

4    agreement because Crossfire and Aurora settled three

5    lawsuits.  And the settlement agreement between those two

6    entities states that it's to be interpreted under Florida

7    law.

8              So for that very limited reason, I thought there

9    might be a potential benefit to having this matter

10   transferred back to the Florida judge for the Florida judge

11   to determine whether that settlement agreement under Florida

12   law should extend to subsequent matters based on the

13   language of the release.

14             MR. KUEHN:  Your Honor, we disagree, obviously.

15   First of all, as to the merits of the settlement agreement

16   itself, as we pointed out in the letter response,

17   Crossfire's letter omitted key language from the release

18   which limits the extent of the release to matters that are

19   relating to or arising from the judgments.  Those judgments

20   relate to individual loans that are not the loans at issue

21   in the adversary proceeding, clearly unrelated.  We don't

22   think there's any --

23             THE COURT:  All right.  So hold on.  So, Ms.

24   Rodriguez, do you have a response to that?

25             MS. RODRIGUEZ:  Yes, Judge.  The release language

Page 21

```
 1    under Florida law applies to subsequent matters between the

 2    parties and, if I can pull it, the language itself --

 3            THE COURT:  So if there were -- if there were a

 4    slip-and-fall claim, it -- your view of the prior release

 5    was that it would cover it and preclude that?

 6            MS. RODRIGUEZ:  No.  If it was related to the loan

 7    purchase agreement, which was the subject matter of those

 8    lawsuits, then yes.

 9            MR. KUEHN:  If it had --

10            MS. RODRIGUEZ:  Aurora sued Crossfire in Colorado

11    and in Florida alleging that they're the successor to the

12    loan purchase agreement that's now at issue in this lawsuit.

13    And when the parties negotiated a resolution of those suits,

14    it included this very broad release language, which contains

15    language like whether known or unknown, and it applies to --

16    it applies to any successors or assigned to party's

17    hereafter can, shall, or may have (indiscernible) equity.

18    And it's very broad language.  And because that settlement

19    agreement has to be interpreted under Florida law, because

20    that's what the parties agreed to, that language is very

21    favorable to Crossfire in this instance, particularly

22    because three of the five loans --

23            THE COURT:  Okay.  Ms. Rodriguez, hold -- Ms. --

24    please.  I'm not interested in a full argument on the

25    merits.  Okay?  I understand what your plan is.  All right?
```

Page 22

1    Okay.

2              I don't see any way around having to brief this.

3    I have yet to grant a motion for a change of venue.  I would

4    encourage you to think carefully about whether or not you

5    think that that's worth doing.  I can interpret Florida law

6    as well as anyone else, and I really would like to have this

7    proceed as efficiently as possible.

8              But on the language -- on the motion with respect

9    to the release, we're just going to have to have full

10   briefing because I can't -- I can't piecemeal determine

11   whether or not one or the other of you is giving me the

12   correct view of the release.  I mean, I know that these

13   releases refer to LPAs, whether or not it says what you say,

14   Ms. Rodriguez, or whether it says what the plan

15   administrator says.  We'll just have to determine.

16             How many loans are at issue on this one; do we

17   know?  Or notional value?

18             MR. KUEHN:  (Indiscernible) tell you quickly.

19             MS. RODRIGUEZ:  It's five loans, and it's a -- the

20   payment in total is a little over $1 million.

21             THE COURT:  Okay.  All right.  If you would stand

22   by, Ms. Rodriguez, for us to have the scheduling discussion.

23   We're almost done.

24             MS. RODRIGUEZ:  Thank you, Judge.  And I will

25   (indiscernible) my client on your guidance and

Page 23

1    recommendations on the venue issue.  I will discuss it.

2              THE COURT:  Okay.  I wouldn't characterize it as

3    recommendation so much as an observation.  All right?

4              MS. RODRIGUEZ:  Understood.  Thank you, Judge.

5              THE COURT:  Thank you.

6              All right.  So that brings us up to Goldwater Bank

7    as successor to Community Banks of Colorado.

8              MS. PETRAKOV:  Good morning.

9              THE COURT:  Hello.  Thank you for being here in

10   person.

11             MS. PETRAKOV:  I'm Albena Petrakov, Offit Kurman,

12   on behalf of Goldwater.

13             THE COURT:  Yes.  So this is a successor liability

14   issue.  You state in your letter, Ms. Petrakov, that this

15   lack of specific allegations reflects Plaintiff's failure to

16   engage in any reasonable investigation of facts.  Had LBHI

17   done so, it would have discovered that Goldwater bank is not

18   a successor to Community Banks of Colorado.  Community Bank

19   entered receivership.  A small subset of assets was

20   transferred, etc.

21             So have you had a chance to speak to each other?

22             MS. PETRAKOV:  We had a brief chance to talk with

23   Mr. (indiscernible), and I have provided some documentation

24   to show that Affiliated Financial Group LLC, which is a --

25             THE COURT:  Mh hmm.

Page 24

```
 1            MS. PETRAKOV:  -- (indiscernible) owned subsidiary
 2    of Goldwater Bank, purchased a small subset of assets in
 3    2009, before the receivership.
 4            THE COURT:  Mh hmm.
 5            MS. PETRAKOV:  And we agreed to disagree.  We
 6    haven't reached any common solution.  I don't think that the
 7    mere -- the de facto merger or continuation exceptions apply
 8    to the extent CBC continues to exist after the purchase.  I
 9    don't think there could be a de facto merger under Colorado
10    law, which is going to be the active law.
11            And with respect to the continuation, under
12    Colorado law, to establish continuation, you need to prove
13    continuation of the company or the entity, meaning same
14    shareholder interests or officers and directors, not
15    continuation of the business operations.
16            As (indiscernible), we think that neither
17    Goldwater Bank nor the subsidiary belong in this case.
18            THE COURT:  Okay.  Thank you.  This seem -- this
19    one seems a little different than the other ones.
20            MR. KUEHN:  I -- it is, but it flags the same
21    issue that we face that we face in many of the successor
22    claims, and that is that the documents, facts, the
23    information is primarily in the hands of the defendants.  We
24    can do our diligence.  We can search the public record.  But
25    unless it's a, you know, a publicly traded company, unless
```

1    it files with the SEC, there's limited diligence there.

2    There's limited information that we can get from the public

3    record.  And --

4              THE COURT:  But in this situation -- I don't

5    disagree with that, but in this situation, Ms. Petrakov

6    seems to have supplied you, just in this letter, with a

7    bunch of facts and seems to me to be willing to give you

8    more facts.

9              MR. KUEHN:  If we can -- pardon me.

10             THE COURT:  Yeah.

11             MR. KUEHN:  If we can engage in discovery before

12   the motion is filed, that would make sense.  We're happy to

13   address the motion once --

14             THE COURT:  Well, I don't want to use the word

15   "discovery."  I would like to use the word "diligence."

16             MR. KUEHN:  Diligence.

17             THE COURT:  I don't want to -- we're not going to

18   do --

19             MR. KUEHN:  So --

20             THE COURT:  I think it kind of defeats the purpose

21   to be doing discovery, which is litigation.  I think that

22   you are limited.  You only know -- you only can know what

23   you know, but you have somebody here who's willing to give

24   you information.  Once you have the information, if you --

25   if you still agree to -- if you disagree, you're going to --

1    the motion's going to have to move forward and we'll have to

2    deal with it then.

3             But right now, it seems like just in this letter

4    there's a bunch of information that you ought to take some

5    time to evaluate and figure out whether you want to pursue

6    this or whether you need to amend.

7             MR. KUEHN:  That's fine.  As long as we can

8    exchange information and continue to discuss before motions

9    are filed, that would make sense.

10            THE COURT:  Okay.  All right.  So Ms. Petrakov,

11   you're willing to do that?

12            MS. PETRAKOV:  Absolutely.

13            THE COURT:  Following up on what you just said.

14            All right.  So for this one, I'm not going to ask

15   you that arrive at a briefing schedule today.  I'm just

16   going to ask that, as promptly as practicable, you exchange

17   information.  Keep talking to each other.  If you get to an

18   agreement, I'll see a voluntary dismissal or something on

19   the docket.  If you don't, then let us know and come up with

20   a briefing schedule.

21            MS. PETRAKOV:  Thank you, Your Honor.

22            MR. KUEHN:  Thank you, Your Honor.

23            THE COURT:  All right?  Okay.  Very good.  Thank

24   you, Ms. Petrakov.

25            Okay.  So is that -- that covers all of the letter

Page 27

1    requests except for Ms. Adler.

2              MS. ADLER:  Right.

3              MR. KUEHN:  Correct, Your Honor.

4              THE COURT:  So Ms. Adler's in a category of her

5    own.  So let's come on up, but let's --

6              MS. ADLER:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              Yeah, so do we want her tried with everyone -- you

9    have her on the phone.  We want to try to gather a set of

10   briefing schedules for the other motions to dismiss, or do

11   you want to take that offline and see what -- how you can do

12   that?  I'd like them all to be on relatively the same track

13   so that I can achieve any efficiency that might be

14   available.

15             MR. KUEHN:  I think it's probably something that

16   we can accomplish offline --

17             THE COURT:  Okay.

18             MR. KUEHN:  -- and send you a letter in the next

19   day or so.

20             THE COURT:  Okay.  All right.  So folks on the

21   phone, I think that makes sense so I don't have to keep

22   other folks in the courtroom waiting.  So why don't you work

23   on a briefing schedule sooner rather than later?

24             And the issues are not extensive, so I don't need,

25   you know, bunches of affidavits and 30-page briefs and

Page 28

1    whatnot.  But see if you can work something out.

2              MR. KUEHN:  Yes, Your Honor.

3              THE COURT:  All right.  And then in terms of a

4    hearing date, do you want to do that now and then work

5    backward from that?  Do you want to pick a hearing date?

6    Because --

7              MR. KUEHN:  Sure.  We can do that.

8              THE COURT:  Because you're here.

9              MR. KUEHN:  Yes.

10             THE COURT:  So are we looking at July, August,

11   September?  You tell me.

12             MR. KUEHN:  I would imagine --

13             THE COURT:  With a lot of backs and forths.

14             MR. KUEHN:  Yeah.  I would imagine -- I would

15   imagine August, perhaps September?  I don't know how long

16   the defendants are going to need to file their initial

17   motions.  Obviously, we've done a lot of work on the -- on

18   our side to prepare.

19             THE COURT:  Right.

20             MR. KUEHN:  So it shouldn't take too long to

21   respond.

22             THE COURT:  Okay.  Why don't -- why don't I do

23   this?  Instead of making you pick a date, a firm date,

24   today, why don't I tell you what's available in August and

25   what's available in September, and then that can be part of

1   your discussion.

2            MR. KUEHN:  Perfect.

3            THE COURT:  Okay.  All right.  So in August, the

4   -- August 12th through 15th I think would be the best choice

5   for August.  The prior week I'm out teaching and whatnot.

6   And the end of August always elicits family commitments and

7   picking kids up from camp and whatnot.  So we don't want to

8   do that.

9            September is complicated as well.  It would have

10  to be the 4th or 5th, which is the Wednesday and Thursday

11  after Labor Day.  And then the next -- really the --

12  incredibly, the next available date would probably be in

13  October because of -- I have other commitments and there's

14  the Jewish holidays.

15           So I would love to have the -- the 4th and the 5th

16  look really good to me, of September.

17           MR. KUEHN:  Okay.  We'll discuss with the

18  defendants and see if we can work out a schedule that lands

19  on the 4th and 5th.

20           THE COURT:  Okay.  That ought to be doable because

21  that's almost two months out from now.

22           MR. KUEHN:  Should be plenty of time.

23           THE COURT:  Okay.  Just take sure that when you're

24  doing the schedule that the last piece of paper in gets --

25  would get to me no later than August 22.

Page 30

```
 1              MR. KUEHN:  Certainly.
 2              THE COURT:  Okay?  Okay.  So if the folks who are
 3    on the phone for the first segment want to ring off, you're
 4    very welcome to.  You can stay onboard if you like.
 5              Okay.  Ms. Adler.
 6              MS. ADLER:  Good morning, Judge.
 7              THE COURT:  Good morning.  How are you?
 8              MS. ADLER:  I am good.  It's nice to see you,
 9    Judge.
10              THE COURT:  Is it really?
11              MS. ADLER:  Yeah.  Yeah.  It's been a while.  It's
12    been a while.  I try to stay out of trouble --
13              THE COURT:  Okay.
14              MS. ADLER:  -- when we're not -- we're not here.
15              THE COURT:  Very good.  So you filed a letter.
16              MS. ADLER:  We filed a letter following the filing
17    of the motion to dismiss, obviously.
18              THE COURT:  Right.
19              MS. ADLER:  And the motion to dismiss is based
20    wholly on Your Honor's decision.
21              THE COURT:  So this is a fascinating -- this is
22    fascinating to me.  What you're telling me in the letter is,
23    based on my decision on subject matter jurisdiction, I'm now
24    going to dismiss these cases.
25              MS. ADLER:  I think you might, Your Honor.
```

Page 31

1              THE COURT:  Can you tell --

2              MS. ADLER:  I think you should.

3              THE COURT:  Tell me how I'm going to do -- why I'm

4    going to do that.

5              MS. ADLER:  Because as I understood Your Honor's

6    GSE subject matter jurisdiction argument, I'll call it, Your

7    Honor determined that there was a close nexus because these

8    were prepetition litigation claims that LB -- prepetition

9    contingent, unmatured litigation claims that LBHI had at the

10   time of the bankruptcy filing, prior to the bankruptcy

11   filing, and as to which the plan retained jurisdiction.

12             And I believe that we have put in sufficient

13   document-related facts to show Your Honor, at least with

14   respect to the RMBS claims asserted against the moving

15   defendants, that one of two things are the case.  Either any

16   possible claims that Lehman Brothers Bank had were not

17   assigned to LBHI till long after the petition, and in some

18   instances until long after the plan was confirmed and became

19   effective.

20             THE COURT:  Okay.  So time out.

21             MS. ADLER:  Yeah.

22             THE COURT:  So let me -- let me stay -- let me

23   stay with you because this was presented in your letter in a

24   very truncated way.

25             MS. ADLER:  Right.

1               THE COURT:  That's not a criticism.

2               MS. ADLER:  We only have two pages.

3               THE COURT:  I understand.

4               MS. ADLER:  Got it.

5               THE COURT:  So what you're saying is that for

6       Fannie and Freddie, the estate had contingent

7       indemnification claims.

8               MS. ADLER:  No.  I'm saying that we did not

9       discuss the assignment issues in connection with Fannie and

10      Freddie.

11              THE COURT:  Okay.  But, you see, you're jumping

12      between -- you started with that the -- you're telling me

13      that the premise of my previous decision with respect to

14      subject matter jurisdiction on the Fannie and Freddie claims

15      was the fact that those were prepetition contingent claims.

16              MS. ADLER:  Right.  That is what Your Honor's

17      concluded were --

18              THE COURT:  Well, that -- those are the facts from

19      the ground, right?

20              MS. ADLER:  I don't -- actually, Judge, I believe

21      you found those facts.  I don't think there is records

22      supporting those facts.  I think they're simply allegations

23      in the complaint.  So -- and there's nothing very clear in

24      the complaint about when --

25              THE COURT:  Well, hold on.

Page 33

1            MS. ADLER:  -- the rights were assigned by Lehman

2     Brothers Bank to LBHI.

3            THE COURT:  No, no, no.  Don't talk to me about --

4     don't talk about assignments.  I'm just talking about that

5     Fannie and Freddie filed huge claims against Lehman,

6     prepetition claims, right?  And --

7            MS. ADLER:  Fannie and Freddie, yes.

8            THE COURT:  Yes.

9            MS. ADLER:  That's not -- I'm -- but you're

10    misunderstanding me.  My under -- maybe I misspoke.

11           THE COURT:  Perhaps you're not explaining it --

12           MS. ADLER:  I am sure that's correct, Judge.  Let

13    me try again.

14           THE COURT:  So, but let me -- let me try this.

15    Fannie and Freddie had huge claims against the estate,

16    right?  The estate settled those.

17           MS. ADLER:  Correct.

18           THE COURT:  Right?  And then arising out of those

19    settlements, the estate asserted the downstream claims

20    against, amongst others, your clients.

21           MS. ADLER:  That's correct.

22           THE COURT:  Okay.  Okay.  You try because I'm not

23    understanding what you're saying.

24           MS. ADLER:  Okay.  As I read your GSE subject

25    matter jurisdiction case, and I have read it many times --

Page 34

```
 1              THE COURT:  Okay.

 2              MS. ADLER:  -- my understanding of your analysis

 3     and the reason that you concluded that there was a close

 4     nexus sufficient to predicate subject -- related to subject

 5     matter jurisdiction was because you state -- and you state

 6     it three times -- that LBHI --

 7              THE COURT:  Mh hmm.

 8              MS. ADLER:  -- held contingent, unmatured,

 9     prepetition claims against the mortgage originators.

10              THE COURT:  Yes.

11              MS. ADLER:  Okay.

12              THE COURT:  Yes.

13              MS. ADLER:  My point is I don't think that's

14     factually accurate.  I think that is --

15              THE COURT:  You thought I was wrong then or you

16     think I'm not going to be able to say that about the --

17              MS. ADLER:  I don't think the record was before

18     you then, so I think it was immaterial.  And the allegations

19     in the complaint do not, I think, conspicuously fail to

20     specify when Lehman Brothers Bank, non-debtor Lehman

21     Brothers Bank, assigned its rights, remedies,

22     representations, and warranties to Lehman Brothers Holdings.

23     And --

24              THE COURT:  Okay.  Now I -- now I understand what

25     you're saying.
```

1            MS. ADLER:  So -- right.  So if I --

2            THE COURT:  Now I understand what you're saying.

3            MS. ADLER:  Okay.  I'm sorry if that didn't come

4    across clearly.

5            THE COURT:  Without -- no, without -- I'm not --

6    I'm not going to agree or disagree with how --

7            MS. ADLER:  I understand.

8            THE COURT:  -- you're characterizing the opinion,

9    but now at least I understand what you're saying.

10           MS. ADLER:  So the arguments very sketchily in the

11   -- not sketchy arguments but to abbreviate them -- in the

12   motion to dismiss are effectively twofold.  One is that the

13   assignment documents available in the public record -- and

14   from submissions --

15           THE COURT:  Mh hmm.

16           MS. ADLER:  -- that Lehman has filed show that the

17   rights that would give Lehman the ability to -- Lehman

18   Holdings the ability --

19           THE COURT:  Mh hmm.

20           MS. ADLER:  -- to come after our clients, they

21   didn't get those rights till post-petition.

22           THE COURT:  I understand what you're saying.

23           MS. ADLER:  Or --

24           THE COURT:  Right.

25           MS. ADLER:  -- from a more conventional standpoint

Page 36

1    point of view, which is also, as you know --

2              THE COURT:  Mh hmm.

3              MS. ADLER:  -- analyzed under 12 B-1 that if

4    Lehman Brothers Holdings purportedly got these rights before

5    it filed its bankruptcy filing, those rights were divested

6    when the loans were sold by Lehman Brothers Holding through

7    SAS Co, through Structured Assets Securities Corporation --

8              THE COURT:  That's a different argument.

9              MS. ADLER:  To the RMBS trustees.

10             THE COURT:  Okay.  That's a different argument.

11             MS. ADLER:  But they're two prongs in --

12             THE COURT:  That's what I call the Goldilocks

13   argument.  At one point it was too early, at one point it

14   was too late --

15             MS. ADLER:  Right.

16             THE COURT:  -- but it was never just right.

17             MS. ADLER:  Correct.

18             THE COURT:  Okay.

19             MS. ADLER:  That's exactly right.

20             THE COURT:  Right.

21             MS. ADLER:  That is --

22             THE COURT:  That's your argument?

23             MS. ADLER:  That is the argument.

24             THE COURT:  Okay.

25             MS. ADLER:  That's correct.

1           THE COURT:  All right.  So I understand what

2    you're saying now.

3           MS. ADLER:  Good.

4           THE COURT:  Do you understand what Ms. Adler is

5    saying?

6           MR. KUEHN:  I think I do.

7           THE COURT:  I know you disagree with it, but do

8    you understand what she's saying?

9           MR. KUEHN:  I believe I understand the argument.

10          THE COURT:  Okay.  So, you know, so you're going

11   to have -- you're going to -- you're going to make this

12   motion.

13          MS. ADLER:  Well, if you give us permission to

14   make the motion.

15          THE COURT:  Well, I'm --

16          MS. ADLER:  We've made the motion to dismiss.  Mr.

17   -- Lehman Holdings opposition is due, Mr. Brent just told

18   me, July 12th.

19          THE COURT:  Right, but --

20          MS. ADLER:  And that'll be fully briefed --

21          THE COURT:  Okay.

22          MS. ADLER:  -- in August.

23          THE COURT:  But -- okay.  But I'm not going to say

24   discovery.

25          MS. ADLER:  I understand.  But the -- I mean, I --

Page 38

1           THE COURT:  What this is only about -- not only,

2    but this is about not whether these cases go on but whether

3    these cases go on here because I can't preside unless I have

4    subject matter jurisdiction.

5           MS. ADLER:  Well, that's correct.

6           THE COURT:  Right.

7           MS. ADLER:  And they or may not go on elsewhere.

8    Who knows?  I mean, if you don't have subject matter -- if

9    you don't have subject matter jurisdiction, no one in the

10   Southern District does on a related-to basis, and I don't

11   know if there are other independent bases for federal court

12   jurisdiction and/or, if there were, if there would be

13   personal jurisdiction.  With respect to my client, there

14   would not be personal jurisdiction, I don't think --

15          THE COURT:  All right.  Well, that's --

16          MS. ADLER:  -- in the Southern District.

17          THE COURT:  That's way beyond what we're going to

18   talk about.

19          MS. ADLER:  Right.

20          THE COURT:  So, okay.  So why don't you have a

21   seat.

22          MS. ADLER:  Okay.

23          THE COURT:  Thank you for patiently explaining

24   what your -- what your theory was.  Okay.

25          MR. KUEHN:  So, Your Honor, first of all, before I

1    even get into the merits on their motion to dismiss --

2              THE COURT:  Yeah.  You don't have to get --

3              MR. KUEHN:  -- which I don't think makes sense.  I

4    don't think it makes sense here today.

5              THE COURT:  That's -- don't make -- don't get into

6    the merits of the motion.  I was just -- based on the

7    limited description in Ms. Adler's letter, I wanted to

8    understand what her thinking was.  Now I understand what her

9    thinking was, and I'm not saying whether I agree with it --

10   whether I agree with the new theory, whether I agree with

11   the characterization of the previous onionin, none of that.

12   This was simply a request for a stay of discovery, and I'm

13   -- I've had those requests before, and I'm not going to

14   grant it now.  So go -- so I don't know that there's that

15   much more to talk about.

16             MR. KUEHN:  I don't hint I have anything else to

17   say if you're denying their request to file a motion for

18   stay of discovery.

19             THE COURT:  Well, Ms. Adler, do you want to file a

20   formal motion?

21             MS. ADLER:  Yeah, we -- I mean, there are -- you

22   know, there's caselaw on when a stay of discovery may be

23   appropriate, and the standards which I specified in the

24   letter are the Court is to consider the -- it is true it's

25   discretionary.  It's not automatic, but if the Court doesn't

Page 40

1    have subject matter jurisdiction and there's good argument,

2    an argument that is quote "not unfounded in the law," and

3    respectfully, it's your argument that we're relying upon

4    here, so I know, you know, it's founded in the law.  People

5    should not be going forward.

6              And then the other factors that you consider are

7    the breadth of the discovery sought, the strength of the

8    underlying motion, and the burden, and whether the motion is

9    potentially dispositive.

10             THE COURT:  How many -- how many loans are

11   involved in --

12             MS. ADLER:  In the moving defendants?  From -- on

13   behalf of the moving defendants?

14             THE COURT:  Mh hmm.

15             MS. ADLER:  Ms. Henderson's on the line, and she

16   can tell you how many are from her clients.  Between my

17   clients and counsel representing the other moving

18   defendants, there are about 55.

19             THE COURT:  What are the -- where are we in the

20   CMO in terms of moving deadlines for discovery?

21             MS. ADLER:  We --

22             THE COURT:  Because you're asking me to basically

23   suspend the CMO.

24             MS. ADLER:  No, I'm not at all.  And I'm -- we're

25   not asking about the GSE because that case is continuing.

1    We're talk about the RMBS --

2              THE COURT:  And you're asking me to suspend the

3    CMO with respect to the RMBS.

4              MS. ADLER:  Yeah, but there're --

5              THE COURT:  The new wave.

6              MS. ADLER:  -- 30 defendants.  Maybe 20 moving

7    defendants.  There are 190-plus other defendants.

8              THE COURT:  No, but you're asking me to disrupt

9    the CMO with regard to all those defendants, to suspend the

10   CMO.

11             MS. ADLER:  Pending Your Honor's decision on the

12   --

13             THE COURT:  Ms. Adler, the effect of that is that

14   the dates in the CMO would be suspended until I decide.

15             MS. ADLER:  I actually, Your Honor, well, don't

16   think that it's likely.  We're asking for a brief stay

17   pending your decision.

18             THE COURT:  But it would -- if it --

19             MS. ADLER:  You'll have the papers in August, at

20   the latest.

21             THE COURT:  If there -- if there -- if there's a

22   discovery deadline in August, I'm not --

23             MS. ADLER:  No, discovery is ongoing.  I mean, the

24   parties have exchanged -- and Mr. Kuehn will correct me if

25   I'm wrong -- have exchanged requests for production and

Page 42

1   interrogatories and their objections to them.  There have

2   been -- the only documents that have been produced which

3   were not sort of part of formal discovery were the loan

4   files --

5             THE COURT:  Okay.

6             MS. ADLER:  -- and the trust documents that Your

7   Honor --

8             THE COURT:  So answer me this.  What's the next

9   date?  I don't want to bother having to rule on a motion

10  where, as a practical matter, there's no effect.  If there

11  are --

12            MS. ADLER:  Well, we are all -- there's very, you

13  know, the --

14            THE COURT:  Could someone answer my narrow

15  question?  What is the next operative date in the CMO that

16  would be suspended if I were to agree with you that

17  discovery should be stayed?

18            MS. ADLER:  Hold on just a minute, and I will tell

19  you.

20            THE COURT:  Do you know, Mr. Kuehn?

21            MR. KUEHN:  Substantial completion --

22            MS. HENDERSON:  Good morning, Your Honor.  This is

23  Tracy Henderson, American Mortgage Law Group --

24            THE COURT:  Well, Ms. Henderson, no.  No, no, no.

25  Hang in there.  I'm going to hear from Mr. Kuehn.

1          MS. HENDERSON:  I wanted to ask a question, Judge.

2          MR. KUEHN:  The next hard and fast date in the CMO

3     related to document production and discovery is the

4     substantial completion of discovery, of document production

5     on April 13th next year.

6          THE COURT:  On April 13th next year?

7          MR. KUEHN:  Yes.

8          THE COURT:  So Ms. Adler, why are we doing this?

9     What's the point?

10          MS. ADLER:  Because, Your Honor, before April

11     13th, everybody is in good faith trying very hard to cull

12     trillions of documents responsive to, you know, what both

13     sides think are very overbroad document requests.

14          THE COURT:  Okay.  So if you -- if you -- if you

15     do nothing until I rule on this sometime in the fall, you

16     have until April next year.

17          MS. ADLER:  No, I would -- theoretically you're

18     supposed to be producing on a rolling basis, and so is every

19     --

20          THE COURT:  So just roll slower.

21          MS. ADLER:  Well, okay.  I mean, I --

22          THE COURT:  I mean, this is --

23          MS. ADLER:  I think it's --

24          THE COURT:  Listen.  This is a waste of everyone's

25     time.

Page 44

1          MS. ADLER:  On the contrary, Your Honor.  If --

2          THE COURT:  There is no effect.  If I were to

3    grant a quote, unquote "stay," there is no effect.

4          MS. ADLER:  There actually is an effect, Your

5    Honor.  Our clients are all spending a whole lot money

6    looking for responsive documents determining what's

7    responsive.

8          THE COURT:  Mr. Kuehn, I don't --

9          MS. ADLER:  We're not waiting until April.

10         THE COURT:  I don't want to have the estate or

11   these parties spend money on a motion for stay of discovery

12   when there is no practical effect of it.  What am I missing

13   here?  There's not -- there aren't depositions scheduled for

14   next week.  There is not a production deadline for next

15   week.  You're talking about something that is 10 months

16   away.  There is no practical effect to this.

17         MS. ADLER:  Well, Your Honor, if we're going to

18   complete discovery by April of next year -- which includes

19   obviously producing documents, answering interrogatories,

20   taking depositions after that --

21         THE COURT:  So hypothetically, if I rule on your

22   motions in October -- October, okay.  October.  November,

23   December, January, February, March, April.  That's six

24   months.

25         MS. ADLER:  Your Honor, I am totally comfortable,

1     A, if Your Honor can rule in October, and, B, if in front of

2     the Court right now we can all agree that --

3                 THE COURT:  I'm not --

4                 MS. ADLER:  -- the moving defendants are not

5     violating any --

6                 THE COURT:  They should -- moving --

7                 MS. ADLER:  -- obligations --

8                 THE COURT:  How about this?  The moving defendants

9     shall not be deemed to have violated their obligations under

10    the CMO if between now and the disposition of the motion to

11    dismiss they do not produce any additional documents.

12                MS. ADLER:  That's totally acceptable.  That's

13    fine with me, Your Honor.  Thank you.

14                MR. KUEHN:  I mean, that's fine as long as the

15    defendants continue to participate in all the other written

16    discovery that we need to deal with, interrogatories and --

17                THE COURT:  What -- but that's what I was asking

18    before.  What's the next date for them to do something?

19                MR. KUEHN:  Well, they are supposed to start

20    rolling production in late June.  I think it's June 25th or

21    26th.

22                THE COURT:  Okay, so --

23                MS. HENDERSON:  29th.

24                THE COURT:  Okay.

25                MR. KUEHN:  29th.

1          THE COURT:  Okay.  So here we are 10 days before

2     that.  Do you have documents to produce, Ms. Adler?

3          MS. ADLER:  I would have by June -- I would have

4     some.  I have 50 -- my client has 51 loans.  They're a tiny

5     little thing.  We have loads of clients, so have we started

6     to look for and go through documents?  Indeed, we have.

7          THE COURT:  Okay.  So if you have documents now,

8     as of today, why don't you just produce them?  You just said

9     that you're obligated to make a rolling production.  So if

10    you have documents, you should produce them.

11         MS. ADLER:  And then, Your Honor, we can stop

12    pending -- stop doing additional --

13         THE COURT:  Hold on.

14         MS. ADLER:  I'm not averse to producing them.  I'm

15    trying to diminish the burden or avoid the burden --

16         THE COURT:  You're representing to me that you

17    want to have your clients not have to continue to look for

18    documents.  On the other hand, document -- there's a date

19    for production next week.  So either people have been

20    diligently looking for documents, or they haven't.  You

21    can't have it both ways.

22         MS. ADLER:  We have been, Your Honor.

23         THE COURT:  Okay.  Then if you have documents now,

24    why is it burdensome to produce them?

25         MS. ADLER:  Because they're for a couple of loans.

```
 1              MS. HENDERSON:  Your Honor --

 2              MS. ADLER:  I'm happy to produce what I've got.

 3              THE COURT:  Okay.

 4              MS. ADLER:  The point is should the burden and

 5    expense be ongoing if there is a --

 6              THE COURT:  Ms. Adler, you are -- okay.  We're now

 7    beyond the initial phase where I have patience, okay?  You

 8    are -- if -- to the extent that you want to avoid future

 9    burden, that's one thing.  To the extent that you have in

10    good faith been acting under the CMO and you have documents

11    --

12              MS. ADLER:  I'm --

13              THE COURT:  -- today, which you're suggesting to

14    me that everyone's working in good faith and they don't want

15    to be criticized for not having done that, then if you have

16    documents that have been located today, those should be

17    produced.  And that should go for everybody.

18              MS. ADLER:  That's fine, Your Honor.  I'm not

19    objecting to that.  I think what we're doing is trying to

20    stop the clock as of today.  No one's saying that we

21    shouldn't produce that which we've already collected.

22              THE COURT:  Well, it's very unclear that that's

23    not what you would want because you are telling me you don't

24    want to undertake any burden whatsoever.

25              MS. ADLER:  Well, yes, going forward.  Exactly
```

Page 48

1   right.  I mean, I'm here making the application to make the

2   motion.  I respect that Your Honor thinks that no notion --

3   no motion is necessary given what we've just discussed.

4   But, you know, answering interrogatories is not inexpensive

5   or without burden.  There're like 90-some-odd, I think,

6   interrogatories in -- right?

7             THE COURT:  What's the date for answering

8   interrogatories?

9             MS. ADLER:  The responses and objections are due

10   within 45 days from the time they were served, and they were

11   served on or about May 20 or 22.  You'll have to confirm.

12             THE COURT:  Look, here's the thing.  Okay.

13             MS. HENDERSON:  (Indiscernible).

14             THE COURT:  CMO -- the CMO was an extensively

15   litigated and negotiated document.  There was nothing in the

16   CMO that said -- that talked about any stays of discovery,

17   any ability to modify it for any reason like this.  So I

18   would suggest that if you want to make your motion, make

19   your motion.  We're going to keep going in the meantime.  I

20   told you what my views are.  I'll rule on the motions to

21   dismiss, and we can take it from there.

22             MS. ADLER:  I'm sorry.  So if we want to make --

23             THE COURT:  Make a motion.

24             MS. ADLER:  Make the motion to stay?  Fine.

25             THE COURT:  Okay.

Page 49

1           MR. KUEHN:  Your Honor, if I could just make a --

2           THE COURT:  Sure.

3           MR. KUEHN:  -- couple of final points.  I

4   apologize.  I just would like to make the point that the

5   Lehman estate, it's not an operating business.  It's a

6   liquidating --

7           THE COURT:  Oh, they're quite aware of that.

8           MR. KUEHN:  It's trying to recover money for its

9   creditors.

10          THE COURT:  Yeah.

11          MR. KUEHN:  And responding to these motions --

12          THE COURT:  I understand.

13          MR. KUEHN:  -- it's costly.  It's costly and --

14          THE COURT:  I understand.

15          MR. KUEHN:  -- it hurts our creditors, and, you

16  know, if it's a meritless motion that's going to be a waste

17  of time, it's also a waste of money.  And yes, you know, our

18  client has a (indiscernible) fee recovery provisions in the

19  seller's guide --

20          THE COURT:  Mh hmm.

21          MR. KUEHN:  -- but the problem is we've been told

22  by a lot of defendants when we're discussing resolution of

23  claims that there's no money there.  So it's almost a free

24  option when they keep filing motions.

25          THE COURT:  Well, that's the part that I've never

1    understood about this.  All -- and we've had this

2    conversation countless times.  To the extent that defendants

3    say, I have no money, I've said to the plan administrator on

4    repeated occasions, you should follow up on that because

5    it's not worth the plan administrator's time and money

6    pursuing a judgment that you're not going to be able to get

7    satisfied.  And then when those conversations begin to take

8    place, all of a sudden, things quiet down because maybe

9    there is money there.

10           MR. KUEHN:  Yes, Your Honor.

11           THE COURT:  Okay.  So I -- you know, I only know

12   what I know.  People are going to act in their own economic

13   interest.  I believe that one way or another, these cases

14   are going to move forward somewhere and that discovery

15   informs a settlement discussion.

16           So I understand that the defendants continue to

17   seek to avail themselves of every motion that there is.  I

18   get that.  I've said at the beginning I'm not cutting off

19   anybody's due process rights.  That imposes a cost on the

20   plan administrator.  It is what it is.  I -- there's nothing

21   that I can do about that, you know, within limits.

22           I'm not saying that folks ought to file -- be able

23   to file frivolous motions, and I think that I've done

24   everything that I can to discourage repeat motions and bake

25   into this version of the CMO the ability to pro forma things

1    and simply incorporate by reference previous rulings so that

2    these folks, new folks, were afforded due process and have

3    the benefit of a substantive ruling so that they have their

4    rights preserved for appeal and other matters going forward.

5    That was the whole theory of the new version of the CMO.

6            MR. KUEHN:  Absolutely, Your Honor.  Absolutely,

7    Your Honor.  I just want to be clear that we will be putting

8    in our opposition to their substantive motion, a motion to

9    dismiss --

10            THE COURT:  Mh hmm.

11            MR. KUEHN:  -- in July.  July 12th, I believe, is

12    the date.

13            THE COURT:  Okay.

14            MR. KUEHN:  And so, you know, you'll see our

15    arguments then on the merits.

16            THE COURT:  Right.

17            MR. KUEHN:  And you'll see it doesn't make sense

18    to stay discovery at all.

19            THE COURT:  Okay.  Well, then that's fine.  Ms.

20    Adler thinks she has a winning argument both on subject

21    matter jurisdiction and staying discovery, so we'll have to

22    look at it.  Okay.  I mean, to the extent that your headline

23    argument is going to be that to the extent that Ms. Adler is

24    saying we've got a sure winner on subject matter

25    jurisdiction, I mean, fundamentally you're going to oppose

Page 52

1    that motion to stay discovery because you think she's wrong

2    on the subject matter jurisdiction.

3                MR. KUEHN:  And because there's no additional

4    burden because if we lose on subject matter jurisdiction, as

5    you pointed out, we'll be suing in a different court, and

6    the same discovery will be at issue.

7                THE COURT:  Well, Ms. Adler seems to have a theory

8    that Lehman -- that that's not true, that there may be no

9    court that you can sue in.

10               MR. KUEHN:  Yes, she does have a new argument on

11   that point.

12               THE COURT:  Okay.

13               MR. KUEHN:  The standing argument that we'll

14   explain why that's --

15               THE COURT:  The Goldilocks argument.

16               MR. KUEHN:  The Goldilocks argument.  We'll

17   explain why it's simply incorrect.  But the primary argument

18   doesn't affect --

19               THE COURT:  Okay.

20               MR. KUEHN:  -- where the --

21               THE COURT:  All right.  Well, look.  I mean, I had

22   hoped that we would be able to get to a practical resolution

23   of this issue.  Maybe that will emerge as we get later, but

24   for now, I'm not going to be in the position of any

25   defendant saying that their rights under federal rules were

Page 53

```
 1     truncated anyway.  So --

 2              MS. ADLER:  Your Honor, two points.  Obviously, we

 3     don't agree with the meritless.  And also, to the extent

 4     that our arguments prevail with respect to subject matter

 5     jurisdiction, they probably preclude actions in other

 6     courts.

 7              But the second point is if indeed Mr. -- Counsel

 8     is --

 9              THE COURT:  Ms. Adler, you just won.  You're going

10     to file your motion.  Why aren't we done?

11              MS. ADLER:  I'm trying to address Counsel's point

12     and your point about the plaintiff's sensitivity to cost

13     issues.  So what I was going to propose -- which meshes with

14     something you said earlier, Your Honor -- is that if we wait

15     till we see the arguments on July 12th that Defendant makes

16     and we can do so in evaluating whether we think it makes

17     sense to go forward with the motion to stay without being

18     deemed not in compliance with any discovery obligations, I'm

19     happy to do that.  No one wants to make frivolous motions or

20     motions that have no chance of prevailing, obviously, on

21     either side.

22              THE COURT:  But the CMO will remain in effect.

23     The deadlines will remain in effect.  You can do whatever

24     you believe you're entitled to do.  If you want to wait to

25     file your motion till you see their response to the -- to
```

1    the subject matter jurisdiction motion, you can do that.

2    But I'm not -- I'm not going to suspend any deadlines

3    pending that.  You can decide when you want to stay

4    discovery.

5         MS. ADLER:  Well, I think -- I understand that

6    Your Honor isn't suspending deadlines.  I was going back to

7    a comment Your Honor made a short time ago about because the

8    deadlines are over a period of time that ranges --

9         THE COURT:  I'm not going to micromanage whether

10   or not it's okay for your clients to spend one hour a week

11   looking for documents or 10 hours a week looking for

12   documents.

13        MS. ADLER:  I understand, Your Honor.

14        THE COURT:  You --

15        MS. ADLER:  We'll work it out.

16        THE COURT:  You folks do whatever you need to do

17   under the order, and I'm not going to conduct an

18   investigation into what you've done.  I trust that you'll

19   proceed in good faith.

20        MS. ADLER:  Of course.  Thank you very much, Your

21   Honor.

22        THE COURT:  Okay.  So, Ms. Adler, are you and the

23   other similarly lined parties in fact going to wait and see

24   what Lehman's response is?

25        MS. ADLER:  I have to speak to Counsel, and

Page 55

```
 1    they're on the phone, so I don't want to do that --

 2              THE COURT:  Okay.

 3              MS. ADLER:  -- obviously right in front of

 4    everybody.

 5              THE COURT:  Would you be so kind, after you've had

 6    a chance to confer with Ms. Henderson or whoever else that

 7    it is, could you let the plan administrator know --

 8              MS. ADLER:  Sure.

 9              THE COURT:  -- what you're going to do?

10              MS. ADLER:  Yeah.

11              THE COURT:  Just so they can --

12              MS. ADLER:  We might try and work something

13    consensual out with them, mirabile dictu.

14              THE COURT:  That would be --

15              MS. ADLER:  I know, Your Honor.

16              THE COURT:  Stranger things have happened.

17              MS. ADLER:  Not many, but sure.

18              THE COURT:  Not many.

19              MS. ADLER:  Sure, Your Honor.

20              THE COURT:  Okay.

21              MS. ADLER:  Yeah.

22              THE COURT:  All right.

23              MS. ADLER:  And if we work something out, we'll

24    let you know too.

25              THE COURT:  Okay.
```

                                                    Page 56

1                MS. ADLER:  All right.

2                THE COURT:  All right.

3                MS. ADLER:  Thank you very much, Your Honor.

4                THE COURT:  All right.  Thank you.  All right.

5                MR. KUEHN:  Thank you, Your Honor.

6                THE COURT:  We're done for this?

7                MR. KUEHN:  We are done.

8                THE COURT:  We are done.  Okay.  Thank you very

9     much.  Okay.  So we're going to roll right into the 11:00

10    calendar.  So thank you.  Okay.  First on the 11:00 calendar

11    is 45th Street Park Avenue.

12                Okay.  Could the folks who are here for the 11:00

13    Lehman matter please come up?

14                MR. FAIL:  Good morning, Your Honor.

15                THE COURT:  All right.  Good morning, Mr. Fail.

16    How are you?

17                MAN:  Good morning, Your Honor.

18                THE COURT:  All right, let me --

19                MR. WU:  Good morning, Your Honor.

20                THE COURT:  All right.  Let me --

21                MAN:  Good morning, Your Honor.

22                THE COURT:  Okay.  Let me see who's on the phone.

23                (Overlapping Voices)

24                MR. GREGORY:  Ricky Gregory is present, Your

25    Honor.

Page 57

1        THE COURT:  I'm going to be muting the lines of

2    everyone except for Mr. Wu.  And just to make it clear, this

3    is an unusual circumstance in that it's very rare that when

4    a party wishes to make a substantive argument that I allow

5    that to be made telephonically.

6        So, Mr. Wu, we have afforded you that courtesy.

7    It appears that you live in Chicago.  That's for today only.

8    And going forward, as is my practice in every case, to the

9    extent that there would have to be any further substantive

10   arguments on this matter or any other, I would expect that

11   you would appear in person.

12       MR. WU:  Thank you, Your Honor.  I do appreciate

13   it.

14       THE COURT:  All right.  So, there was a late-

15   breaking slew of documents that hit the docket, many of

16   which I'm just going to put to the side.  Although I would

17   note that they -- it appears that people are copying

18   documents from each other and from documents that are on the

19   docket, and that folks are actually copying from the wrong

20   documents.

21       So, you can take a look at what you filed, and I'm

22   sure that if you spend a little time, you'd figure out that

23   you're copying from the wrong documents.  So, I'll come back

24   to that point perhaps later.

25       So, with respect to Mr. Wu, there was received by

1    the Court on June 13th a document bearing a June 11th date

2    that styled as a motion to demand service, in which Mr. Wu,

3    you assert that you didn't receive service and you state

4    without any support whatsoever that it's intentionally

5    committed by the debtor.

6             So, we went ahead and pulled the certificate, the

7    affidavit of service, as we do in every case, and it did not

8    appear that your name was on the affidavit of service.

9             So, Mr. Fail, did I miss something in the

10   affidavit of service.

11            MR. FAIL:  No, Your Honor.  Good morning.  For the

12   record, Garret Fail, Weil, Gotshal & Manges, here this

13   morning with my colleague Jason Hufendick.

14            Your Honor is correct.  And thank you for giving

15   me an opportunity to point out it was not an intentional

16   omission.  It was an inadvertent oversight that Mr. Wu was

17   not served with our objection to his motion, which I would

18   note, and I'm sure Your Honor is aware, is different than if

19   the Debtor, or here, the plan administrator, were the

20   movant.  This is simply an objection to his motion.

21            I think, as Your Honor and the Plan Administrator

22   is aware, Mr. Wu did receive actual notice in time to file

23   quite timely in advance of this hearing a substantive

24   lengthy reply.

25            THE COURT:  Okay.  Let me --

```
 1              MR. FAIL:  Nonetheless, Your Honor, we --

 2              THE COURT:  Let me ask --

 3              MR. WU:  The reply --

 4              THE COURT:  Let me ask this --

 5              MR. WU:  The reply that I filed --

 6              THE COURT:  Mr. Wu --

 7              MR. WU:  (indiscernible)

 8              THE COURT:  Mr. Wu, here's the way it works.

 9    You're on the phone.  You will --

10              MR. WU:  Yes, Your Honor.

11              THE COURT:  You're going to get to speak when I

12    ask you to speak.  Okay?

13              MR. WU:  I understand.  And I apologize, Your

14    Honor.

15              THE COURT:  All right.  Otherwise, everyone's

16    going to be talking over each other.  Mr. Wu, my question to

17    you is when did you actually see the objection that had been

18    filed?

19              MR. WU:  I saw the objection that was filed

20    shortly after it hit the docket. And that's only because I

21    was looking over the dockets and to make sure I --

22              THE COURT:  Mr. Wu, I understand that you weren't

23    served with it.  We're not going to dispute that.  There is

24    no dispute as to that.  My question is what was the date

25    that you actually saw the document as you continued to check
```

1     the docket?  The Plan Administrator's objection was filed on

2     May 29th.  So --

3              MR. WU:  I don't know the exact date, but it would

4     be around that date --

5              THE COURT:  Okay.

6              MR. WU:  -- May 29th or May 30th.

7              THE COURT:  So, at that moment you knew it hadn't

8     -- or shortly thereafter, it hadn't been served on you.

9              Now, Mr. Fail, when you figured out that Mr. Wu

10    had inadvertently not been served, what did you do, if

11    anything?

12             MR. FAIL:  Your Honor, we reached out to Mr. Wu

13    and asked if he would like additional time, and we offered

14    to adjourn this hearing and contact your chambers to work

15    out another date if he needed additional time, wanted to

16    file an additional substantive response.  He requested that

17    we proceed today, reserving all of his rights to make

18    arguments today, Your Honor.

19             THE COURT:  Okay.  So, Mr. Wu, what is it that you

20    -- when the Plan Administrator -- when Mr. Fail reached out

21    to you to say -- to acknowledge the error in service and to

22    offer you an adjourned date so that you could file something

23    substantive, obviously, you didn't take them up on that

24    offer.  Why not?

25             MR. WU:  When I received the call yesterday, it

1    was a series of three phone calls.  We finally spoke, I

2    would say, around 6:00 Eastern time, 5:00 Central time.

3    During that call -- you know, it felt more threatened --

4    threatened than any other meaning to it.  So, I just take my

5    --

6              THE COURT:  I'm sorry.  I cannot understand the

7    word -- I cannot understand you.  All I can hear is the word

8    threatened.

9              MR. WU:  Right.  So, I --

10             THE COURT:  Mr. Fail has told me that he called

11   you and said, would you like to adjourn the hearing so that

12   you could file a response, and you apparently said no.

13             MR. WU:  Correct.

14             THE COURT:  So, what is it that you want to happen

15   today?  What do you think -- why -- if you want to respond

16   and he gave you the opportunity to respond, then why are we

17   here today?

18             MR. WU:  What I want to respond, what I want to

19   say is stated in my motion, and it's stated on my response

20   to the objection and the demand for service.  Everything

21   that I want to say is within the motion.

22             I just want to let Your Honor know and the

23   Honorable Court know that my due process was not honored,

24   and my rights have been violated, and to take that into

25   consideration.

```
 1              THE COURT:  Okay.  Mr. Wu, we're not going to play
 2      games.  I understand that you are not represented by counsel
 3      and that you're appearing pro se.  In plain English, last
 4      night Mr. Fail called you and said, you weren't served;
 5      would you like more time; we'll adjourn the motion.  He
 6      offered you the opportunity to not be here today and to file
 7      a substantive response to the Plan Administrator's
 8      objection.  That's due process.  That's what it looks like.
 9              Now, you apparently said no, you want to be on the
10      phone.  So, you have a choice to make.  If you don't want to
11      file further substantive papers, we can go forward today.
12      And I'm going to rule on your motion, and that would
13      encompass all of these joinders.
14              But you're not -- you can't have it both ways.
15      When counsel calls you and acknowledges that you weren't
16      served, and offers you more time, it would seem logical for
17      you to have said, thank you, I'd like a couple of weeks to
18      file a response.  But you didn't do that.  You're here
19      today.
20              So, there was an inadvertent error.  There's no
21      conspiracy theory here.  This was a very unfortunate error.
22      Others who have filed joinders, in fact, were served.  Their
23      names are listed on the certificate of service.  You have
24      already told me that you had actual notice.  You saw the
25      objection.  You could have called my chambers.  I know that
```

Page 63

1      you know how to get in touch with chambers because you

2      contacted my chambers numerous times in order to arrange for

3      a hearing date.

4              So, if we're not going to go forward with this

5      argument today, because you're going to insist on your right

6      to file something more, then you can file something more,

7      and then one of two things is going to happen.  I will

8      either take the matter under advisement and issue a ruling

9      without there being another hearing like this, or I will

10     schedule another hearing and you will have to appear in

11     person.  You've now had --

12             MR. WU:  Your Honor --

13             THE COURT:  You've now had almost three weeks to

14     look at the arguments that were made by the Plan

15     Administrator and to think about whether or not you think

16     that you still have an argument for relief.  So, what would

17     you like to do, Mr. Wu?

18             MR. WU:  I would like to proceed today, Your

19     Honor.

20             THE COURT:  Saying that you would like to proceed

21     today, by that, let's be very specific.  By that, that means

22     that if you don't like the disposition that you get from the

23     Court and you wish to pursue your rights further on appeal,

24     that the fact that there was an inadvertent to serve you is

25     not something that you would be permitted to complain about

Page 64

1    subsequently.

2            MR. WU:  Yes, Your Honor.

3            THE COURT:  Okay.  On this record, then,

4    notwithstanding the inadvertent failure of the Plan

5    Administrator to serve Mr. Wu with the objection, we're

6    going to go forward and entertain argument on the matters.

7            Okay.  So, thank you Mr. Wu.  I think that's

8    helpful.  So, Mr. Wu, you did file a response on June 6th,

9    correct?

10           MR. WU:  Correct.

11           THE COURT:  Okay.  All right.  Mr. Fail, I've read

12   the objection that you filed.  I don't think I have any

13   questions.  Is there anything more that you want to add

14   before I hear from Mr. Wu?

15           MR. FAIL:  No, thank you, Your Honor.

16           THE COURT:  Okay.  All right.  Mr. Wu, have you

17   had an opportunity to really parse through what's being said

18   in the objection?

19           MR. WU:  Yes, I have.

20           THE COURT:  Okay.  So, well let me just take a few

21   minutes for the benefit of everybody on the phone, just so I

22   can make sure that everybody understands this.

23           At Docket 59409, there was a motion filed on

24   behalf of joint liquidators with respect to entities known

25   as LP4 and LP5.  That motion essentially sought permission

1    to file a late claim with respect to certain so-called

2    exempt entities that had been dissented from the bar date

3    and were not were not required to file a proof of claim.

4           The facts and circumstances that were set forth in

5    that document were extremely unique.  That's the document,

6    Mr. Wu, that you used your template for your motion.  It

7    didn't require any detective work on my part.  You cited to

8    that document in your pleading.  And just to make clear the

9    fact that it was essentially a cut-and-paste, you refer in

10   your pleading to LP4 and LP5, which, of course, has no

11   application to your claims.

12          So, I think that you, and apparently other folks

13   who have sought to join you, saw that and thought, well,

14   there are similar securities involved.  Perhaps those

15   arguments apply to you, and that you might be able to file a

16   late proof of claim.  That's not correct, for any or all of

17   the reasons that are set forth in the Plan Administrator's

18   pleading.

19          First, and most importantly, your securities are

20   held -- are in a trust.  And even though that trust might

21   have been listed on the exempt entities list, in fact, a

22   proof of claim that beneficially covers securities that you

23   hold.

24          I'm not even going to address the issue of when

25   you acquired the security and whether or not you acquired

1    them after the bar date.  That's a whole separate set of

2    issues.

3            The other thing that seems to be unfortunate, is

4    there's a misreading of the subordination provisions.  So,

5    even if there could be a proof of claim, and even if it

6    could be allowed, it's deeply, deeply subordinated to a

7    level that does not receive a distribution under the plan.

8            The guarantee of the subordinated securities,

9    which is related to the securities that you hold, the claim

10   that you hold with respect to those securities, only comes

11   into play to the extent that there is a distribution on the

12   underlined subordinated securities.  There's not, because

13   those securities are lower than all unsecured claims against

14   LBHI.

15           Under the plan, pursuant to the Bankruptcy Code,

16   there is a priority of payment.  Equity securities and those

17   claims that are on a parity with equity securities are not

18   entitled to receive a distribution.

19           MR. WU:  Your Honor, may I?

20           THE COURT:  Yes, go ahead.  So, I'm struggling to

21   understand the basis on which you believe you're entitled to

22   a distribution.  Moreover, the concept that these many years

23   later, it would be the right thing to do to give you

24   permission to file a proof of claim and the blanket

25   assertion that there is no prejudice is simply not true.

Page 67

1          There have been precious few instances in which

2     someone has been granted leave to file a late proof of

3     claim.  And your own arguments are belied by the fact that

4     you have a host of joinders, because it appears that this

5     argument has now seemed to gain some traction among folks

6     who are either in touch with you, or who have read about it.

7          But there seems to be some connectivity here with

8     people copying the same letter and sending it in as a

9     joinder.  And far from being just you, Mr. Wu, there are

10    apparently a bunch of other people think that they'd like to

11    have similar relief.

12          So, in light of all that, I'm happy to hear

13    anything that you think I've gotten wrong or that the Plan

14    Administrator has gotten wrong as to why you should be

15    permitted to file a new claim, and why even if you were

16    permitted to file a new claim, under the clear provisions of

17    the plan and the securities at issue, why you think you

18    would be entitled to any distribution.

19          MR. WU:  Your Honor, the guarantee was the parity,

20    and the capital trust securities which are in parity with

21    LBIE and ECAPS.  That's the way I believe that's been

22    treated.

23          THE COURT:  Mr. Wu --

24          MR. WU:  And --

25          THE COURT:  Mr. Wu, I cannot understand.  This is

1    a demonstration of why folks need to come in person.  I

2    cannot understand the words.  I cannot understand you.  So,

3    you do you're too close to your phone or you're too far from

4    your phone, or something.

5            MR. WU:  I'm sorry, Your Honor.  The guarantee

6    that I was referring to states that the securities that I'm

7    referring is on parity with LBIE and ECAPS.  And that's when

8    (indiscernible) the liability (indiscernible) --

9            THE COURT:  With LBIE?

10           MR. WU:  Yes, LBIE.  It's in parity -- if you look

11    at the (indiscernible) on Exhibit 8, they issued preferred

12    securities which are in parity with our capital trust.  And

13    that's why I filed the motion.  It's because that -- it is

14    in parity and we're entitled to the same treatment, because

15    (indiscernible) --

16           THE COURT:  Hold on.  Mr. Fail, maybe you're --

17    given that you're much younger than me, maybe you can

18    understand what Mr. Wu is saying, because I simply,

19    physically cannot understand what he's saying.

20           MR. FAIL:  I'll attribute it to me being on the

21    better side of the speakers, rather than say anything else,

22    Your Honor.  But I think what Mr. Wu is saying is that --

23    and it's what he wrote in his -- in part of his reply.  He's

24    focusing on the language "parity."  So, Your Honor, the

25    subordination provisions said three things.

Page 69

```
 1              THE COURT:  Hold on, Mr. Fail.  Let me catch up
 2    with you.
 3              MR. FAIL:  That's okay.
 4              THE COURT:  So, which document of Mr. Wu's are you
 5    talking about?
 6              MR. FAIL:  I'm referring to Document 59751, which
 7    is his reply.
 8              THE COURT:  Okay, hold on.  Let me pull that up.
 9              MR. FAIL:  Take your time, Your Honor.  I have a
10    copy that I can hand up, if it would be helpful.
11              THE COURT:  Which (indiscernible) is it?
12              WOMAN:  (indiscernible)
13              MR. FAIL:  It was filed on 6/6.  Your Honor, may I
14    approach?
15              THE COURT:  Yeah.  Okay.  So, Mr. Wu, I'm looking
16    at the document that you filed on June 6th.
17              MR. FAIL:  And so, Your Honor, if you look --
18              THE COURT:  Just -- just --
19              MR. FAIL:  Apologies.
20              THE COURT:  I can't let it go unsaid --
21              MR. FAIL:  Okay.
22              THE COURT:  -- because it's very troubling to me,
23    Mr. Wu, that you engaged in this little bit of gamesmanship
24    about today.  You filed a response.  You discovered you
25    hadn't been served.  Mr. Fail went to the trouble of calling
```

Page 70

```
1    you.  It's just not the way one proceeds.  It's a waste of

2    everyone's time.

3              That being said, I'm considering your objection on

4    the merits.  So, Mr. Fail --

5              MR. FAIL:  An example of the quote is on Page 2 of

6    the --

7              THE COURT:  Page 2.

8              MR. FAIL:  -- of that reply, at the very top, Your

9    Honor.

10             THE COURT:  Yeah.

11             MR. FAIL:  It's a -- it purports to be a quote

12   from the guarantee subordination section.  And so, it

13   describes that the guarantee --

14             THE COURT:  Yeah?

15             MR. FAIL:  -- will cost acute and unsecured

16   obligation of LBHI that ranks --

17             THE COURT:  Right.

18             MR. FAIL:  -- one, subordinate, as Your Honor

19   pointed out --

20             THE COURT:  Right.

21             MR. FAIL:  -- to the rights of all other general

22   unsecured creditors.

23             THE COURT:  Right.

24             MR. FAIL:  Second, parity -- so, it's one, two and

25   three -- on parity with the most preferred -- most senior
```

Page 71

1    preferred or preference stock, now or hereinafter issued by

2    LBHI --

3                THE COURT:  Right.

4                MR. FAIL:  -- which is consistent with what Your

5    Honor had said and what --

6                THE COURT:  Yeah.

7                MR. FAIL:  -- the Debtor said.  But also, with any

8    guarantee --

9                THE COURT:  Right.

10               MR. FAIL:  -- by LBHI in respect to preferred

11   securities of any affiliate of HI.

12               THE COURT:  Right.

13               MR. FAIL:  Mr. Wu is suggesting that there were

14   affiliates that LBHI guaranteed, and apparently some -- but

15   he hasn't described or listed any guarantee of any preferred

16   securities from an entity that would rank differently.  But

17   he's saying there were solvent entities -- he's quoting LBHE

18   as an example, and then he throws in ECAPS, but those

19   weren't guaranteed.

20               And he's saying, therefore, that makes it somehow

21   higher.  But then let's just look at 3, just to complete it,

22   senior to LBHI common stock.  So, it's below GUCs --

23               THE COURT:  Right.

24               MR. FAIL:  -- above common, and we're saying

25   preferred.

Page 72

```
 1              THE COURT:  Right.

 2              MR. FAIL:  And so, for example, he has claims in

 3      four trusts, Capital Trusts he's alleging he has claims.

 4              THE COURT:  Right.

 5              MR. FAIL:  So, this language, Plan Administrator

 6      believes, means that his Capital Trust 4 or 5, 6 -- 3, 4, 5,

 7      6, they're all the same, because this language is in all of

 8      the prospectuses.

 9              THE COURT:  Right.

10              MR. FAIL:  He's suggesting that there was a

11      guarantee, an undisclosed -- he has the burden, but he

12      hasn't met it.  He's saying somehow this language gives him

13      a general unsecured claim because notwithstanding being

14      junior to all other GUCs, this middle paragraph focusing on

15      the word parity gives him parity with some other guaranteed

16      claim, of which I'm not aware, that has been allowed.

17              And that's -- Your Honor, that's his argument.  I

18      can't do it any more justice than that.  Again, Mr. Wu, you

19      know, if I misstated it, please -- it's your argument.

20              MR. WU:  Your Honor --

21              THE COURT:  Mr. Wu, these securities are junior to

22      all unsecured claims.  There was --

23              MR. WU:  (indiscernible)

24              THE COURT:  -- a proof of claim filed that

25      represents your claim, in essence.
```

1          MR. WU:  But that would not fall under the

2    guarantee, Your Honor --

3          THE COURT:  It doesn't matter.

4          MR. WU:  -- because --

5          THE COURT:  It doesn't  matter.  The guarantee

6    only is as good -- the guarantee is only as good as the

7    underlying claim.  The underlying claim was filed.  The

8    underlying claim was allowed.  The underlying claim was

9    subordinated.

10          MR. FAIL:  And additionally, Your Honor, as we

11   pointed out, it was equivalent to a bad boy guarantee.  It

12   wasn't in addition.  It said, if LBHI --

13          THE COURT:  Right.

14          MR. FAIL:  -- paid the trust and the trust didn't

15   pay it out, LBHI would make --

16          THE COURT:  Exactly.

17          MR. FAIL:  -- good under the same priority.

18          THE COURT:  Right.  Exactly.

19          MR. FAIL:  Which case has not occurred, as Your

20   Honor --

21          THE COURT:  No.

22          MR. FAIL:  -- has pointed out.

23          THE COURT:  Mr. Wu, when did you acquire these

24   securities?  When did you acquire your claim?

25          MR. WU:  It's on and off, but the current

Page 74

1   (indiscernible) are between 2013 and I would say 2019.  So,

2   that's (indiscernible) 2011.

3            THE COURT:  You've been what since 2011?

4            MR. WU:  You know, I bought a few and sold a few

5   since 2011.  But --

6            THE COURT:  Did you buy them after the bar date?

7            MR. FAIL:  Not these bonds, Your Honor.  I think

8   he's saying --

9            MR. WU:  Yes.

10           MR. FAIL:  -- he's bought other bonds.  The claims

11  -- Your Honor, I think what he's saying is the claims that

12  he's holding and the claims that he's asserting now he

13  bought between 2013 and some in 2019.  Separately and apart,

14  he bought and sold some securities in Lehman Brothers, but

15  that they're not relevant today since 2011, is what I heard.

16           MR. WU:  (indiscernible)

17           MR. FAIL:  Subsequent to the bar date, though,

18  Your Honor.

19           MR. WU:  Yes.  Those securities were bought after

20  the bar date.  The ones I (indiscernible) are from 2013 to

21  currently.

22           THE COURT:  I mean, that in and of itself

23  precludes you from raising any of these issues.  You can't

24  come into a case after a bar date has passed when the seller

25  -- whoever sold you your claim or your security has been

Page 75

1    subject to a bar date and did or did not act.  Then you

2    don't get to come in, as was done in the case in the motion

3    that you copied from, and say, well, there was no way I

4    could have filed a claim at the time because the partnership

5    was dissolved, et cetera, et cetera.

6              There was a claim.  It was subject to a bar date.

7    It filed or it didn't file.  It was in fact here covered by

8    a proof of claim that was filed on behalf of the beneficial

9    holders.  You then bought the security.  You bought it warts

10   and all.  You don't get to resurrect a bar date or get

11   greater rights than the person who was subject to the bar

12   date.  So, you bought that security as you found it.

13             Even if that were not the case, it's six years

14   later.  You are obviously inspired by this motion, which is

15   a completely different circumstance.  And your reading of

16   the prospectus is incorrect in terms of your interpretation

17   of how the subordination and the ranking, if you will, of

18   the guarantee.

19             MR. WU:  Your Honor, may I?

20             THE COURT:  Go ahead.

21             MR. WU:  You know, within the guarantee, you know,

22   it was written -- within the prospectus, it was written so

23   that if the Trustee does not bring the enforcement.  In

24   fact, even the original holders can't bring enforcement of

25   the guarantee.

Page 76

1           THE COURT:  Mr. Wu --

2           MR. WU:  Which is what we --

3           THE COURT:  Lehman's a big bankruptcy.  There was

4   a process.  There were trillions of dollars of claims.  It

5   was managed for the first five years by Judge Peck.  It's

6   been managed by me since he retired.  There were bar debts.

7   There were deadlines.

8           The concept that somebody who's trading in these

9   claims can come in in 2019 and get authority to file a new

10  claim, after having voluntarily traded into the position, is

11  a non-starter.  Even if we get beyond that, there was a bar

12  order.  There was a proof of claim that was filed that

13  covers the proof of claim that you would file if I were to

14  give you permission, which I'm not going to.

15          That proof of claim does not entitle anyone to

16  recover any cash money from Lehman.  And that's because the

17  securities are subordinated below general unsecured claims,

18  which as of now, the recoveries are about 40 cents on the

19  dollar.

20          So, for four or five different reasons, you are

21  not entitled to any relief, and you are not entitled to any

22  recovery from the Lehman estate.  And the same is true with

23  respect to all of the persons who filed identically for the

24  joinders.

25          So, I'm going to ask -- it appears on my control

Page 77

1      panel that someone wants to be heard.

2              MR. GREGORY:  Your Honor, this is Ricky Gregory

3      speaking.  I've been working very closely with Mr. Wu on his

4      motion.  And basically, due to the fact that the ECAPS

5      general partner was taken off the register of companies in

6      London, did not have a voice from June 2010 --

7              THE COURT:  Mr. Gregory, ECAPS --

8              MR. GREGORY:  (indiscernible) go ahead.

9              THE COURT:  Mr. Gregory --

10             MR. GREGORY:  Yes.

11             THE COURT:  ECAPS has nothing to do with this.

12             MR. GREGORY:  Let me make the link (indiscernible)

13     for you.

14             THE COURT:  ECAPS has --

15             MR. GREGORY:  Can I make the link?  Can I make my

16     statement for you very quickly? Basically, LBH PLC has their

17     subordinate notes for Partnerships 1, 2 and 3 guaranteed by

18     the Board of Directors' June 9, 2005 global guarantee.

19             A clause in the prospectus for (indiscernible)

20     states that we are parity with any guarantee for any

21     affiliate --

22             THE COURT:  Okay.  Mr. Gregory --

23             MR. GREGORY:  Go ahead.

24             THE COURT:  Mr. Gregory --

25             MR. GREGORY:  I'm listening.

1            THE COURT:  Do you have a motion on file?

2            MR. GREGORY:  I filed a joinder with Mr. Wu.  And

3    I also stated that I would support what he had in his

4    joinder.

5            THE COURT:  Okay.  Are you in --

6            MR. GREGORY:  In addition to what I filed in my

7    joinder.

8            THE COURT:  Excuse me, Mr. Gregory.  I'm getting

9    close to cutting you off the line.  You're not an attorney.

10   You don't have a motion on file.  This is not friends and

11   family.

12           MR. GREGORY:  I joined Rex, a motion with a

13   joinder.

14           THE COURT:  Finish your statement, Mr. Gregory.

15           MR. GREGORY:  LBH PLC subordinate notes for

16   Partnerships 1, 2 and 3 were guaranteed by the global

17   agreement that was created by the Board of Directors on June

18   9, 2005.  If you look at the Capital Trust prospectus, it

19   states that the holding companies, which is LBHI's Capital

20   Trust securities, or parity with any guarantee issues for

21   any affiliate, it's a fact that the Capital Trust of the

22   (indiscernible) securities.  It's a fact that the enhanced

23   Capital Preferred Securities issued by Partnerships 1

24   through 5 are preferred securities.  It's a fact that the

25   general partner is an affiliate of LBHI.

1            So, in reading the language of the prospectus,

2      basically the Capital Trust inherits the same guarantee,

3      that global guarantee, that the ECAPS has.  And that creates

4      a current liability.

5            Now, I didn't become aware of this until Docket

6      58763 was filed on August 27, 2018.  It was a letter from

7      Mr. Fail that has a copy of the claims for Partnerships 1,

8      2, 3, 4 and 5, the ECAPS.  And it also talks about how the

9      Lehman Brothers Special Financing guaranteed swap claims for

10     the (indiscernible) agreement for Partnerships 3, 4 and 5

11     are also guaranteed by the global agreement, even though the

12     Capital Trusts do not have a claim with Lehman Brothers

13     Special Financing, we still have a parity with the guarantee

14     for Lehman Brothers Special Financing.

15           I also have a Docket 46304 that was filed on

16     September 13th, 2014, where I mention this when they were

17     going to make a -- when they were going to pay out the

18     disputed claims, the Lehman Brothers Commercial Corporation

19     and Lehman Brothers Special Financing.  But I was basing it

20     in 2014 upon the J.P. Morgan guarantee for their September

21     agreement.

22           I was not aware back in 2014 that the ECAPS had

23     their subordinate notes for Partnerships 1, 2 and 3

24     guaranteed by the global agreement.  If you look at the

25     prospectus for the Capital Trust, if we're not paid anything

1    by LBHI, basically LBHI, according to the prospectus, will

2    divide up the subordinate debenture into 25-dollar units and

3    issue them to the holders of the Capital Trust.

4            When you look at the finance -- FINRA --

5    (indiscernible) Financial Industry Regulatory Authority and

6    the SEC, any holder who purchased these securities, since

7    they're still trading, is the holder as if they bought them

8    from day one.  Otherwise, it's fraud for these securities to

9    be trading if we're not the legitimate holders.

10           If a payment is ever made out, it's going to be

11   paid out through the Bank of New York Mellon.  The Bank of

12   New York Mellon is going to pay the holders of record, which

13   is us.  The Bank of New York Mellon is the Trustee for the

14   ECAPS, and it's the Trustee for the Capital Trust securities

15   as well.

16           THE COURT:  Mr. Fail?

17           MR. FAIL:  Thank you, Your Honor.  There was a lot

18   in that that, if you'd like, I can try to respond to.  At

19   the beginning of the colloquy attempted to -- it was a

20   discussion about what have been referred to as ECAPS, as

21   Your Honor has identified, separate trusts, perhaps some

22   similarities.

23           Your Honor will recall, and for Mr. Gregory's

24   benefit, the ECAPS -- certain ECAPS held subordinated debt,

25   not issued like the (indiscernible) ones here by LBHI, but

Page 81

1   issued by Lehman Brothers Holdings, PLC, an entity in

2   Europe.  It held (indiscernible) from PLC.  It came with a

3   guarantee, a subordinated guarantee, from LBH PLC.  Similar

4   regulatory purposes to be treated subordinate.

5          Mr. Gregory also referred to, I believe, a 2005

6   written consent by the Board of Directors of LBHI that have

7   been referred to from time to time as the corporate

8   resolution.  We've discussed that in numerous pleadings,

9   Your Honor, and I believe Your Honor referred to it in her

10  recent decision with SRM.

11         That guarantee has been argued that it guaranteed

12  the obligations, certain obligations, from PLC.  Mr.

13  Gregory, and perhaps Mr. Wu, are trying to now say somehow

14  that this written consent gives a non-subordinated guarantee

15  because HI allegedly guaranteed PLC, which guaranteed

16  something else.

17         That argument fails by Mr. Gregory's admission

18  that he found out about the unanimous written consent on

19  August 2018, eight years after the bankruptcy and seven

20  years after the bar date.

21         THE COURT:  So, what you're referring to is the

22  law that's clear and that I set forth in the recent SRM

23  decision, which I wouldn't charge Mr. Gregory or Mr. Wu with

24  being aware of.  But the law is that when there is a general

25  guarantee, as opposed to a specific guarantee, and corporate

1      resolution is a general guarantee, it's necessary to show

2      that one acted in reliance -- with knowledge of and in

3      reliance on the general guarantee.  So, by definition,

4      that's not the case here.

5              THE COURT:  It's impossible for Mr. Wu, who didn't

6      purchase it pre-petition.  It was known to be impossible by

7      Mr. Gregory's admission.  And certainly, the prospectus

8      which -- we've covered this in prior objections, perhaps

9      before Your Honor's taking over the case, or perhaps after -

10     - the prospectus and documents make it very clear that the

11     only guarantee issued was the limited one, the only

12     guaranteed issued here that's relevant.  It's the very

13     limited, very subordinated guarantee of LBHI.

14              So, I think I was able to explain and put together

15     -- there were other discussions of Mr. Gregory's prior

16     filings.  He referred to two different things, I think,

17     including a long time ago when we made a -- we did an

18     advance -- to advance money for distributions, I think we

19     did a substitution, Your Honor, with reserves that were held

20     for the J.P. Morgan litigation.  I mean, Mr. Gregory filed a

21     statement then that was irrelevant, and I don't think it's

22     relevant here.

23              So, I'm happy to answer any further questions or

24     respond.  But nothing in the joinders, nothing in the

25     motion, nothing articulated today by the movant or joinder

1    change the Debtors' position -- the Plan Administrator's

2    position, Your Honor.

3              THE COURT:  All right.  Thank you.  All right,

4    there were a number of other documents that were filed by

5    Julie (indiscernible), Dan (indiscernible), (indiscernible)

6    Ms. Elizabeth Harrison.  There were also a couple of

7    objections that were filed to the timing of the early

8    distribution.

9              MR. FAIL:  Would you like me to address those --

10             THE COURT:  Well, let me take a shot first.  Mr.

11   Wu, you filed at 59772 an objection to the timing of the

12   early distribution.  I don't know what you're talking about.

13   There's not an early distribution.

14             MR. FAIL:  Well, Your Honor, maybe just -- it has

15   not been presented yet.  If Your Honor -- can I...?

16             THE COURT:  Sure.

17             MR. FAIL:  Thank you very much.  So, on June 7th,

18   so earlier this month, at Docket 59756, it is not related to

19   the motion before Your Honor today --

20             THE COURT:  Right.

21             MR. FAIL:  -- so we don't expect that you would be

22   aware.

23             THE COURT:  Yeah.

24             MR. FAIL:  We filed a motion seeking permission to

25   do a supplemental distribution.

Page 84

1                THE COURT:  Yes.

2                MR. FAIL:  Okay.

3                THE COURT:  Yeah.

4                MR. FAIL:  And so, what it requested was to set a

5     record date of, I believe --

6                THE COURT:  Uh huh.

7                MR. FAIL:  -- okay -- the 17th.  And so, what

8     these parties are objecting to is the fact that they did not

9     have an allowed claim.  So, if Your Honor were to grant

10    their motion, then they would be allowed to have a claim,

11    but it wouldn't receive a distribution.

12               The Plan Administrator's position, if Your Honor

13    would address it while the parties are on the phone for

14    judicial ease, is to the extent that Your Honor denies the

15    motion, we request that Your Honor overrule these objections

16    such that we could present, subject to any other new novel

17    arguments made -- that we would be able to present without

18    an additional hearing on the subsequent motion.

19               The sole basis for the objection to LBHI and other

20    Debtors making a distribution is that these parties on the

21    telephone today wouldn't be included if Your Honor granted

22    them permission to have claims.  And again, I'm happy to

23    answer any further questions.

24               THE COURT:  Yeah, there was just -- there was some

25    sense -- and there's been such a flurry of documents filed,

Page 85

1    all that basically say the same thing.  I can't' put my

2    finger on it now, but there was some suggestion in one of

3    the documents that this was part of some grand scheme, that

4    the record date was set in connection with the hearing dated

5    this motion, and that it was designed to cut off the rights

6    of these persons.  That's a pure fabrication.

7              MR. FAIL:  We think so, Your Honor.

8              THE COURT:  So, you know, again, there's a --

9    something that emerges from these pleadings that I find very

10   troubling, which is to say that folks seem to be reinforcing

11   each other's views of this situation in ways that are just

12   not tethered to the facts and the operative plan documents.

13             Mr. Wu, do you have anything else you want to add?

14   We have to wrap this up.

15             MR. WU:  I do not, Your Honor.

16             THE COURT:  I'm sorry.  Who was just speaking?

17             MR. WU:  I do not, Your Honor.

18             THE COURT:  Okay.  That was you, Mr. Wu?

19             MR. WU:  (indiscernible)

20             MR. GREGORY:  Your Honor?

21             THE COURT:  Okay.  Is there anyone else on the

22   phone who'd like to be heard?

23             MR. GREGORY:  Yes.  I would like to be heard, Your

24   Honor.

25             THE COURT:  Okay.  Go ahead, Mr. Gregory.  The SEC

1    has ruled whereby if you purchase these securities, you own

2    them as though you own them from day one, and you have

3    standing.  Well, it should be considered fraud for these

4    securities to still trade if the prospectus cannot be

5    honored --

6              THE COURT:  Well, Mr. Gregory --

7              MR. GREGORY:  -- according to the parity rules --

8              THE COURT:  I'm not going to --

9              MR. GREGORY:  Go ahead.

10             THE COURT:  Mr. Gregory, I'm going to engage you

11   in a detailed discussion of what the SEC has or has not

12   said.  I will tell you that as far as I'm aware people trade

13   in all sorts of securities that range from worthless to

14   entirely worthless to worth a few pennies to let's see who

15   you sell it to for another penny.

16             This is a bankruptcy case that was conducted

17   pursuant to the rules of this Court, Federal Rules of Civil

18   Procedure as adopted and incorporated into the bankruptcy

19   rules according to the Bankruptcy Code under the glare and

20   spotlight for years and years and years.

21             It resulted in a plan of reorganization.  The plan

22   of reorganization contemplated a bar date and an orderly

23   process for the consideration of claims.  That's what has

24   occurred here.

25             In fact, this case is coming to its conclusion.

1    The law and the orders of this Court need to be upheld and

2    given their plain and clear meaning.  It's not an endless

3    round of people diving into these very complicated documents

4    and coming up with new and novel theories.  If you bought a

5    security based on your belief and understanding of what the

6    security entitled you to, that's your business.

7                 Lehman Brothers is not in the business now and has

8    not in the business since September of 2008, of minting

9    securities.  Mr. Fail, am I wrong?

10                MR. FAIL:  No, Your Honor.

11                THE COURT:  Okay.  Claims trade, securities trade

12   -- it's not within this Court's control and, frankly, it's

13   not within the Lehman Brother's plan administrator's

14   control.

15                Once again I will say, and this constitutes a

16   ruling, that the plan administrator -- and I don't often say

17   this, and Mr. Fail, you've been around a lot, the plan

18   administrator prevails sometimes, sometimes the plan

19   administrator spectacularly doesn't prevail.  As I

20   understand it there's an argument in the Second Circuit next

21   week in a billion dollar matter in which this Court ruled

22   against the plan administrator.

23                So, for the benefit of the folks on the phone I

24   want to make it perfectly clear.  Plan administrator

25   prevails sometimes and the plan administrator doesn't

1    prevail sometimes.  There is no Lehman.  There is only a

2    plan administrator collecting assets and liquidating claims

3    and sending out distributions for the benefit of creditors.

4            This exercise has cost creditors money.  If these

5    pleadings had been filed by lawyers there would be a

6    reasonable basis for me to entertain a motion for sanctions.

7    Under Rule 9011 of the Federal Bankruptcy Rules, it's

8    important, it's obligated that you make diligent inquiry

9    into the facts of the law governing any pleading you file in

10   the Court.

11           Mr. Fail has repeated today many of the arguments

12   that were laid out in the plan administrator's brief.  I'll

13   repeat them again for your benefit.

14           This is not like the situation in the pleading

15   from which Mr. Wu, you copied your objection.  In this case

16   in fact, the indenture trustee for these securities filed a

17   proof of claim.  The beneficial interests and the individual

18   holders of the securities were represented by $1 billion in

19   allowed claims against the estate.  So, that's one reason

20   why Mr. Wu, you cannot prevail.

21           Secondly, as has been made clear, you acquired

22   these positions after the bar date, so that places you in a

23   whole separate category.

24           Under the test for filing a new proof of claim,

25   I've heard nothing today that would provide a basis for me

1    to give you leave to file a new claim.  There are no new

2    facts.  The simple statement that there would not be

3    prejudice has been undermined by, among other things, the

4    many joinders that have been filed to your motion indicating

5    that there are folks out there who should -- the relief

6    requested -- I grant -- your request would be granted by the

7    Court would start filing claims and the notional amount of

8    these securities is very large.  Who knows how many claims

9    there would be.

10         But perhaps most importantly, your reading of the

11   prospectuses is flawed.  Your reading of the prospectuses is

12   flawed.  Under any scenario any claim that you have would be

13   subordinated to general unsecured claims and is not entitled

14   to a distribution under the plan.

15         So, for those reasons, and as more fully explained

16   in the objection filed by the plan administrator, and I

17   don't often say this because I don't often agree with

18   everything the plan administrator says, I agree with all of

19   the points made in the plan administrator's objection.

20         So, for all the reasons I'm going to deny Mr. Wu's

21   motion and to the extent that the joinders believe or are

22   taking the position that their joinders constitute separate

23   motions, those joinders/motions are also denied.

24         The objection with respect to the timing of the

25   so-called record date in early distribution, that's been

Page 90

```
 1   raised by Mr. Wu and by one or more of the joining parties,

 2   that too is denied.

 3           So, Mr. Fail, I'm going to ask that you prepare an

 4   order.  As a courtesy if you would circulate it to Mr. Wu

 5   and to the other joining parties and then send it to

 6   chambers.  We'll enter the order.  The order should reflect

 7   my ruling and indicate that for the reasons more fully

 8   described on the record of the hearing.

 9           Mr. Wu, for your benefit and the benefit of the

10   other parties who are appearing here without lawyers, once

11   that order is entered that order can form the basis of the

12   exercise of any appellate rights that you wish to exercise.

13           Transcript of these proceedings can be obtained

14   should you wish to get a copy.  Do you have any questions,

15   Mr. Wu?  Okay.  All right, I think that's all we have.  Mr.

16   Fail, is there anything else I need to think about today?

17           MR. FAIL:  No, Your Honor.  Thank you, again, and

18   thank your chambers for the time and attention that you've

19   given to the matter.

20           THE COURT:  Okay.  All right, thank you folks.

21   Enjoy the rest of your day.

22

23           (Whereupon these proceedings were concluded at

24   12:09 PM)

25
```

Page 91

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 21, 2019

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                  0000021805

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held **Lehman Brothers Holdings Inc.** | Case No. of Debtor **08-13555** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

The Bank of New York Mellon, as Indenture Trustee, Attn: John Guiliano
101 Barclay Street, 8 West
New York, NY 10286

with a copy to: Russell R. Reid, Jr., Sheppard Mullin, 30 Rockefeller Plaza, 24th Floor, New York, NY 10112

Telephone number: 212.815.5441   Email Address: john.guiliano@bnymellon

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
   (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:           Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 314,207,499.10

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Debt obligations (See addendum)
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. **Debtor may have scheduled account as:** _____
       (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____  Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____  Basis for perfection: _____

   **Amount of Secured Claim:** $_____  **Amount Unsecured:** $ 314,207,499.10 ⊞

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

**SEP 2 1 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Date: 08/21/09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

JOHN GUILIANO
VICE PRESIDENT

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

A738

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

LEHMAN BROTHERS
HOLDINGS, INC., *et al.*,

Debtors.

Case No.  08-13555 (JMP)

Chapter 11

(Jointly Administered)

---

**ADDENDUM TO PROOF OF CLAIM OF**
**THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR**
**THE LEHMAN BROTHERS HOLDINGS INC. 6.375% SUBORDINATED**
**DEFERRABLE INTEREST DEBENTURES DUE 3/15/2052, LINKED TO THE**
**LEHMAN BROTHERS HOLDINGS CAPITAL TRUST II 6.375% PREFERRED**
**SECURITIES, SERIES K**
**CUSIP 52519Y209**[1]

**A.     CREDITOR INFORMATION**

THE BANK OF NEW YORK MELLON, a banking corporation duly organized

and existing under the laws of the State of New York having a corporate trust office at 101

Barclay Street, New York, New York  10286, as successor trustee (the "Trustee") under that

certain Indenture dated as of February 1, 1996 by and between Lehman Brothers Holdings Inc.

("LBHI" or, the "Debtor") and Chemical Bank, as original trustee, as supplemented from time to

time (the "Indenture"), makes and files this proof of claim on behalf of the Holders (as defined in

the Indenture) ("Claim Holder").  All Capitalized terms used but not defined herein shall have

the meanings ascribed to them in the Indenture.

All communications regarding this Proof of Claim should be addressed to John Guiliano,

The Bank of New York Mellon, Global Corporate Trust Department, 101 Barclay Street, 8 West,

---

[1] *The CUSIP number appearing herein has been included solely for convenience. The Bank of New York Mellon assumes no responsibility for the selection or use of such number and makes no representation as to the correctness of the CUSIP number listed herein.*

W02-EAST:7DAD1\200255868.2

-1-

New York, NY 10286, with a copy to Russell R. Reid, Jr., Sheppard Mullin Richter & Hampton

LLP, 30 Rockefeller Plaza, 24th Floor, New York, New York 10112, Telephone (212) 653-8700.

**B.     CLAIM INFORMATION**

      1.     Basis for Claim.

          (a)     *Principal and Interest Due on the Securities.*     The LBHI 6.375%

Subordinated Deferrable Interest Debentures due 3/15/2052 were issued pursuant to the

Indenture, attached hereto as Exhibit A, and the Prospectus Supplement to the Prospectus dated

as of June 5, 2001, attached hereto as Exhibit B (the "Transaction Documents").  Pursuant to the

Transaction Documents, the Debtor is obligated to pay to the Trustee, for the benefit of the

Holders, among other things, principal and interest in the amounts set forth therein.  As of

September 15, 2008 (the "Petition Date"), the Debtor was and remains justly and truly indebted

to the Trustee, for the benefit of the Holders, and the Trustee hereby claims the aggregate amount

of not less than $314,207,499.10, for principal in the amount of $309,278,375.00 and interest due

as of the Petition Date of not less than $4,929,124.10.[2]  A calculation of interest owed as of the

Petition Date is attached hereto as Exhibit C.

          (b)     *Fees, Expenses and Indemnification.*  In addition to the claim for principal and

interest described above, the Trustee makes a claim for fees and costs (including attorneys' fees)

incurred or to be incurred by the Trustee in performing its duties under the Indenture, as well as

for any indemnities owing or to become owing to the Trustee, pursuant to the provisions of the

Indenture, as more particularly described below.

---

[2] In addition, the Trustee claims, to the extent allowed by the Bankruptcy Code and applicable law, any post-petition interest owed to the Trustee on behalf of the Holders.

A740

Pursuant to Section 607 of the Standard Multiple-Series Indenture Provisions, which are incorporated by reference into the Indenture, the Debtor agreed to pay the Trustee for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of the Indenture (including the reasonable compensation and expenses of its agents and counsel) and to indemnify the Trustee and hold it harmless against any loss, liability or expense incurred arising out of or in connection with the administration of the trust.  As of the date of this Proof of Claim, the amount of Trustee fees, expenses and indemnity obligations owed to the Trustee pursuant to the Indenture are not less than $65,212.62.

\*     \*     \*     \*     \*

Without limiting any of the foregoing, Claim Holder reserves all of its rights to assert claims for interest (including, without limitation, at the default rate), fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided and/or contemplated in the Indenture, Prospectus or any supporting documentation and under applicable law.

2.  <u>Setoff.</u> This claim is not subject to any known right of setoff held by the Debtor. The Claim Holder hereby asserts any and all rights of setoff it may have in respect of its Claim, including, without limitation, the right to setoff its Claim against any claims that the Debtor (or any successor, assignee or personal claiming through the Debtor) may assert against the Claim Holder.

A741

3.    <u>Reservation of Rights.</u>  Claim Holder expressly reserves all rights and causes of action, including, without limitation contingent or unliquidated rights that it may have against the Debtor.  The description and classification of claims by Claim Holder is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claim Holder.  Claim Holder expressly reserves its right to further amend or further supplement this Amended Proof of Claim in all respects, including but not limited to, fixing or liquidating any contingent or unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and any claims for damages arising from events or conduct by the Debtor.  Claim Holder further reserves the right to assert all or part of its claim as administrative claims or other priority claims, and to file additional claim(s), including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorneys' fees) that are not ascertainable at this time and for administrative claims or other priority claims.  Claim Holder does not, by this Proof of Claim or by any amendment or other action, waive any rights with respect to any scheduled claim.

Filing of this Proof of Claim is not (a) a waiver or release of Claim Holder's rights against any person, entity or property, including any officers, directors or other principals of the Debtor; (b) a consent by Claim Holder to the jurisdiction of this Court with respect to proceedings, if any, commenced in the case against or otherwise involving Claim Holder; (c) a waiver or release of Claim Holder's right to trial by jury in any proceeding as to any and all matters so triable herein, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. Sec. 157(b)(2); (d) a waiver or release of Claim Holder's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (e) a waiver or release of Claim

Holder to have the reference withdrawn by the United States District Court for the Southern District of New York in any matter subject to mandatory or discretionary withdrawal; (f) a waiver or release of the right of Claim Holder to have any unliquidated portions of their claims determined by applicable state courts; (g) a waiver or release of any other rights, claims, actions, defenses, setoffs or recoupments to which Claim Holder may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved; or (h) an election of remedy.

By filing this Proof of Claim, Claim Holder does not waive any rights under chapter 5 of the Bankruptcy Code. By filing this Proof of Claim, Claim Holder does not waive or release: (a) any obligation owed to it, or any right to any security that may be determined to be held by any one of them or for its or their benefit; (b) any past, present or future defaults (or events of default) by the Debtor or others; (c) any right to the subordination, in favor of Claim Holder, of any indebtedness or liens held by other creditors of the Debtor.

**Dated: New York, New York**
**September 18, 2009**

**THE BANK OF NEW YORK MELLON, as Trustee**

By: _____

Name: _____
JOHN GUILIANO

Title: _____
*Vice President*

A743

**Exhibits Intentionally Omitted Due to File Size**

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)            0000022122

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Lehman Brothers Holdings Inc. | 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (see definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

The Bank of New York Mellon, as Indenture Trustee, Attn: John Guiliano
101 Barclay Street, 8 West
New York, NY 10286

with a copy to: Russell R. Reid, Jr., Sheppard Mullin, 30 Rockefeller Plaza, 24th Floor, New York, NY 10112

Telephone number: 212.815.5441    Email Address: john.guiliano@bnymellon

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
    (*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:            Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 311,742,937.05

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OR A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Debt obligations (See addendum)
    (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
    3a. Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $ 311,742,937.05 ⊞

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
    (See instruction #6 on reverse side.)

7. **Credits:** The amount of any payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 2 1 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>9/21/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>JOHN GUILIANO<br>VICE PRESIDENT |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

A745

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

LEHMAN BROTHERS
HOLDINGS, INC., *et al.*,

Debtors.

Case No.   08-13555 (JMP)

Chapter 11

(Jointly Administered)

---

**ADDENDUM TO PROOF OF CLAIM OF**
**THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR**
**THE LEHMAN BROTHERS HOLDINGS INC. 6.375% SUBORDINATED**
**DEFERRABLE INTEREST DEBENTURES DUE 10/31/2052, LINKED TO THE**
**LEHMAN BROTHERS CAPITAL TRUST IV 6.375% PREFERRED SECURITIES,**
**SERIES L**
**CUSIP 52520B206[1]**

## A.   CREDITOR INFORMATION

THE BANK OF NEW YORK MELLON, a banking corporation duly organized

and existing under the laws of the State of New York having a corporate trust office at 101

Barclay Street, New York, New York  10286, as successor trustee (the "Trustee") under that

certain Indenture dated as of February 1, 1996 by and between Lehman Brothers Holdings Inc.

("LBHI" or, the "Debtor") and Chemical Bank, as original trustee, as supplemented from time to

time (the "Indenture"), makes and files this proof of claim on behalf of the Holders (as defined in

the Indenture) ("Claim Holder").  All Capitalized terms used but not defined herein shall have

the meanings ascribed to them in the Indenture.

All communications regarding this Proof of Claim should be addressed to John

Guiliano, The Bank of New York Mellon, Global Corporate Trust Department, 101 Barclay

Street, 8 West, New York, NY 10286, with a copy to Russell R. Reid, Jr., Sheppard Mullin

---

[1] *The CUSIP number appearing herein has been included solely for convenience. The Bank of New York Mellon assumes no responsibility for the selection or use of such number and makes no representation as to the correctness of the CUSIP number listed herein.*

A746

Richter & Hampton LLP, 30 Rockefeller Plaza, 24th Floor, New York, New York 10112,

Telephone (212) 653-8700.

## B.   CLAIM INFORMATION

   1.   Basis for Claim.

   (a)   *Principal and Interest Due on the Securities.*   The LBHI 6.375%
Subordinated Deferrable Interest Debentures due 10/31/2052 were issued pursuant to the
Indenture, attached hereto as Exhibit A, and the Prospectus Supplement to the Prospectus dated
June 5, 2001, attached hereto as Exhibit B (the "Transaction Documents").   Pursuant to the
Transaction Documents, the Debtor is obligated to pay to the Trustee, for the benefit of the
Holders, among other things, principal and interest in the amounts set forth therein.   As of
September 15, 2008 (the "Petition Date"), the Debtor was and remains justly and truly indebted
to the Trustee, for the benefit of the Holders, and the Trustee hereby claims the aggregate amount
of not less than  $311,742,937.05, for principal in the amount of $309,278,375.00  and interest
due as of the Petition Date of not less than $2,464,562.05.[2]  A calculation of interest owed as of
the Petition Date is attached hereto as Exhibit C.

   (b)   *Fees, Expenses and Indemnification.*  In addition to the claim for principal and
interest described above, the Trustee makes a claim for fees and costs (including attorneys' fees)
incurred or to be incurred by the Trustee in performing its duties under the Indenture, as well as
for any indemnities owing or to become owing to the Trustee, pursuant to the provisions of the
Indenture, as more particularly described below.

---

[2] In addition, the Trustee claims, to the extent allowed by the Bankruptcy Code and applicable law, any post-petition
interest owed to the Trustee on behalf of the Holders.

Pursuant to Section 607 of the Standard Multiple-Series Indenture Provisions, which are incorporated by reference into the Indenture, the Debtor agreed to pay the Trustee for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of the Indenture (including the reasonable compensation and expenses of its agents and counsel) and to indemnify the Trustee and hold it harmless against any loss, liability or expense incurred arising out of or in connection with the administration of the trust.  As of the date of this Proof of Claim, the amount of Trustee fees, expenses and indemnity obligations owed to the Trustee pursuant to the Indenture are not less than $73,957.62.

*   *   *   *   *

Without limiting any of the foregoing, Claim Holder reserves all of its rights to assert claims for interest (including, without limitation, at the default rate), fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided and/or contemplated in the Indenture, Prospectus or any supporting documentation and under applicable law.

2.      Setoff. This claim is not subject to any known right of setoff held by the Debtor. The Claim Holder hereby asserts any and all rights of setoff it may have in respect of its Claim, including, without limitation, the right to setoff its Claim against any claims that the Debtor (or any successor, assignee or personal claiming through the Debtor) may assert against the Claim Holder.

3.      <u>Reservation of Rights.</u>  Claim Holder expressly reserves all rights and causes of action, including, without limitation contingent or unliquidated rights that it may have against the Debtor.  The description and classification of claims by Claim Holder is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claim Holder.  Claim Holder expressly reserves its right to further amend or further supplement this Amended Proof of Claim in all respects, including but not limited to, fixing or liquidating any contingent or unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and any claims for damages arising from events or conduct by the Debtor.  Claim Holder further reserves the right to assert all or part of its claim as administrative claims or other priority claims, and to file additional claim(s), including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorneys' fees) that are not ascertainable at this time and for administrative claims or other priority claims.  Claim Holder does not, by this Proof of Claim or by any amendment or other action, waive any rights with respect to any scheduled claim.

Filing of this Proof of Claim is not (a) a waiver or release of Claim Holder's rights against any person, entity or property, including any officers, directors or other principals of the Debtor; (b) a consent by Claim Holder to the jurisdiction of this Court with respect to proceedings, if any, commenced in the case against or otherwise involving Claim Holder; (c) a waiver or release of Claim Holder's right to trial by jury in any proceeding as to any and all matters so triable herein, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. Sec. 157(b)(2); (d) a waiver or release of Claim Holder's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (e) a waiver or release of Claim

A749

Holder to have the reference withdrawn by the United States District Court for the Southern District of New York in any matter subject to mandatory or discretionary withdrawal; (f) a waiver or release of the right of Claim Holder to have any unliquidated portions of their claims determined by applicable state courts; (g) a waiver or release of any other rights, claims, actions, defenses, setoffs or recoupments to which Claim Holder may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved; or (h) an election of remedy.

By filing this Proof of Claim, Claim Holder does not waive any rights under chapter 5 of the Bankruptcy Code.  By filing this Proof of Claim, Claim Holder does not waive or release:  (a) any obligation owed to it, or any right to any security that may be determined to be held by any one of them or for its or their benefit; (b) any past, present or future defaults (or events of default) by the Debtor or others; (c) any right to the subordination, in favor of Claim Holder, of any indebtedness or liens held by other creditors of the Debtor.


**Dated:**  New York, New York
            September 18, 2009


THE BANK OF NEW YORK MELLON, as Trustee

By: _____

Name:_____
             JOHN GUILIANO

Title:_____
             VICE PRESIDENT

A750

**Exhibits Intentionally Omitted Due to File Size**

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000022123

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

The Bank of New York Mellon, as Indenture Trustee, Attn: John Guiliano
101 Barclay Street, 8 West
New York, NY 10286

with a copy to: Russell R. Reid, Jr., Sheppard Mullin, 30 Rockefeller Plaza, 24th Floor, New York, NY 10112

Telephone number: 212.815.5441    Email Address: john.guiliano@bnymellon

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 416,013,746.69

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Debt obligations (See addendum)
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other

Describe: _____

Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $416,013,746.69 ⊞

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

Date:   9/19    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

JOHN GUILIANO
VICE PRESIDENT

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**
SEP 2 1 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

A752

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

LEHMAN BROTHERS
HOLDINGS, INC., *et al.*,

                                    Debtors.

Case No.   08-13555 (JMP)

Chapter 11

(Jointly Administered)

**ADDENDUM TO PROOF OF CLAIM OF**
**THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR**
**THE LEHMAN BROTHERS HOLDINGS INC. 6% SUBORDINATED DEFERRABLE**
**INTEREST DEBENTURES DUE 2053, LINKED TO THE LEHMAN BROTHERS**
**CAPITAL TRUST V 6% PREFERRED SECURITIES, SERIES M**
**CUSIP 52520E200[1]**

**A.     CREDITOR INFORMATION**

THE BANK OF NEW YORK MELLON, a banking corporation duly organized

and existing under the laws of the State of New York having a corporate trust office at 101

Barclay Street, New York, New York  10286, as successor trustee (the "Trustee") under that

certain Indenture dated as of February 1, 1996 by and between Lehman Brothers Holdings Inc.

("LBHI" or, the "Debtor") and Chemical Bank, as original trustee, as supplemented from time to

time (the "Indenture"), makes and files this proof of claim on behalf of the Holders (as defined in

the Indenture) ("Claim Holder").  All Capitalized terms used but not defined herein shall have

the meanings ascribed to them in the Indenture.

All communications regarding this Proof of Claim should be addressed to John Guiliano,

The Bank of New York Mellon, Global Corporate Trust Department, 101 Barclay Street, 8 West,

New York, NY 10286, with a copy to Russell R. Reid, Jr., Sheppard Mullin Richter & Hampton

LLP, 30 Rockefeller Plaza, 24th Floor, New York, New York 10112, Telephone (212) 653-8700.

---

[1] *The CUSIP number appearing herein has been included solely for convenience. The Bank of New York Mellon
        assumes no responsibility for the selection or use of such number and makes no representation as to the
        correctness of the CUSIP number listed herein.*

A753

**B.    CLAIM INFORMATION**

1.    Basis for Claim.

(a)    *Principal and Interest Due on the Securities.*    The 6% Subordinated Deferrable Interest Debentures due 2053 were issued pursuant to the Indenture, attached hereto as Exhibit A, and the Prospectus Supplement to the Supplement dated June 5, 2001, attached hereto as Exhibit B (the "Transaction Documents").  Pursuant to the Transaction Documents, the Debtor is obligated to pay to the Trustee, for the benefit of the Holders, among other things, principal and interest in the amounts set forth therein.  As of September 15, 2008 (the "Petition Date"), the Debtor was and remains justly and truly indebted to the Trustee, for the benefit of the Holders, and the Trustee hereby claims the aggregate amount of not less than $416,013,746.69, for principal in the amount of $412,371,135.00  and interest due as of the Petition Date of not less than  $3,642,611.69.[2]  A calculation of interest owed as of the Petition Date is attached hereto as Exhibit C.

(b)    *Fees, Expenses and Indemnification.*  In addition to the claim for principal and interest described above, the Trustee makes a claim for fees and costs (including attorneys' fees) incurred or to be incurred by the Trustee in performing its duties under the Indenture, as well as for any indemnities owing or to become owing to the Trustee, pursuant to the provisions of the Indenture, as more particularly described below.

Pursuant to Section 607 of the Standard Multiple-Series Indenture Provisions, which are incorporated by reference into the Indenture, the Debtor agreed to pay the Trustee for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance

---

[2] In addition, the Trustee claims, to the extent allowed by the Bankruptcy Code and applicable law, any post-petition interest owed to the Trustee on behalf of the Holders.

A754

with any provision of the Indenture (including the reasonable compensation and expenses of its agents and counsel) and to indemnify the Trustee and hold it harmless against any loss, liability or expense incurred arising out of or in connection with the administration of the trust.  As of the date of this Proof of Claim, the amount of Trustee fees, expenses and indemnity obligations owed to the Trustee pursuant to the Indenture are not less than $80,884.14.

\*    \*    \*    \*    \*

Without limiting any of the foregoing, Claim Holder reserves all of its rights to assert claims for interest (including, without limitation, at the default rate), fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided and/or contemplated in the Indenture, Prospectus or any supporting documentation and under applicable law.

2.    <u>Setoff.</u> This claim is not subject to any known right of setoff held by the Debtor. The Claim Holder hereby asserts any and all rights of setoff it may have in respect of its Claim, including, without limitation, the right to setoff its Claim against any claims that the Debtor (or any successor, assignee or personal claiming through the Debtor) may assert against the Claim Holder.

3.    <u>Reservation of Rights.</u>  Claim Holder expressly reserves all rights and causes of action, including, without limitation contingent or unliquidated rights that it may have against the Debtor.  The description and classification of claims by Claim Holder is not a concession or

A755

admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claim Holder.  Claim Holder expressly reserves its right to further amend or further supplement this Amended Proof of Claim in all respects, including but not limited to, fixing or liquidating any contingent or unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and any claims for damages arising from events or conduct by the Debtor.  Claim Holder further reserves the right to assert all or part of its claim as administrative claims or other priority claims, and to file additional claim(s), including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorneys' fees) that are not ascertainable at this time and for administrative claims or other priority claims.  Claim Holder does not, by this Proof of Claim or by any amendment or other action, waive any rights with respect to any scheduled claim.

Filing of this Proof of Claim is not (a) a waiver or release of Claim Holder's rights against any person, entity or property, including any officers, directors or other principals of the Debtor; (b) a consent by Claim Holder to the jurisdiction of this Court with respect to proceedings, if any, commenced in the case against or otherwise involving Claim Holder; (c) a waiver or release of Claim Holder's right to trial by jury in any proceeding as to any and all matters so triable herein, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. Sec. 157(b)(2); (d) a waiver or release of Claim Holder's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (e) a waiver or release of Claim Holder to have the reference withdrawn by the United States District Court for the Southern District of New York in any matter subject to mandatory or discretionary withdrawal; (f) a waiver or release of the right of Claim Holder to have any unliquidated portions of their claims

A756

determined by applicable state courts; (g) a waiver or release of any other rights, claims, actions, defenses, setoffs or recoupments to which Claim Holder may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved; or (h) an election of remedy.

By filing this Proof of Claim, Claim Holder does not waive any rights under chapter 5 of the Bankruptcy Code.  By filing this Proof of Claim, Claim Holder does not waive or release:  (a) any obligation owed to it, or any right to any security that may be determined to be held by any one of them or for its or their benefit; (b) any past, present or future defaults (or events of default) by the Debtor or others; (c) any right to the subordination, in favor of Claim Holder, of any indebtedness or liens held by other creditors of the Debtor.

**Dated: New York, New York**
      **September 18, 2009**

                              **THE BANK OF NEW YORK MELLON, as Trustee**

                              By: _____

                              Name:_____

                              Title:_____

A757

**Exhibits Intentionally Omitted Due to File Size**

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)        0000067753 |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555 | |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>The Bank of New York Mellon, as Indenture Trustee, Attn:  John Guiliano<br>101 Barclay Street, 8 West<br>New York, NY 10286<br><br>with a copy to:  Russell R. Reid, Jr., Sheppard Mullin Richter & Hampton LLP<br>30 Rockefeller Plaza, New York, NY  10112<br><br>Telephone number: 212-815-5441    Email Address: john.guiliano@bnymellon | ☑ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number: 21803<br>_(If known)_<br><br>Filed on: 9/21/2009 |
|---|---|
| Name and address where payment should be sent (if different from above)<br><br><br><br>Telephone number:              Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1.    Amount of Claim as of Date Case Filed:** $ 234,250,517.60

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** Debt obligations (see addendum)
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor:** _____
    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4.    Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other

Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $ 234,250,517.60 ⊞

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $**_____
(See instruction #6 on reverse side.)

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. _(See definition of "redacted" on reverse side.)_ If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: _____

| Date:<br><br>11/28/2011 ⊞ | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>John Guiliano<br>Vice President |
|---|---|

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

FOR COURT USE ONLY

**FILED / RECEIVED**

NOV 3 0 2011

EPIQ BANKRUPTCY SOLUTIONS, LLC

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

A759

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS
· HOLDINGS, INC., *et al.*,

Debtors.

Case No.   08-13555 (JMP)

Chapter 11

(Jointly Administered)

---

### ADDENDUM TO AMENDED PROOF OF CLAIM OF
### THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR
### THE LEHMAN BROTHERS HOLDINGS INC. 6.24% SUBORDINATED
### DEFERRABLE INTEREST DEBENTURES DUE 2054, LINKED TO THE LEHMAN
### BROTHERS HOLDINGS CAPITAL TRUST VI 6.24% SECURITIES, SERIES N
### CUSIP 52520X208[1]

**A.      CREDITOR INFORMATION**

THE BANK OF NEW YORK MELLON, a banking corporation duly organized

and existing under the laws of the State of New York having a corporate trust office at 101

Barclay Street, New York, New York  10286, as successor trustee (the "Trustee") under that

certain Indenture dated as of February 1, 1996 by and between Lehman Brothers Holdings Inc.

("LBHI" or, the "Debtor") and Chemical Bank, as original trustee, as supplemented from time to

time (the "Indenture"), makes and files this amended proof of claim on behalf of the Holders (as

defined in the Indenture) ("Claim Holder"), which amended proof of claim hereby amends and

restates in its entirety proof of claim No. 21803 filed in the above-captioned proceedings by the

Trustee on behalf of the Claim Holder on September 21, 2009 (as amended and restated, this

"Proof of Claim").  All Capitalized terms used but not defined herein shall have the meanings

ascribed to them in the Indenture.

---

[1] *The CUSIP number appearing herein has been included solely for convenience. The Bank of New York Mellon assumes no responsibility for the selection or use of such number and makes no representation as to the correctness of the CUSIP number listed herein.*

All communications regarding this Proof of Claim should be addressed to John Guiliano, The Bank of New York Mellon, Global Corporate Trust Department, 101 Barclay Street, 8 West, New York, NY 10286, with a copy to Russell R. Reid, Jr., Sheppard Mullin Richter & Hampton LLP, 30 Rockefeller Plaza, New York, New York 10112, Telephone (212) 653-8700.

## B.    CLAIM INFORMATION

      1.    <u>Basis for Claim.</u>

      (a) *Principal and Interest Due on the Securities.*   The LBHI 6.24% Subordinated Deferrable Interest Debentures due 2054 were issued pursuant to the Indenture, attached hereto as <u>Exhibit A</u>, and the Prospectus Supplement to the Prospectus dated as of June 5, 2001, attached hereto as <u>Exhibit B</u> (the "Transaction Documents"). Pursuant to the Transaction Documents, the Debtor is obligated to pay to the Trustee, for the benefit of the Holders, among other things, principal and interest in the amounts set forth therein. As of September 15, 2008 (the "Petition Date"), the Debtor was and remains justly and truly indebted to the Trustee, for the benefit of the Holders, and the Trustee hereby claims the aggregate amount of not less than $234,250,517.60, for principal in the amount of $231,958,765.00 and interest due as of the Petition Date of not less than $2,291,752.60.[2] A calculation of interest owed as of the Petition Date is attached hereto as <u>Exhibit C.</u>

      (b)    *Fees, Expenses and Indemnification.*   In addition to the claim for principal and interest described above, the Trustee makes a claim for fees and costs (including attorneys' fees) incurred or to be incurred by the Trustee in performing its duties under the Indenture, as well as

---

[2] In addition, the Trustee claims, to the extent allowed by the Bankruptcy Code and applicable law, any post-petition interest owed to the Trustee on behalf of the Holders.

A761

for any indemnities owing or to become owing to the Trustee, pursuant to the provisions of the Indenture, as more particularly described below.

Pursuant to Section 607 of the Standard Multiple-Series Indenture Provisions, which are incorporated by reference into the Indenture, the Debtor agreed to pay the Trustee for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of the Indenture (including the reasonable compensation and expenses of its agents and counsel) and to indemnify the Trustee and hold it harmless against any loss, liability or expense incurred arising out of or in connection with the administration of the trust. As of the date of this Proof of Claim, the amount of Trustee fees, expenses and indemnity obligations owed to the Trustee pursuant to the Indenture are not less than $59,145.24.

\*   \*   \*   \*   \*

Without limiting any of the foregoing, Claim Holder reserves all of its rights to assert claims for interest (including, without limitation, at the default rate), fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement and/or contribution, and other amounts, including, without limitation, legal fees and expenses (including, without limitation, in connection with the preparation, filing and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided and/or contemplated in the Indenture, Prospectus or any supporting documentation and under applicable law.

2.   Setoff. This claim is not subject to any known right of setoff held by the Debtor. The Claim Holder hereby asserts any and all rights of setoff it may have in respect of its Claim, including, without limitation, the right to setoff its Claim against any claims that the Debtor (or

A762

any successor, assignee or personal claiming through the Debtor) may assert against the Claim Holder.

3.    Reservation of Rights.  Claim Holder expressly reserves all rights and causes of action, including, without limitation contingent or unliquidated rights that it may have against the Debtor.  The description and classification of claims by Claim Holder is not a concession or admission as to the correct characterization or treatment of any such claims or a waiver of any rights of Claim Holder.  Claim Holder expressly reserves its right to further amend or further supplement this Proof of Claim in all respects, including but not limited to, fixing or liquidating any contingent or unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and any claims for damages arising from events or conduct by the Debtor.  Claim Holder further reserves the right to assert all or part of its claim as administrative claims or other priority claims, and to file additional claim(s), including, without limitation, claims for interest, fees and related expenses (including, without limitation, attorneys' fees) that are not ascertainable at this time and for administrative claims or other priority claims. Claim Holder does not, by this Proof of Claim or by any amendment or other action, waive any rights with respect to any scheduled claim.

Filing of this Proof of Claim is not (a) a waiver or release of Claim Holder's rights against any person, entity or property, including any officers, directors or other principals of the Debtor; (b) a consent by Claim Holder to the jurisdiction of this Court with respect to proceedings, if any, commenced in the case against or otherwise involving Claim Holder; (c) a waiver or release of Claim Holder's right to trial by jury in any proceeding as to any and all matters so triable herein, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. Sec. 157(b)(2); (d) a waiver or release of Claim Holder's

A763

right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (e) a waiver or release of Claim Holder to have the reference withdrawn by the United States District Court for the Southern District of New York in any matter subject to mandatory or discretionary withdrawal; (f) a waiver or release of the right of Claim Holder to have any unliquidated portions of their claims determined by applicable state courts; (g) a waiver or release of any other rights, claims, actions, defenses, setoffs or recoupments to which Claim Holder may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved; or (h) an election of remedy.

By filing this Proof of Claim, Claim Holder does not waive any rights under chapter 5 of the Bankruptcy Code. By filing this Proof of Claim, Claim Holder does not waive or release: (a) any obligation owed to it, or any right to any security that may be determined to be held by any one of them or for its or their benefit; (b) any past, present or future defaults (or events of default) by the Debtor or others; (c) any right to the subordination, in favor of Claim Holder, of any indebtedness or liens held by other creditors of the Debtor.

Dated: New York, New York
      November 28, 2011

THE BANK OF NEW YORK MELLON, as Trustee

By:_____

Name: John Guiliano

Title: Vice President

A764

**Exhibits Intentionally Omitted Due to File Size**